**LATHAM & WATKINS LLP**
Andrew Clubok (*pro hac vice*)
Sarah Tomkowiak (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, District of Columbia 20004
Telephone: (202) 637-2200

Jeffrey E. Bjork (*pro hac vice*)
Kimberly A. Posin (*pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234

Kathryn George (*pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700

**BUTLER SNOW LLP**
Martin Sosland (TX Bar No. 18855645)
Candice Carson (TX Bar No. 24074006)
2911 Turtle Creek Blvd., Suite 1400
Dallas, Texas 75219
Telephone: (469) 680-5502

*Counsel for UBS Securities LLC and UBS AG London Branch*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| In re | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |
| UBS SECURITIES LLC AND UBS AG LONDON BRANCH, | § | Adversary Proceeding |
| | § | No. 21-03020 |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Defendant. | § | |

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

# TABLE OF CONTENTS

                                                                            **Page**

INTRODUCTION ...............................................................................................................................1

FACTUAL BACKGROUND ............................................................................................................2

REQUEST FOR ALTERNATIVE SERVICE ..................................................................................6

CONCLUSION ................................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*AMAX Inv. Co. v. Amtrust Ins. Co. of Kan., Inc.*,
   No. 3:13-cv-1589 (N.D. Tex. Aug. 19, 2014) ............................................................... 9

*Cordius Tr. v. Kummerfeld*,
   No. 99 CIV. 3200 (DLC), 1999 U.S. Dist. LEXIS 19980 (S.D.N.Y. Jan. 3,
   2000) .......................................................................................................................... 10

*Evergreen Nat'l Indem. Co. v. Herndon ex rel. Tr. of Mark. A. Herndon Tr.*,
   3:07-CV-0184-B, 2007 U.S. Dist. LEXIS 74688 (N.D. Tex. Sept. 28, 2007) ............. 7

*Ferrarese v. Shaw*,
   164 F. Supp. 3d 361 (E.D.N.Y. 2016) ...................................................................... 6, 9

*FTC v. PCCare247 Inc.*,
   No. 12 Civ. 7189 (PAE), 2013 U.S. Dist. LEXIS 31969 (S.D.N.Y. Mar. 7,
   2013) ............................................................................................................................ 7

*Grimsley v. Faulkner*,
   No. EP-09-cv-396-KC, 2010 U.S. Dist. LEXIS 164484 (W.D. Tex. Mar. 5,
   2010) ............................................................................................................................ 9

*McKenzie v. Star Shuttle, Inc.*,
   No. 5:19-cv-749-JKP, 2019 U.S. Dist. LEXIS 159168 (W.D. Tex. Sept. 18,
   2019) ............................................................................................................................ 8

*MetroPCS v. Devor*,
   256 F. Supp. 3d 807 (N.D. Ill. 2017) ........................................................................... 9

*N.J. Bldg. Laborers Statewide Benefit Funds v. Torchio Bros., Inc.*,
   No. 08-552, 2009 U.S. Dist. LEXIS 10267 (D.N.J. Feb. 11, 2009) ........................ 3, 8

*PC Drivers Headquarters, LP v. Ambicom Holdings, Inc.*,
   No. 1:15-cv-1038-RP, 2017 U.S. Dist. LEXIS 51040 (W.D. Tex. Apr. 4,
   2017) ............................................................................................................................ 7

*Rio Props., Inc. v. Rio Int'l Interlink*,
   284 F.3d 1007 (9th Cir. 2002) ..................................................................................... 7

*Terrestrial Comms LLC v. NEC Corp.*,
   No. 6:20-CV-00096-ADA, 2020 U.S. Dist. LEXIS 110983 (W.D. Tex. June
   24, 2020) .................................................................................................................... 10

*TracFone Wireless, Inc. v. SCS Supply Chain LLC*,
　330 F.R.D. 613 (S.D. Fla. 2019) ................................................................................................8

*In re Viacao Itapemirim, S.A.*,
　608 B.R. 268 (Bankr. S.D. Fla. 2019) ......................................................................................10

*In re Victor Manuel Gallegos*,
　No. 16-32555 (Bankr. S.D. Tex. Aug. 14, 2017) .......................................................................6

