**LATHAM & WATKINS LLP**
Andrew Clubok (*pro hac vice*)
Sarah Tomkowiak (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, District of Columbia 20004
Telephone: (202) 637-2200

Jeffrey E. Bjork (*pro hac vice*)
Kimberly A. Posin (*pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234

Kathryn George (*pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700

*Counsel for UBS Securities LLC and UBS
AG London Branch*

**BUTLER SNOW LLP**
Martin Sosland (TX Bar No. 18855645)
Candice Carson (TX Bar No. 24074006)
2911 Turtle Creek Blvd., Suite 1400
Dallas, Texas 75219
Telephone: (469) 680-5502

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

-----------------------------------------------------------

| | | |
|---|---|---|
| In re | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| | § | |
| Debtor. | § | |
| | § | |

-----------------------------------------------------------

| | | |
|---|---|---|
| UBS SECURITIES LLC AND UBS AG LONDON BRANCH, | § | Adversary Proceeding |
| | § | |
| | § | No. 21-03020-sgj |
| Plaintiffs, | § | |
| | § | |
| vs. | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Defendant. | § | |

-----------------------------------------------------------

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

**TABLE OF CONTENTS**

Page

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 4

ARGUMENT ..................................................................................................................... 12

I.     The Court Should Compel The Former Employees To Comply With The Subpoenas .......................................................................................................... 12

II.    The Court Should Deny The Motion To Quash ................................................... 14

       A.     The Subpoenas Are Valid And Timely ................................................... 15
       B.     The Subpoenas Seek Relevant Information And Do Not Impose Undue Burden ........................................................................................... 18
       C.     There Is No Reason To Stay Discovery ................................................... 21
       D.     UBS Has Made Clear it Would Make Appropriate Accommodations For Ms. Lucas ........................................................................................... 22

CONCLUSION .................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Adkins Supply, Inc.*,
555 B.R. 579 (Bankr. N.D. Tex. 2016) .......................................................................... 12, 13

*Bucher v. Richardson Hosp. Auth.*,
160 F.R.D. 88 (N.D. Tex. 1994) .......................................................................................15

*Buckeye Ret. Co. v. Wade (In re Wade)*,
2012 Bankr. LEXIS 5210 (Bankr. S.D. Tex. Nov. 7, 2012)........................................... 12, 13

*Hamilton v. First Am. Title Ins. Co.*,
No. 3:07-CV-1442-G, 2010 WL 791421 (N.D. Tex. Mar. 8, 2010).....................................12

*McLeod, Alexander, Powel and Apffel, P.C. v. Quarles*,
894 F.2d 1482 (5th Cir.1990) ...........................................................................................13

*MetroPCS v. Thomas*,
327 F.R.D. 600 (N.D. Tex. 2018) ......................................................................................21

*In re Ramirez*,
241 F.R.D. 595 (W.D. Tex. 2006) .....................................................................................21

*In re Tex. Bumper Exch., Inc.*,
333 B.R. 135 (Bankr. W.D. Tex. 2005) .............................................................................13

*Winfun v. Daimler Chrysler Corp.*,
255 F. App'x 772 (5th Cir. 2007) (per curiam) .................................................................12

## RULES

Bankr. R. 7026 ........................................................................................................................12

Bankr. R. 7037 ........................................................................................................................12

Bankr. R. 9016 ........................................................................................................................12

Bankr. R. 9019 .............................................................................................................. 2, 20, 22

Fed. R. Civ. P. 1 ......................................................................................................................22

Fed. R. Civ. P. 24 ....................................................................................................................18

Fed. R. Civ. P. 26 ....................................................................................................................12

Fed. R. Civ. P. 26(b)(1) ................................................................................................12

Fed. R. Civ. P. 27 ........................................................................................................21

Fed. R. Civ. P. 37 ........................................................................................................12

Fed. R. Civ. P. 37(a)(3)(B) ..........................................................................................12

Fed. R. Civ. P. 37(a)(5) ...............................................................................................14

Fed. R. Civ. P. 45 ........................................................................................................24

Fed. R. Civ. P. 45(d)(B)(i) ..........................................................................................12

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL AND RESPONSE TO MOTION OF FORMER EMPLOYEES TO QUASH SUBPOENAS

UBS Securities LLC and UBS AG London Branch (together, "UBS"), plaintiffs in the above-captioned adversary proceeding (the "Adversary Case") and creditors in the above-captioned chapter 11 case (the "Bankruptcy Case"), by and through their undersigned counsel, respectfully submit this memorandum of law (the "Memorandum of Law") in support of *Plaintiffs' Motion To Compel And Response To Motion Of Former Employees To Quash Subpoenas* to request an order, substantially in the form of Exhibit A, (i) compelling Scott Ellington, Isaac Leventon, Matthew DiOrio, Jean Paul Sevilla, and Katie Lucas (collectively, the "Former Employees") to comply with the *Subpoenas to Testify at a Deposition in a Bankruptcy Case or Adversary Proceeding* and *Subpoenas to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding* (together, the "Subpoenas") by producing documents and deposition testimony and (ii) denying the *Motion of Former Employees to Quash Subpoenas* [Adv. Dkt No. 70] (the "Motion to Quash").

## INTRODUCTION

Much like their former (and for some, current) boss, the Former Employees have followed James Dondero's lead at feigning ignorance, shock, and burden in trying to avoid producing documents and testifying about their role in fraudulently transferring hundreds of millions of dollars of assets (the "Transferred Assets") away from funds currently or previously controlled, owned, and/or managed by the Debtor to Sentinel Reinsurance, an offshore entity indirectly owned by Mr. Dondero and Mr. Ellington (one of the Former Employees) in anticipation of the judgment that UBS obtained against those funds in New York state court (the "Fraudulent Transfers").