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 9016 ....................................................................................................................6

Fed. R. Civ. P.
　45 ................................................................................................................................................6
　45(b)(1) .......................................................................................................................................6

Tex. R. Civ. P. 106(b) ..........................................................................................................6, 7, 8, 9

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION FOR AN ORDER AUTHORIZING
ALTERNATIVE SERVICE OF SUBPOENAS**

UBS Securities LLC and UBS AG London Branch (together, "UBS"), plaintiffs in the above-captioned adversary proceeding (the "Adversary Case") and creditors in the above-captioned chapter 11 case (the "Bankruptcy Case"), by and through their undersigned counsel, respectfully submit this memorandum of law (the "Memorandum of Law") in support of *Plaintiffs' Motion for an Order Authorizing Alternative Service of Subpoenas* (the "Motion") to request an Order authorizing alternative service of process of a *Subpoena to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding* and a *Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding* (together, the "Subpoenas") upon Mr. Dondero—who is evading service.

## INTRODUCTION

As this Court is aware, evidence has only recently come to light showing that the Debtor, at the direction and with the involvement of numerous former Debtor employees, including, among others, James Dondero, fraudulently transferred hundreds of millions of dollars of assets (the "Transferred Assets") away from funds currently or previously controlled, owned, and/or managed by the Debtor to an entity jointly owned by Dondero and Ellington, in anticipation of the judgment that UBS obtained against those funds in New York state court (the "Fraudulent Transfers"). Although the Independent Board[1] has provided UBS limited information regarding these transfers, UBS needs discovery in order to develop fully the record to support its requested preliminary injunction. But as explained below, Mr. Dondero is purposefully evading service despite UBS's

---

[1] The Independent Board refers to the independent board of directors at Strand Advisors, Inc., the Debtor's general partner, created pursuant to a "corporate governance" settlement approved by the Court [Dkt. No. 339] in the above-captioned chapter 11 case (the "Bankruptcy Case").

persistent and diligent attempts. As of the filing of this Motion, UBS has made over *31 service attempts*[2] via process server, all to no avail.

This evasive behavior cannot be allowed to continue, as Mr. Dondero was heavily involved in the Fraudulent Transfers and will have highly relevant testimony and documents, as the information collected to date demonstrates. Based both on public record searches and process server's direct observations, UBS is confident that it has the current home address of Mr. Dondero as well as the email address for Mr. Dondero's counsel, and has attempted to effectuate service via counsel and personal service. Additionally, UBS has received correspondence from Mr. Dondero's counsel discussing the Subpoenas. There can be no doubt that Mr. Dondero has actual notice of the Subpoenas and of UBS's service attempts. Indeed, Mr. Dondero included copies of the very Subpoenas he refuses to accept service of as exhibits in a recent filing before this Court [Adv. Dkt. Nos. 23-3, 23-4]. Accordingly, UBS respectfully requests that the Court issue an Order authorizing alternative service so that UBS may serve the Subpoenas upon Mr. Dondero by mail and email to his counsel.

The Debtor (the only defendant in this Adversary Case) consents to the relief requested in the Motion.

**FACTUAL BACKGROUND**

1. In mid-February 2021, the Independent Board shared with UBS previously undisclosed facts and documents that revealed shocking fraud undertaken at the hands of the Witnesses. (*See* Dkt. No. 2199 ¶¶ 5-10.) Those documents show that at least as of August 7, 2017, Highland CDO Opportunity Master Fund, L.P. ("CDO Fund") and Highland Special Opportunities

---

[2] The 31 attempts referenced throughout this Memorandum include only those attempts to serve Mr. Dondero for which UBS has already received affidavits of attempted service from the process servers; however, upon information and belief, UBS is awaiting one additional affidavit of attempted service.