The Former Employees were each personally involved in the Fraudulent Transfers in August 2017 and beyond, and certain of them appear to be affiliated with Sentinel *today*. Despite

purposefully evading **nearly 70** attempts at personal service, the Former Employees concede they "received" the Subpoenas—which included schedules detailing the types of documents sought and the topics on which they would be deposed—almost seven weeks ago. Mot. at 6, n.3. The Former Employees also received detailed document preservation notices, have access to the sealed Adversary Complaint pursuant to a confidentiality agreement, and have access to the TRO Order (defined below) and the Debtor's publicly-available Rule 9019 motion. Yet the Former Employees continue to pretend that they "lack notice" of the claims and relief sought in this Adversary Proceeding. That is utterly implausible. As this Court observed in rejecting a similar argument made by Mr. Dondero, the Former Employees must "have a pretty good clue what the lawsuit is about." *Declaration of Sarah Tomkowiak in Support of Plaintiffs' Motion to Compel and Response to Motion of Former Employees to Quash Subpoenas* (the "Tomkowiak Decl."), Ex. 25 (Apr. 28 Hr'g Tr.) at 15:5–6. Indeed, that observation is even more apt here, as Mr. Dondero did not have access to the Adversary Complaint at the time he made that claim, while the Former Employees have the Adversary Complaint. The Former Employees' arguments that the Subpoenas must be quashed because there is no live or actual "dispute" between the parties and/or because this testimony might be used against them in subsequent litigation fundamentally misunderstands the relationship between the parties and the purpose of the discovery sought. In any event, Mr. Dondero made these same arguments, and the Court rejected them. *See id.* at 11:16–12:15.

Due to their direct, personal knowledge of the underlying events, discovery from them is relevant and needed to support UBS's forthcoming request for injunctive relief. This Court entered an *Order Granting Plaintiffs' Motion for a Temporary Restraining Order* [Adv. Dkt. No. 21] (the "TRO Order") on April 9, 2021, under which the Debtor is "temporarily enjoined and restrained from making or allowing funds under its management or control (including, but not limited to,

Multi-Strat and CDO Fund) to make any payments or further transfers to Sentinel or any of its affiliates or any transferees of the Sentinel Entities consisting of, resulting from, or relating to the Transferred Assets." *Id.* at 3. The TRO Order remains in place only until this Court's decision on UBS's requested preliminary injunction, for which UBS must demonstrate good cause. *Id.* Although the Independent Board[1] has provided UBS with information it has been able to locate to date regarding these Fraudulent Transfers, UBS needs discovery from the Former Employees to develop fully the record regarding the circumstances of the Fraudulent Transfers, and the breadth and scope of the injunctive relief needed to prevent further harm to UBS.

Finally, while the Former Employees attempt to falsely portray UBS as "unilaterally" demanding documents and scheduling depositions on unreasonably short notice, the Former Employees neglect to mention that they simply ignored UBS's repeated requests for mutually agreeable dates for their document productions and depositions. UBS remains willing to accommodate the Former Employees' legitimate personal commitments, and in the case of Ms. Lucas, make all accommodations necessary in light of her maternity leave. But the Former Employees have refused to provide even a single proposed date for any of their depositions or even identify any such commitments (or in the case of Ms. Lucas, identify a planned end date for her maternity leave).

Accordingly, UBS respectfully requests this Court grant the Proposed Order attached as **Exhibit A,** compelling the Former Employees to produce documents and testify pursuant to the Subpoenas and denying the Motion to Quash.

---

[1] The Independent Board refers to the independent board of directors at Strand Advisors, Inc., the Debtor's general partner, created pursuant to a "corporate governance" settlement approved by the Court [Dkt. No. 339] in the Bankruptcy Case.

## **FACTUAL BACKGROUND**

1.     The Motion to Quash seeks to blur the history of this discovery dispute to paint the Former Employees as innocent victims of unreasonable discovery demands. This is belied by the record, which reflects UBS's reasonable, and good-faith efforts to obtain discovery as compared with the Former Employees' tactics to evade and delay.[2]

2.     On April 2, 2021, UBS began attempting to serve the Subpoenas on the Former Employees by engaging Serving by Irving, Inc., a licensed process serving firm. Tomkowiak Decl. ¶ 3. Each of the Former Employees was commanded to produce documents by April 9, 2021 at 9:00 am CT. Mr. Sevilla was subpoenaed for a deposition on April 14, 2021 at 9:00 am CT. Mr. Ellington and Mr. DiOrio were subpoenaed for a deposition on April 15, 2021 at 9:00 am CT, and Mr. Leventon and Ms. Lucas were subpoenaed for a deposition on April 16, 2021 at 9:00 am CT. *See id.*, Exs. 1–5.

3.     On April 5, 2021, after being unsuccessful in its attempts thus far to serve the Former Employees, UBS's counsel emailed copies of the Subpoenas to various counsel of record in the Bankruptcy Case for each of the Former Employees. *See id.*, Exs. 6–8.

4.     On April 7, 2021, Michael P. Hutchens, counsel to Ms. Lucas and Mr. DiOrio in the Bankruptcy Case, informed UBS he was not authorized to accept service of the Subpoenas on their behalf—despite both Ms. Lucas and Mr. DiOrio authorizing him to accept service of UBS's Preservation Letter on their behalf just a week earlier. *Id.*, Ex. 6.

---

[2] In the interest of providing the Court will a full and accurate record, all of the relevant correspondence has been attached as exhibits to the Tomkowiak Decl., so that the Court may review the correspondence firsthand, rather than rely on the Former Employees' self-serving paraphrasing of these emails.

5. On April 8, 2021, UBS received an email from Baker & McKenzie LLP that it was prospective counsel for the Former Employees and, while willing to discuss the Subpoenas, it was not authorized to accept service. *Id.*, Ex. 9.

6. The Former Employees evaded the process servers for so long that the original deadlines contained in the April 2, 2021 Subpoenas expired. As a result, UBS was forced to amend the Subpoenas to notice them for dates in the future. *See id.*, Exs. 10–14. The amended Subpoenas (dated April 15) required the Former Employees to produce documents by April 20, 2021 at 9:00 am CT and to appear for a deposition on April 27, 2021 at 9:00 am CT "*or at a date and time mutually agreed upon.*" *Id.* UBS continued to try to serve these Subpoenas. The amended Subpoenas for Mr. Leventon were emailed to him on April 15, 2021. *Id.*, Ex. 15.