2

Holding Company ("SOHC" and together with CDO Fund, the "Funds"), with substantial involvement and assistance from Mr. Dondero, purported to "sell" the Transferred Assets (documented as having a face value of over $300,000,000), which included all or substantially all assets then remaining at the Funds and certain related entities, to Sentinel Reinsurance, Ltd. ("Sentinel") under a purported asset purchase agreement (the "Purchase Agreement"). *Id.* Sentinel accepted the Transferred Assets purportedly as payment for a $25,000,000 premium on a document entitled "Legal Liability Insurance Policy" (the "Insurance Policy"), despite the fact that the value of the Transferred Assets far exceeded that premium. *Id.* ¶ 10 & n.7. The Funds began these Fraudulent Transfers to Sentinel no later than 2017 pursuant to the purported Purchase Agreement and, according to the Independent Board, continued attempts to convey Transferred Assets to Sentinel at least until the Debtor filed for bankruptcy. *See id.* ¶ 10. Mr. Dondero, among others, was heavily involved in the Fraudulent Transfers.

2.   On March 31, 2021, UBS initiated this Adversary Case against the Debtor and filed *Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction* [Adv. Dkt. No. 4] (the "TRO Motion"). In anticipation of filing the TRO Motion, on March 30, 2021, UBS served a preservation demand letter (the "Preservation Letters") to Mr. Dondero via email and overnight mail to counsel of record, putting him on notice that UBS believed he possessed relevant discoverable materials and explaining his preservation obligations. *See Declaration of Kathryn George in Support of Plaintiffs' Motion for an Order Authorizing Alternative Service of Subpoenas* (the "George Decl.") Ex. 1 [UBS005-11].

3.   On April 9, 2021, the Court entered an *Order Granting Plaintiffs' Motion for a Temporary Restraining Order* [Adv. Dkt. No. 21] (the "TRO Order"). The TRO Order remains in place only until this Court's decision on UBS's requested preliminary injunction. In order to

3

present evidence at a hearing on such motion, UBS must be allowed to take the necessary discovery from Mr. Dondero.

4.      On April 1, 2021, UBS began attempting to serve the Subpoenas on Mr. Dondero through counsel of record, George Decl. Ex. 3 [UBS059-62], and by engaging Serving by Irving, Inc., a licensed process serving firm.  To date, UBS has made **over 31** attempts to serve the Subpoenas upon Mr. Dondero, with no success.  *See id.* at Exs. 5-8 [UBS067-81].

5.      UBS began attempting to serve Mr. Dondero on April 1, 2021, when UBS contacted Mr. Clay Taylor of Bonds Ellis Eppich Schafer Jones LLP ("<u>Bonds Ellis</u>"), counsel of record to Mr. Dondero in the Bankruptcy Case, to inquire whether counsel was authorized to accept service of the Subpoenas on Mr. Dondero's behalf.  *Id.* Ex. 3 [UBS059-62].  Prior to this, on March 31, 2021, Mr. Taylor had requested a copy of the sealed TRO Motion, stating that "it appears [UBS] think[s] **our client** is involved, in some way."  *Id*. Ex. 2 [UBS012-15] (emphasis added).  And in response to the Subpoenas sent to Mr. Taylor on April 1, 2021, Mr. Taylor responded—posing rhetorical questions about whether the Subpoenas were sent in earnest—referring to Mr. Dondero as "our client."  *Id.* Ex. 3 [UBS059-62].  On April 2, 2021, after UBS's counsel confirmed the Subpoenas were sent purposely, Mr. Taylor responded that he would attempt to "get a response from my client" about whether he was authorized to accept service.  *Id.*  On April 5, 2021, Mr. Taylor informed UBS that he was not authorized to accept service of the Subpoenas.  *Id.*

6.      Nonetheless, on April 16, 2021, Will Howell of Bonds Ellis, counsel to Mr. Dondero, called UBS's counsel to inform them that Mr. Dondero would be filing both a motion for a protective order and a motion for the Court to reconsider its decision to seal the TRO Motion.  Mr. Taylor then initially offered by email to accept service of the Subpoenas effective the day after a hearing on Mr. Dondero's to-be-filed motions, but in his very next email said he

4

had not yet received authorization from Mr. Dondero to accept service of the Subpoenas "either immediately or at any fixed or readily determinable time and date." *Id.* Ex. 4 [UBS063-66]. Mr. Dondero, through Bonds Ellis, then filed the very Subpoenas he has been avoiding service of as exhibits to a filing before this Court [Adv. Dkt. Nos. 23-3, 23-4].