7. The morning of April 16, 2021, Frances Smith of Ross & Smith, PC emailed UBS's counsel to notify them that Mr. Leventon had received UBS's April 15 email and that her firm had been retained to represent not only Mr. Leventon, but all five of the Former Employees. *Id.*, Ex. 16. Ms. Smith stated that all communications should be directed to her firm rather than the Former Employees; however, when UBS emailed the amended Subpoenas for all of the Former Employees, she did not accept service on her clients' behalf.

8. Mr. Sevilla and Mr. DiOrio were, ultimately, formally served on April 16, 2021. Mot. at 16, ¶ 15. Mr. Leventon was formally served on April 19, 2021. *Id.* Later that day, UBS's counsel informed Ms. Smith that UBS intended to file a motion for alternative service for the remaining Former Employees (Mr. Ellington and Ms. Lucas); it was only then that Ms. Smith responded that she was authorized to accept service of the Subpoenas for the remaining Former Employees. Tomkowiak Decl., Ex. 16. All told, UBS made *nearly 70* attempts over more than two weeks to serve the Subpoenas on the Former Employees. *See id.*, Ex. 24.

9. Despite counsel for the Former Employees having received the Subpoenas as early as April 5, none of the Former Employees produced documents or served objections or responses by the extended, April 20, 2021 deadline. Instead, on April 20, 2021, Ms. Smith wrote a letter to UBS, requesting that UBS provide a copy of the sealed Adversary Complaint, Motion for a Temporary Restraining Order and Preliminary *Injunction*, and related exhibits (the "Sealed Adversary Papers"). *Id.*, Ex. 17. Ms. Smith indicated her clients were "happy to enter into a protective order to preserve the confidentiality of these documents." *Id.*

10. The next day, on April 21, 2021, Ms. Smith sent UBS another letter, claiming that the Subpoenas were improper, asserting various other boilerplate objections to the Subpoenas, and again requesting the Sealed Adversary Papers. *Id.*, Ex. 18. In the cover email attaching the letter, Ms. Smith noted she was willing to "meet and confer regarding the Document Requests and Deposition Notices referenced therein." *Id.*, Ex. 19.

11. The next day, on April 22, 2021, UBS's counsel sent a letter in response to the April 20 and April 21 letters. *Id.*, Ex. 20. Although UBS vigorously disagreed with the Former Employees' characterization of the Subpoenas, UBS offered—in good faith and in order to facilitate the Former Employees' document productions and deposition testimony—to share the Adversary Complaint with the Former Employees if they would agree to: (i) "produce any relevant documents in their possession, custody, and control in response to the Document Requests"; (ii) "sit for depositions pursuant to the Deposition Subpoenas at **agreed-to dates** prior to the hearing on UBS's requested injunctive relief"; (iii) "enter into a confidentiality agreement regarding the Complaint"; and (iv) "destroy any copies of the Complaint after the completion of the document productions pursuant to the Document Requests and depositions pursuant to the Deposition Subpoenas." *Id.* at 3. The letter also specifically noted that UBS was "willing to discuss Ms.

Lucas's situation and necessary accommodations." *Id.* The letter closed by agreeing to meet and confer that afternoon at a time that worked for the Former Employees' Counsel. *Id.*

12. In response, Ms. Smith stated that she would "review the letter and respond with a proposed time." *Id.*, Ex. 19. But the next day on April 23, 2021 and without meeting and conferring, Ms. Smith notified UBS's counsel that the Former Employees would move to quash the Subpoenas. *Id.* In response that same day (Friday), UBS's counsel again offered to meet and confer regarding the "time/date/scope of the subpoenas as we stated in our letter." *Id.*

13. On April 26, 2021 (Monday), UBS reiterated its offer to share the Adversary Complaint pursuant to the same conditions set forth in its April 22, 2021 letter. *Id.* Ms. Smith indicated that the Former Employees were willing to maintain confidentiality, but "not subject to certain of the conditions that you are seeking to impose, which are entirely unrelated to confidentiality issues." *Id.*

14. The parties then conducted a meet and confer on April 27, 2021. *Id.* ¶ 15. UBS's counsel explained that UBS needed discovery to meet the standard for an injunction independent of whether the Debtor does not oppose the temporary restraining order relief and further stated that it was UBS's understanding that the Debtor did not oppose the temporary restraining order, but that did not necessarily extend beyond that temporary relief sought. *Id.* UBS's counsel again indicated that it would make accommodations for Ms. Lucas. *Id.* Counsel for the Former Employees, in turn, claimed that the Former Employees did not have relevant information relating to the Fraudulent Transfers. *Id.*

15. On April 29, 2021, UBS reiterated—for a third time since April 22—its offer to share the Adversary Complaint if the Former Employees would agree to the conditions set forth in the April 22, 2021 letter, which are substantially the same as the conditions imposed by the Court

in its April 29, 2021 order authorizing UBS to effect alternative service of subpoenas on Mr. Dondero.  *Id.*, Ex. 19.  Given the already month long delay in obtaining discovery pursuant to the Subpoenas, UBS's counsel asked that, upon receiving the Adversary Complaint, that counsel for the Former Employees "promptly inform us, within 3 business days of receiving the complaint, whether your clients intend to comply with the subpoenas, produce any responsive documents, and work with us to schedule mutually acceptable dates for the depositions, or whether they still intend to move to quash."  *Id.*  Counsel for the Former Employees stated they would "discuss and get back to you asap."  *Id.*

16.     After five more days passed without any response, UBS's counsel reiterated its offer to share the Adversary Complaint for a fourth time on May 4, 2021.  *Id.*

17.     On May 5, 2021, counsel for the Former Employees responded that the Former Employees agreed to the confidentiality terms, but refused to commit to responding within three days of receiving the Adversary Complaint of the Former Employees' intentions to comply or move to quash and promised only to "endeavor to promptly inform [UBS] whether our clients intend to comply with the subpoenas, produce any responsive documents, and appear for depositions, or whether they still intend to move to quash."  *Id.*

18.     That same day, UBS's counsel stated that it would send a draft confidentiality agreement the next day and that upon receipt of the fully executed confidentiality agreement, UBS would send the Adversary Complaint.  *Id.*  Given that the Former Employees' delays had again caused the Subpoenas' deadlines to pass, UBS's counsel responded that "[i]n the interim, we will re-issue the subpoenas for production and deposition dates for the end of next week and the week of May 17, by which time your clients will have had ample time to evaluate the complaint, respond to the subpoenas and prepare for any deposition."  *Id.*  UBS's counsel further stated that, "If Ms.