7. On April 2, 2021, UBS's process servers also began attempting to serve the Subpoenas on Mr. Dondero at both his home and work addresses. George Decl. Exs. 5-8 [UBS067-81]. To date, Mr. Dondero has dodged their 31 attempts, made at various dates and times. *Id.* Ex. In addition to routinely leaving their contact information, the process servers have communicated with individuals at Mr. Dondero's residence, including domestic help (finally sent out after the process server rang the doorbell multiple times) who refused to take the server's business card and made her leave it in the mail box. *Id.* Ex. 6 [UBS070-74]. Further, Mr. Dondero's wife declined to tell the process server when Mr. Dondero might be available for a return attempt. *Id.* Additionally, the servers staked out for multiple hours at NexBank, SSB's headquarters—where his counsel has previously indicated Mr. Dondero would likely be conducting business—but after multiple conversations, the receptionists there claim to not know when Mr. Dondero is expected back in the office. *Id.* Ex. 7 [UBS075-77].

8. Through these attempts, UBS has learned information that confirms it has Mr. Dondero's current address. Specifically, the process servers have spoken with a family member, housekeeper, and nanny at the address, and identified a vehicle registered to Mr. Dondero and his wife at the address. *Id.* Exs. 5-6, 8 [UBS067-74, UBS078-81].

9. Mr. Dondero has deliberately avoided the process servers for so long that the original deadlines contained in the Subpoenas have expired. As a result, UBS was forced to amend

the Subpoenas to notice them for dates in the future, and has continued diligent attempts to serve Mr. Dondero with these amended Subpoenas.

10.  For all of the reasons described above, upon information and belief, Mr. Dondero is evading service of the Subpoenas.

## REQUEST FOR ALTERNATIVE SERVICE

11.  UBS has been unable to obtain service on Mr. Dondero despite numerous and diligent attempts. Thus, by this Motion, UBS respectfully requests entry of an Order authorizing alternative service of the Subpoenas upon Mr. Dondero by: (i) overnight mail to his current home address; and (ii) email to his counsel.

12.  Courts have allowed service by alternative methods where, as here, a party is unable to effect personal service because the individual to be served has evaded service attempts. *See Ferrarese v. Shaw*, 164 F. Supp. 3d 361, 367 (E.D.N.Y. 2016) (given "the defendant's persistent effort to evade service, the Court finds that service by alternate methods is proper in this case").

13.  This allowance has also extended to substitute service of a subpoena on a nonparty witness under Rule 45 of the Federal Rules of Civil Procedure, made applicable to the Adversary Case by Rule 9016 of the Federal Rules of Bankruptcy Procedure. Fed. R. Civ. P. 45(b)(1) ("Serving a subpoena requires delivering a copy to the named person . . . ."); Mot. for Alternative Serv., *In re Victor Manuel Gallegos*, No. 16-32555 (Bankr. S.D. Tex. Aug. 14, 2017), Dkt. No. 74 (attached as **Exhibit B** to the Appendix [UBS082-87]); Order on Pl.'s Mot. for Alt. Serv., *In re Victor Manuel Gallegos*, No. 16-32555 (Bankr. S.D. Tex. Aug. 15, 2017), Dkt. No. 75 (granting motion for alternative service upon "good cause shown" after three attempts made) (attached as **Exhibit C** to the Appendix [UBS088-90]).

14.  Texas Rule 106(b) permits alternative service "[u]pon motion supported by a statement . . . listing any location where the defendant can probably be found and stating

6

specifically the facts showing that service has been attempted . . . but has not been successful." Tex. R. Civ. P. 106(b). In such cases, "the court may authorize service: (1) by leaving a copy of the citation and of the petition with anyone older than sixteen at the location specified in the statement; or (2) in any other manner, including electronically by social media, email, or other technology, that the statement or other evidence shows will be reasonably effective to give the defendant notice of the suit." *Id.*; *see also Evergreen Nat'l Indem. Co. v. Herndon ex rel. Tr. of Mark. A. Herndon Tr.*, 3:07-CV-0184-B, 2007 U.S. Dist. LEXIS 74688, at *3-4 (N.D. Tex. Sept. 28, 2007) (authorizing substitute service by "securely affixing the Summons, Complaint, and other court papers to the front gate of the residence").