Lucas requires a reasonable accommodation due to her maternity leave, we are happy to discuss that with you. With regard to Messrs. Ellington, Leventon, DiOrio, and Sevilla, we expect that they will comply with their obligations pursuant to the subpoenas, but if there is a legitimate reason that a particular noticed date does not work (planned travel, personal appointments, etc.) we are willing to discuss a mutually agreeable alternative." *Id.* Counsel for the Former Employees did not respond to or acknowledge this May 5, 2021 email.

19. The following day, on May 6, 2021 and as promised, UBS's counsel sent the draft confidentiality agreement. *Id.*

20. On May 7, 2021, UBS filed notices of the Subpoenas, extending the document production deadline to May 11, 2021 and extending the deposition dates to May 13 for Mr. Leventon, May 14 for Mr. DiOrio, May 18 for Mr. Sevilla, May 19 for Mr. Ellington, and May 20 for Ms. Lucas (all a full month later than the original Subpoenas' deadlines). Adv. Dkt Nos. 55–65. Even after all of the Former Employees' delays, these notices still offered to schedule each deposition for "such other day and time as counsel for UBS, counsel for the Debtor, and counsel for [each Former Employee] agree." *Id.* UBS's counsel provided copies of the as-filed notices the next day. Tomkowiak Decl., Ex. 21.

21. Late in the afternoon on May 10, 2021, counsel for the Former Employees agreed to the substantive terms of the confidentiality agreement (suggesting only a few minor edits), which contained the same substantive confidentiality terms as were offered over two weeks earlier in the original April 22, 2021 letter. Tomkowiak Decl., Ex. 19. Counsel indicated the Former Employees would not comply with the dates in the as-filed Subpoenas and requested that UBS not seek to enforce those dates. *Id.*

22.     That same day, UBS's counsel provided the Former Employees' counsel a revised draft confidentiality agreement incorporating their minor edits, and stated that once signed, UBS would share the Adversary Complaint.  *Id.*  With regard to the Subpoenas, UBS's counsel stated it would not agree to stand down on the Subpoenas but indicated they again would consider "mutually agreed date in the near future for the documents and depositions."  *Id.*

23.     On May 11, 2021, after UBS offered four separate times over nearly three weeks to share the Adversary Complaint pursuant to certain conditions, the Former Employees finally signed the confidentiality agreement,[3] and that same day, UBS's counsel provided a copy of the Adversary Complaint.  *Id.*, Ex. 22.  None of the Former Employees produced documents by the May 11, 2021 document subpoena deadline or offered any other mutually agreeable date to do so.

24.     Given the expiration of the document subpoena deadline and silence from the Former Employees on dates they would sit for depositions, on May 12, 2021, UBS's counsel wrote to counsel for the Former Employees and informed them that, because the Former Employees had failed to comply with the document subpoenas and because counsel for the Former Employees indicated they would not comply with the deposition subpoenas, UBS would move to compel the Former Employees to comply with the Subpoenas.  *Id.*, Ex. 19.

25.     UBS's counsel and the Former Employees then met and conferred via telephone on May 12, 2021.  *Id.* ¶ 18.  During this meet and confer, UBS's counsel expressed concern that six weeks had passed since UBS originally issued the Subpoenas and the Former Employees had still not produced documents, agreed to sit for a deposition, or move to quash.  Even still, UBS's

---

[3] It is concerning that the Former Employees characterize the confidentiality agreement as "restrictive" (Mot. ¶ 31) when it simply seeks to stop the Former Employees from discussing or sharing the information with anyone other than their counsel, begging the question of what the Former Employees were otherwise planning to do with the information. Moreover, these terms are substantially the same as the conditions imposed by the Court in its April 29, 2021 order authorizing UBS to effect alternative service of subpoenas on Mr. Dondero.  Adv. Dkt No. 45.

counsel offered to hold off on filing any motion to compel if counsel for the Former Employees agreed to inform UBS, no later than Saturday, May 15, 2021, of dates on which four of the Former Employees (excluding Ms. Lucas) would be available for depositions or confirmation that the Former Employees would move to quash the Subpoenas. *Id.* During that meet and confer, UBS's counsel reiterated that it would reasonably accommodate all of the Former Employees (as well as their counsel) in scheduling their depositions, noting repeatedly that family issues take precedence over the Subpoenas. *Id.*

26.     With regard to Ms. Lucas, in particular, UBS's counsel indicated that they would not seek to enforce the deposition Subpoena against her until such later date as she becomes available to sit for deposition. *Id.* At no point did UBS state or imply that maternity leave did not constitute a "legitimate disability," Mot. ¶ 47; to the contrary, UBS stated repeatedly it would accommodate Ms. Lucas if she could not appear via videoconference for a deposition. Tomkowiak Decl. ¶ 18.

27.     It should be noted that counsel for the Former Employees stated during this meet and confer that all of the Former Employees could not be made available for depositions on such allegedly short notice, including Mr. Ellington for a May 19 deposition. *Id.* However, Mr. Ellington was on Mr. Dondero's witness list for the trial previously set for May 18 and 19, 2021 in the adversary proceeding against Mr. Dondero (Case No. 20-03190, Dkt. No 151)—the *same day* UBS tried to schedule Mr. Ellington's deposition for (Adv. Dkt. No. 56), but was told the notice was too short.