15. The touchstone of these analyses is whether the method of service is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *FTC v. PCCare247 Inc.*, No. 12 Civ. 7189 (PAE), 2013 U.S. Dist. LEXIS 31969, at *11-12 (S.D.N.Y. Mar. 7, 2013) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)); *see PC Drivers Headquarters, LP v. Ambicom Holdings, Inc.*, No. 1:15-cv-1038-RP, 2017 U.S. Dist. LEXIS 51040, at *6 (W.D. Tex. Apr. 4, 2017) ("[T]he due process underpinnings" of service "are well established. Yet it is equally established that 'the Constitution does not require any particular means of service of process.'" (citations omitted)); *see also Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017 (9th Cir. 2002) ("To be sure, the Constitution does not require any particular means of service of process, only that the method selected be reasonably calculated to provide notice and an opportunity to respond. In proper circumstances, this broad constitutional principle unshackles the federal courts from anachronistic methods of service and permits them entry into the technological renaissance." (citations omitted)).

16. As described above and in the affidavits of attempted service attached to the George Declaration, personal service has been attempted on numerous occasions at Mr. Dondero's home and business address. *See generally* George Decl. Exs. 5-8 [UBS067-81]. Additionally, there is no reason to doubt, based on communications with Mr. Dondero's current counsel, that he has actual notice of the Subpoenas, regardless of whether they have been personally served. *See* Adv. Dkt. Nos. 23-3, 23-4 (Mr. Dondero attaching the Subpoenas to his own filing). There can be no question that Mr. Dondero is intentionally and purposefully evading service. *See* George Decl. Exs. 5-8 [UBS067-81]. Continued attempts at personal service of the Subpoenas at these addresses is unlikely to be fruitful, but no prejudice will result to Mr. Dondero if this Motion for alternate service is granted, as service of the Subpoenas by mail and email is likely to be successful since Mr. Dondero "can [more than] probably be found" at those addresses. Tex. R. Civ. P. 106(b); *see McKenzie v. Star Shuttle, Inc.*, No. 5:19-cv-749-JKP, 2019 U.S. Dist. LEXIS 159168, at *6-7 (W.D. Tex. Sept. 18, 2019) (allowing alternative service "in a manner that the record indicates will be reasonably effective to give Defendant . . . notice" when personal service "is unlikely to be effective").

17. Mailing the Subpoenas to Mr. Dondero's home address is "reasonably calculated to ensure receipt of the subpoena by the witness." *See, e.g.*, *TracFone Wireless, Inc. v. SCS Supply Chain LLC*, 330 F.R.D. 613, 616 (S.D. Fla. 2019) (ordering service of third-party subpoenas "by FedEx or UPS, as such methods are reasonably calculated to insure receipt of the subpoena by the witness"). As detailed above, the home address is current, as confirmed by the process servers who have diligently monitored the locations. *See supra* ¶ 8. In such instances, "[c]ertified mail serves the same purpose as Rule 45(b) which is to 'mandate effective notice to the subpoenaed party, rather than slavishly adhere to one particular type of service.'" *N.J. Bldg. Laborers*

8

*Statewide Benefit Funds v. Torchio Bros., Inc.*, No. 08-552, 2009 U.S. Dist. LEXIS 10267, at *6 (D.N.J. Feb. 11, 2009) (citation omitted).

18. While "[s]ervice by email alone comports with due process where a plaintiff can demonstrate that the email is likely to reach the defendant," *Ferrarese*, 164 F. Supp. 3d at 367 (citation omitted), UBS proposes to email the Subpoenas to Mr. Dondero's counsel as a second "reasonably calculated" method to backstop service by overnight mail to his known home addresses. These methods, alone and collectively, are appropriate service alternatives. *See, e.g., Grimsley v. Faulkner*, No. EP-09-cv-396-KC, 2010 U.S. Dist. LEXIS 164484, at *5 (W.D. Tex. Mar. 5, 2010) ("Service by first-class mail is also an acceptable substitute" under Texas Rule 106(b)); *Ferrarese*, 164 F. Supp. 3d at 366 ("Courts have found that service by certified mail to a defendant's last known address is a valid method of alternate service."); *MetroPCS v. Devor*, 256 F. Supp. 3d 807, 808 (N.D. Ill. 2017) (finding a deposition notice sent via Facebook and email to be "properly served" since plaintiff's diligent traditional service attempts under the Federal Rules had been unsuccessful).