28.     On May 15, 2021, counsel for the Former Employees informed UBS's counsel that the Former Employees would move to quash, and filed the instant Motion minutes later. *Id.*, Ex. 23.

**ARGUMENT**

**I.** **The Court Should Compel The Former Employees To Comply With The Subpoenas**

29.     Courts have "broad discretion in discovery matters." *Hamilton v. First Am. Title Ins. Co.*, No. 3:07-CV-1442-G, 2010 WL 791421, at \*4 (N.D. Tex. Mar. 8, 2010) (quoting *Winfun v. Daimler Chrysler Corp.*, 255 F. App'x 772, 773 (5th Cir. 2007) (per curiam). Rule 26 of the Federal Rules of Civil Procedure, applicable through Bankruptcy Rule 7026, facilitates broad-ranging discovery, allowing discovery of any "nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

30.     "Under Rule 37 of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7037, a party propounding discovery may move to compel the disclosures of any relevant and otherwise discoverable material." *Buckeye Ret. Co. v. Wade (In re Wade)*, 2012 Bankr. LEXIS 5210, at \*10 (Bankr. S.D. Tex. Nov. 7, 2012); Fed. R. Civ. P. 37(a)(3)(B). Pursuant to Federal Rule of Civil Procedure 45(d)(B)(i), as made applicable by Bankruptcy Rule 9016, "if a subpoenaed person fails to comply with a subpoena, the requesting party may move the issuing court for an order compelling compliance with the subpoena." *In re Wade*, 2012 Bankr. LEXIS 5210, at \*10; Fed. R. Civ. P. 45(d)(B)(i).

31.     Relevance "is broadly construed, especially in the context of discovery requests, which should be considered relevant if there is *any possibility* that the information sought may be relevant to the claim or defense." *In re Adkins Supply, Inc.*, 555 B.R. 579, 589 (Bankr. N.D. Tex. 2016) (emphasis in original). "Information sought only fails the relevance test if it is clear that it could have no possible bearing on the claim." *Id.*

32.     In this Adversary Proceeding, UBS seeks injunctive relief relating to assets fraudulently transferred pursuant to a purchase agreement between certain Debtor-affiliated funds (that the Former Employees used to do work for) and Sentinel. The Subpoenas seek evidence

directly relevant to the injunctive relief sought, the Fraudulent Transfers, and the Transferred Assets themselves, including, for example: documents and communications regarding the relevant agreements pursuant to which the Fraudulent Transfers were made; documents relating to subsequent transfers to Sentinel and about Sentinel, the recipient of the Transferred Assets and an entity affiliated with certain Former Employees; documents sufficient to identify accounts used to transfer the Transferred Assets; and documents concerning the then-value of the Transferred Assets. Tomkowiak Decl., Exs 1–5. For these reasons and as detailed more fully below, UBS easily meets its burden of establishing the relevancy of the materials and testimony sought.

33.     "Once the moving party establishes that the materials and information it seeks are relevant to the lawsuit or will lead to the discovery of admissible evidence, the burden rests upon the party resisting discovery to substantiate its objections and why the materials at issue should not be produced." *In re Wade*, 2012 Bankr. LEXIS 5210, at \*10–11 (citing *McLeod, Alexander, Powel and Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir.1990)). A movant "resisting discovery is swimming against a strong upstream policy current. The policy underlying the discovery rules encourages *more* rather than less discovery, and discourages obstructionist tactics." *In re Tex. Bumper Exch., Inc.*, 333 B.R. 135, 139–40 (Bankr. W.D. Tex. 2005) (emphasis in original). For the reasons explained below, the Former Employees cannot meet this burden. *See infra* at Section II.

34.     The Former Employees cannot establish undue burden or lack of adequate notice. The Subpoenas are narrowly tailored and do not seek duplicative materials that UBS can obtain from the Debtor or other sources. UBS has tried in good faith to obtain this discovery for over a month. Counsel for the Former Employees have had the Subpoenas in their possession since April 8, 2021. Tomkowiak Decl., Ex. 9. The deadlines have been extended on three separate occasions,

providing ample time for the Former Employees to review the Subpoenas, identify relevant documents, and prepare for depositions. *Id.*, Exs. 1–5, 10–14; Adv. Dkt Nos. 55–65. The contents of the Subpoenas and the Preservation Notices alone are sufficient to apprise the Former Employees of the subject matter of this dispute such that they can adequately produce documents and prepare for deposition, and they now have access to all of the allegations in the Adversary Complaint itself. Any arguments by the Former Employees regarding their inability to respond to the Subpoenas based on a lack of notice are thus even weaker than those made by Mr. Dondero and rejected by this Court. This Court has the discretion, and should now compel the Former Employees, to cease the dilatory tactics and satisfy their discovery obligations.[4]

35.     In light of the Former Employees' purposefully-evasive nature, this Court should grant UBS its reasonable expenses incurred in filing this motion to compel the Former Employees to produce discovery in response to the Subpoenas, including attorney's fees, as required by Rule 37(a)(5). Fed. R. Civ. P. 37(a)(5) (If the motion is granted…the court *must*, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.") (emphasis added).

## II.     The Court Should Deny The Motion To Quash

36.     For the same reasons, the Former Employees have not shown good cause exists to quash the Subpoenas, and this Court should deny their Motion in its entirety. "A party seeking to quash a [subpoena] in its entirety has a heavy burden of demonstrating good cause. The standard in the Fifth Circuit is 'extraordinary circumstances.'" *Bucher v. Richardson Hosp. Auth.*, 160

---

[4] As noted, in the case of Ms. Lucas, UBS has always been and remains willing to accommodate her and only seeks to compel Mr. Lucas to comply with the Subpoenas and produce documents and sit for a deposition as soon as she is no longer disabled.