19. Nor is this request out of the ordinary, as multiple courts have authorized service of process via alternative means, including by mail and email when, as here, a witness is avoiding service. *See, e.g.*, Agreed Order Granting Agreed Mot. for Alt. Serv. of Dep. Subpoena, *AMAX Inv. Co. v. Amtrust Ins. Co. of Kan., Inc.*, No. 3:13-cv-1589 (N.D. Tex. Aug. 19, 2014), Dkt. No. 39 (authorizing alternative service of a deposition notice and subpoena after the party to be served evaded four service attempts) (attached as **Exhibit D** to the Appendix [UBS091-93]); *Ferrarese*, 164 F. Supp. 3d at 367 ("Having considered the petitioner's submissions and the facts and circumstances of this case, especially the defendant's persistent effort to evade service, the Court finds that service by alternate methods is proper in this case."). "The Federal Rules of Civil

Procedure should not be construed as a shield for a witness who is purposefully attempting to evade service." *Cordius Tr. v. Kummerfeld*, No. 99 CIV. 3200 (DLC), 1999 U.S. Dist. LEXIS 19980, at *5-6 (S.D.N.Y. Jan. 3, 2000) (granting the motion for alternative service via certified mail on a third party after considering the movant's "repeated attempts" to effect service as well as the "cost and delay that would result by requiring further attempts at such service").

20. In addition, and as detailed above, there can be no question that Mr. Dondero is already aware of the Subpoenas and UBS's service attempts. *See supra* ¶¶ 4-6. "[W]ealthy deponents may not evade service by occupying multiple residences and enjoying the privilege of concierge and housekeeping services." *In re Viacao Itapemirim, S.A.*, 608 B.R. 268, 274 (Bankr. S.D. Fla. 2019). In cases such as this one, where the individual to be served thwarts personal service "as a means of creating a procedural hurdle to timely litigation," alternative service will cause no prejudice. *Terrestrial Comms LLC v. NEC Corp.*, No. 6:20-CV-00096-ADA, 2020 U.S. Dist. LEXIS 110983, at *9-11 (W.D. Tex. June 24, 2020).

21. Accordingly, UBS respectfully requests this Court grant the Proposed Order attached as **Exhibit A** to the Motion.

## CONCLUSION

UBS respectfully requests the Court enter an Order:

(1) authorizing alternative service upon Mr. Dondero by (i) overnight mail to his current home address; and (ii) email to Mr. Dondero's counsel; and

(2) granting such other relief as UBS may be entitled in law or in equity.

[*Remainder of this page intentionally left blank.*]

| | |
|---|---|
| Dated: April 19, 2021 | Respectfully submitted, |

/s/ *Andrew Clubok*

**LATHAM & WATKINS LLP**
Andrew Clubok (*pro hac vice*)
Sarah Tomkowiak (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, District of Columbia 20004
Telephone: (202) 637-2200
Email: andrew.clubok@lw.com
      sarah.tomkowiak@lw.com

Jeffrey E. Bjork (*pro hac vice*)
Kimberly A. Posin (*pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Email: jeff.bjork@lw.com
      kim.posin@lw.com

Kathryn George (*pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: Kathryn.george@lw.com

**BUTLER SNOW LLP**
Martin Sosland (TX Bar No. 18855645)
Candice Carson (TX Bar No. 24074006)
2911 Turtle Creek Blvd., Suite 1400
Dallas, Texas 75219
Telephone: (469) 680-5502
Email: martin.sosland@butlersnow.com
      candice.carson@butlersnow.com

*Counsel for UBS Securities LLC and UBS AG London Branch*

## CERTIFICATE OF SERVICE

I, <u>Martin Sosland</u>, certify that the *Memorandum of Law in Support of Plaintiffs' Motion for an Order Authorizing Alternative Service of Subpoenas* was filed electronically through the Court's ECF system, which provides notice to all parties of interest.

Dated: April 19, 2021

<u>/s/ Martin Sosland</u>