F.R.D. 88, 92 (N.D. Tex. 1994) (internal citations omitted) (denying motion to quash).  The Former Employees' kitchen-sink objection to the Subpoenas is unsupported by fact or law and comes nowhere close to meeting the necessary burden.  The challenges to the validity and timeliness of the Subpoenas fail.  An actual, live controversy exists between UBS and the Debtor, who remain adverse to one another in this matter despite settling separate claims pursuant to the Bankruptcy Case.  This is especially true given that the Debtor's consent to the temporary restraining order does not necessarily extend to a preliminary injunction, much less a permanent injunction.  The time to take discovery to support UBS's forthcoming request for injunctive relief is now.  The Former Employees' objections on grounds of prejudice, relevancy, and undue burden likewise fail.

### A.    The Subpoenas Are Valid And Timely

37.    The Former Employees' attack on the validity of the Subpoenas is predicated on a fundamental misapprehension of both the terms of the Settlement Agreement between UBS and the Debtor and the relationship between UBS and the Debtor as adverse parties.

38.    Contrary to the Former Employees' assertion, the Settlement Agreement does not resolve the live dispute between UBS and the Debtor with regard to the subject matter of this Adversary Proceeding.  It settles only UBS's separate claims asserted in the Bankruptcy Case. Dkt. No. 2200, Ex. 1.

39.    Nor is there any merit to the Former Employees' contention that this Adversary Proceeding constitutes a "friendly-party litigation," a contention which simply parrots Mr. Dondero's baseless assertion that this Court appropriately rejected during the April 28, 2021 hearing regarding Mr. Dondero's motion for a protective order.  Tomkowiak Decl., Ex. 25 (Apr. 28 Hr'g Tr.) at 36:5–17.  UBS and the Debtor have fiercely litigated against one another for more than a decade, and UBS is currently seeking to enforce a billion-dollar judgment against two of the Debtor's affiliated funds, and prevent further dissipation of assets that may be used to satisfy

that judgment. The Debtor is the sole defendant in the Adversary Proceeding, and it is the Debtor's managed funds that would be enjoined if UBS's request for a permanent injunction is successful. The Debtor's agreement to cooperate with discovery might be a novel concept to the Former Employees, Mot. at 9, but it is rather unremarkable in the context of civil litigation.[5] The Debtor has only ever stated that it did not oppose the relief sought in the TRO and the Former Employees have failed to cite any statement from the Debtor otherwise.[6] Further and regardless of the Debtor's stance on the relief sought, UBS needs (and is entitled to) discovery in order to develop fully a record supporting good cause to enter a preliminary and permanent injunction.

40. Similarly, the Former Employees' claims of prejudice do not pass muster. With regard to the Former Employees' complaints about the "*secrecy*" of the proceedings, they have possessed, since March 30, 2021, detailed preservation notices that make clear that the Adversary Proceeding concerns assets fraudulently transferred pursuant to a purchase agreement between certain funds and Sentinel. As was the case with Mr. Dondero, it is simply implausible to suggest that the Former Employees were not well aware of the context of this Adversary Proceeding as early as the date they received the preservation notices since they *took, authorized, and/or directed the actions that necessitated the Adversary Proceeding.* The subject matter could be further gleaned from the detailed topics included in the Subpoenas and the publicly-available TRO Order

---

[5] The fact that the Independent Board disclosed rampant fraud to UBS does not mean there is no live dispute between the parties, or that they are working hand-in-hand. The Debtor has never shared "an apparently privileged report that included interviews with the Debtor's employees and in-house counsel" as the Former Employees baselessly claim. Mot. ¶ 25. In fact, when UBS's counsel questioned what report the Former Employees were referring to, counsel for the Former Employees refused to answer, instead responding, "I don't recall agreeing to be deposed by you." Tomkowiak Decl., Ex. 23. UBS's counsel followed up multiple times, but counsel for the Former Employees refused to provide the good faith basis for this statement. *Id.* For the avoidance of doubt, to the extent any previously privileged documents have been produced to UBS, the Debtor has made abundantly clear that such production is a limited waiver and not a broader waiver of the attorney-client privilege.

[6] The Former Employees' citation to the Adversary Complaint does not change this analysis as UBS simply stated that the Debtor did not oppose the relief sought, which meant the preliminary relief under the TRO that was subsequently granted by the Court.

and Debtor's Rule 9019 motion. Further, the Former Employees are in possession of the Adversary Complaint (a document they were offered four times since April 22, 2021 but—because of their delay tactics—received on May 12).[7] *See* Tomkowiak Decl., Ex. 19. The Adversary Complaint, by definition, contains *all* relevant allegations in the Adversary Proceeding.

41.     The Former Employees' complaints about "*false urgency*" are simply wrong. The Former Employees observe that UBS has yet to even seek a hearing date for its request for a preliminary injunction, but that only highlights why this discovery is needed now: UBS wants the earliest possible hearing date, but needs to complete necessary discovery before it can request a hearing to present the evidence it develops in discovery. UBS has not been able to do so in large part because of the Former Employees' evasive behavior. And the Former Employees are wrong that the discovery sought relates solely transfers in 2017 and "not any current activities of any party." Mot. ¶ 32. First, on their face, the Subpoenas seek evidence "from 2016 *to the present*," on a range of topics relating to the Transferred Assets and Sentinel, including its current activities, to support UBS's request for a preliminary (and permanent) injunction of *future* payments and transfers. *See* Tomkowiak Decl., Exs 1–5. And if anything, the fact that the Fraudulent Transfers took place four years ago only underscores the sense of urgency here, as there is no reason to believe that the Former Employees' memories will improve with further passage of time.

42.     The Former Employees' arguments regarding "*denial of procedural rights*" are similarly unavailing. While the Former Employees' concern that they are the true "targets" of this Adversary Proceeding may be revealing of their own views of their involvement, their speculation alone is an insufficient basis to deny UBS its right to obtain discovery from persons likely to

---

[7] That counsel for the Official Committee of Unsecured Creditors (UCC) reviewed the sealed documents is of no moment. Mot. ¶¶ 4, 11. Among other differentiating factors, (i) UCC counsel agreed to receive and review the documents on an attorneys-eyes-only basis; and (ii) UCC counsel does not represent any individuals personally involved in the Fraudulent Transfers.

possess information reasonably calculated to lead to admissible evidence that UBS may use to seek injunctive relief *against the Debtor*. The Court recognized as much in overruling similar objections made by Mr. Dondero. *Id.*, Ex. 25 (Apr. 28 Hr'g Tr.) at 36:5–17. If the Former Employees are truly concerned that they are the "actual adversaries" in this proceeding, they remain free to intervene as of right pursuant to Rule 24 and have access to sufficient information in the Adversary Complaint, Preservation Notice, Subpoenas, and publicly filed documents to determine whether they satisfy the requirements for intervention. Indeed, this Court already found these documents were sufficient when addressing similar "due process" arguments made by Mr. Dondero. *See* Adv. Dkt No. 23 at 7, Tomkowiak Decl., Ex. 25 (Apr. 28 Hr'g Tr.) at 35:23–36:17, 37:14–38:10 (this Court rejecting those arguments and denying that motion).

**B.** **The Subpoenas Seek Relevant Information And Do Not Impose Undue Burden**

43. The Former Employees' litany of additional objections on relevance, burden, and other grounds, are similarly meritless.

44. *First*, for the reasons stated above, *see supra at* ¶ 32, the Court can easily dispense with the Former Employees' position that the Subpoenas seek evidence irrelevant to the injunctive relief sought in the Adversary Proceeding, because the Subpoenas purportedly seek information about historical transactions while the requested injunctive relief can only, by definition, address on-going transactions. Mot. ¶ 38. All requests for injunctive relief are premised upon existing facts that demonstrate good cause for enjoining future action. Understanding how the Transferred Assets were transferred from Debtor-affiliated funds to Sentinel *starting* in 2017 (and discovering whether any other assets were transferred) is reasonably calculated to lead to the discovery of admissible evidence regarding planned future transfers (including, but not limited to, ongoing cash

distributions, dividends, or other income from the Transferred Assets that may continue today or in the future as a result of the Fraudulent Transfers).

45.     *Second*, the Former Employees' claim that they cannot possibly be the subject of relevant discovery because the forthcoming request for an injunction will only seek to restrain the Debtor is meritless.  Mot. ¶ 39.  Many of the Former Employees only recently left the Debtor's employ, and could well know or have information in their possession related to unknown historical, or planned future, transfers from the Debtor to Sentinel that predated their departure.  If this argument was valid, no third-party discovery in the context of injunctive relief would ever be appropriate.  That is not the law.

46.     *Third*, and relatedly, the Former Employees' argument that UBS can seek the information sought in the Subpoenas directly from the Debtor, Mot. ¶ 40, ignores the facts that (i) the Former Employees likely possess relevant information that the current employees at the Debtor may not possess; (ii) the requests seek any communications regarding the Fraudulent Transfers, including communications using personal email addresses or non-email communications on personal devices; and (iii) upon information and belief, at least certain of the Former Employees continue to have direct connections with Sentinel, giving them access to relevant information related to any current or anticipated transfers from the Debtor-managed Funds to Sentinel that may not be in the possession of the Debtor.   With respect to documents, as UBS has communicated repeatedly, UBS seeks only non-duplicative materials, *i.e.*, documents not in the Debtor's possession, custody or control.

47.     *Fourth*, the Former Employees' feigned ignorance as to the scope of the injunctive relief sought is disingenuous given that the Former Employees have access to the public TRO Order, the Debtor's publicly-available Rule 9019 motion, as well as the Adversary Complaint.

Mot. ¶ 41. The Former Employees submit that they "should be able to see the entire record to enable them to adequately assert their objections," *id.*, but this is a *non sequitur* in light of the facts that the Former Employees already asserted lengthy objections to the Subpoenas, Tomkowiak Decl., Ex. 18, and have not filed a motion to unseal any of the documents they do not already have access to.

48. *Fifth,* neither the Settlement Agreement entered into between UBS and the Debtor to resolve different claims nor the Former Employees' prediction that "[t]here apparently will be no contested preliminary injunction hearing" renders UBS's need for documents and testimony from the Former Employees "moot," as the Former Employees contend, Mot. ¶ 42, for the reasons set forth above. *See supra* at ¶ 39.

49. *Sixth*, and as discussed above, the Subpoenas do not "violate the rule against pre-litigation discovery." Mot. ¶ 43. While the information sought might be relevant to potential future claims against nonparties to the Adversary Proceeding, there is no abuse of the discovery process where, as here, the discovery is *also* relevant to UBS's forthcoming request for injunctive relief. As the Former Employees note, this Court already acknowledged that "[t]here may be other lawsuits that mushroom" from what is alleged in the Adversary Complaint, Tomkowiak Decl., Ex. 25 (Apr. 28 Hr'g Tr) at 36:2–4, before ordering Mr. Dondero to produce documents and sit for a deposition despite his similar concerns. For this reason, the Former Employees' reliance on *MetroPCS v. Thomas*, 327 F.R.D. 600 (N.D. Tex. 2018) is misplaced. Mot. ¶ 43. Unlike in *MetroPCS*, the discovery sought here is plainly relevant to support relief against the Debtor in the instant action, even if it may also be relevant to a potential future action against different defendants. And, neither Federal Rule of Civil Procedure 27 nor *In re Ramirez*, 241 F.R.D. 595

(W.D. Tex. 2006) are on point, Mot. ¶ 43, as UBS did not seek discovery until *after* filing the Adversary Complaint.

50.     *Seventh*, the discovery sought is not burdensome or cumulative.  While UBS seeks documents and testimony from the Former Employees on many of the same topics, as set forth in the Adversary Complaint, each individual played a different role in the Fraudulent Transfers. Nevertheless, UBS will happily meet and confer regarding which Former Employee is best-suited to respond to each request, and strive to avoid duplicative questioning where possible.  However, the Former Employees' blanket objection to being asked to testify about the same topics in light of their different positions, roles, and responsibilities as former Debtor employees is insufficient to warrant quashing the Subpoenas.

###     C.     There Is No Reason To Stay Discovery

51.     The Former Employees' request to stay discovery is predicated on the same fundamental misapprehension of the terms of the Settlement Agreement.  Mot. ¶ 46.  The Settlement Agreement does not resolve the instant dispute between UBS and the Debtor—in fact, it explicitly carves out this dispute.  *See* Bankruptcy Case Dkt. No. 2200, Ex. 1 § 3(a)(6).  There is therefore no reason to stay discovery in this action pending approval of that Settlement Agreement.  (And depending when this Motion is heard, it may be futile to do so, as the Court is set to hear the Debtor's Rule 9019 motion to approve the Settlement Agreement on May 21, 2021.) While the Former Employees are correct that Federal Rule of Civil Procedure 1 aims to secure a "just, speedy, and inexpensive determination of every action," Mot. ¶ 46, the appropriate application of that Rule in this case would entail ensuring that the Former Employees no longer waste the Court's or the parties' time by evading their discovery obligations.

**D.** **UBS Has Made Clear it Would Make Appropriate Accommodations For Ms. Lucas**

52.     With respect to Ms. Lucas, counsel for the Former Employees grossly misrepresents discussions between counsel and UBS's position regarding Ms. Lucas's availability. UBS has consistently maintained, since it was first informed of Ms. Lucas's disability (subsequent to attempting to serve her with the Subpoenas), that it was willing to consider any and all reasonable accommodations for Ms. Lucas. *See, e.g., supra* ¶¶ 11, 14, 18, 25.

53.     With respect to the Deposition Subpoena, based on her counsel's representation that Ms. Lucas was unavailable for a deposition because she was on maternity leave and disability, UBS stated unequivocally that it would not seek to enforce the Subpoena against Ms. Lucas so long as she was legitimately unavailable due to her disability.  Tomkowiak Decl. ¶ 18.  At no time did UBS's counsel say, in words or substance, that maternity leave did not constitute a "legitimate disability," or even "question[] whether maternity leave constituted a 'legitimate disability.'"  Mot. ¶ 47.  Counsel for the Former Employees knows this and presumably for that reason, they did not submit a sworn declaration attesting to this distorted retelling of the conversation.  This blatant mischaracterization of UBS's position seems to be nothing more than a transparent effort to cast UBS in a bad light and encourage this Court to quash the Subpoena because UBS has purportedly taken an egregious or offensive position regarding the importance of recovering from a difficult pregnancy.  That simply is not true.  UBS will not seek to enforce the Deposition Subpoena against Ms. Lucas while she is on disability, but at no time has counsel to the Former Employees ever indicated a date by which time Ms. Lucas may become available for a deposition, including any planned end date for her maternity leave.  In the absence of such information, UBS respectfully submits that it is unclear whether counsel is seeking to use Ms. Lucas's maternity leave merely as an improper means to indefinitely delay compliance with a valid Deposition Subpoena.

54. With respect to the Document Subpoena, the Motion represents that Ms. Lucas's disability prevents her from reviewing documents. Mot. ¶ 47. UBS does not know what that means; UBS assumes (perhaps wrongly) that Ms. Lucas was able to review the confidentiality agreement that her counsel executed on her behalf to access the sealed Adversary Complaint, and read this Motion before authorizing its filing. To the extent this means that Ms. Lucas's disability prevents her from identifying and/or reviewing non-duplicative documents for responsiveness to the Subpoena, UBS is, again, willing to consider any reasonable accommodations. For example, Ms. Lucas appears to have experienced counsel who could assist her, as counsel typically do.

55. The Former Employees have identified no authority whatsoever in support of their argument that a witness's disability requires a Court to quash a subpoena for all time. UBS remains willing, as it has always been, to accommodate Ms. Lucas (and will seek to depose her, when she is able to sit for a deposition, via videoconference).

56. For all of the reasons stated above, UBS has taken numerous steps to avoid undue burden or expense on the Former Employees under Federal Rule of Civil Procedure 45, and the Former Employees are not entitled to any claimed fees or expenses (Mot. ¶ 24).

## CONCLUSION

For the foregoing reasons, UBS respectfully requests the Court enter an Order:

(1) compelling Messrs. Ellington, Leventon, DiOrio, and Sevilla to produce documents no later than June 4, 2021 and testify pursuant to the Subpoenas no later than June 11, 2021;

(2) compelling Ms. Lucas to produce documents and sit for a deposition when she is no longer disabled;

(3) awarding UBS attorneys' fees and costs;

(4) denying, in its entirety, the Motion to Quash; and

(5) granting such other relief as UBS may be entitled in law or in equity.

Dated:  May 20, 2021

Respectfully submitted,

/s/ *Andrew Clubok*

**LATHAM & WATKINS LLP**
Andrew Clubok (*pro hac vice*)
Sarah Tomkowiak (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, District of Columbia 20004
Telephone: (202) 637-2200
Email: andrew.clubok@lw.com
          sarah.tomkowiak@lw.com

Jeffrey E. Bjork (*pro hac vice*)
Kimberly A. Posin (*pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Email: jeff.bjork@lw.com
          kim.posin@lw.com

Kathryn George (*pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email: Kathryn.george@lw.com

**BUTLER SNOW LLP**
Martin Sosland (TX Bar No. 18855645)
Candice Carson (TX Bar No. 24074006)
2911 Turtle Creek Blvd., Suite 1400
Dallas, Texas 75219
Telephone: (469) 680-5502
Email: martin.sosland@butlersnow.com
          candice.carson@butlersnow.com

*Counsel for UBS Securities LLC and UBS
AG London Branch*

## <u>CERTIFICATE OF SERVICE</u>

I, Martin A. Sosland, certify that the *Plaintiffs' Motion To Compel And Response To Motion Of Former Employees To Quash Subpoenas* was filed electronically through the Court's ECF system, which provides notice to all parties of interest.

Dated:  May 20, 2021

*/s/ Martin A. Sosland*
Martin Sosland