**ROSS & SMITH, PC**
Judith W. Ross
State Bar No. 21010670
Frances A. Smith
State Bar No. 24033084
Eric Soderlund
State Bar No. 24037525
700 N. Pearl Street, Suite 1610
Dallas, Texas 75201
Telephone: 214-377-7879
Facsimile: 214-377-9409
Email: judith.ross@judithwross.com
        frances.smith@judithwross.com
        eric.soderlund@judithwross.com

*Counsel for Mary Kathryn Lucas (neé Irving),*
*John Paul Sevilla, Scott Ellington, Isaac Leventon,*
*and Matthew DiOrio*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | Case No. 19-34054-sgj-11 |
| Debtor. | |
| | Adversary Proceeding |
| UBS SECURITIES LLC AND UBS AG LONDON BRANCH, | No. 21-03020-sgj |
| Plaintiffs, | |
| vs. | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | |
| Defendant. | |

---

[1] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

## TABLE OF CONTENTS

I.     Summary of the Argument ............................................................................ 1

II.    Factual and Procedural Background ............................................................ 5

III.   Argument and Authorities ........................................................................... 9

   A.   The Debtor Has Agreed to the TRO and Preliminary Injunction ............................ 9

   B.   There Is No Case or Controversy Between the Debtor and UBS .............................. 11

   C.   UBS's Subpoenas Were Served with Improper Purpose and in Bad Faith ............... 14

   D.   The Case Law Does Not Support UBS's Position ....................................... 18

IV.    Conclusion .................................................................................................. 20

## TABLE OF AUTHORITIES

**Cases**

*Ash v. Cort*, 512 F.2d 909 (3d Cir. 1975) ...................................................................................20

*Hume v. Consolidated Grain & Barge, Inc.*, 2016 WL 7385699 (E.D. La. Dec. 21, 2016)........ 19

*In re Ford*, 170 F.R.D. 504 (M.D. Ala. 1997) ...........................................................................20

*In re Ramirez*, 241 F.R.D. 595 (W.D. Tex. 2006)....................................................................20

*MetroPCS v. Thomas*, 327 F.R.D. 600 (N.D. Tex. 2018) ....................................................18-20

*Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812 (5th Cir. 2004).......................................19

**Statutes**

Fed. R. Civ. P. 26. ...................................................................................................................19

Fed. R. Civ. P. 27.....................................................................................................................20

**BRIEF IN SUPPORT OF FORMER EMPLOYEES' RESPONSE TO UBS MOTION TO COMPEL AND REPLY IN SUPPORT OF THE FORMER EMPLOYEES' MOTION TO QUASH**

Mary Kathryn Lucas (neé Irving), John Paul Sevilla, Scott Ellington, Isaac Leventon, and Matthew DiOrio (collectively, the "**Former Employees**") file this brief in support of their response to UBS's motion to compel (Adv. Dkt. No. 74) (the "**Motion to Compel**") and memorandum of law in support (Adv. Dkt. No. 76) (the "**Memorandum in Support**") and reply in support of the Former Employees' motion to quash subpoenas and brief in support (Adv. Dkt. No. 70) ("**Motion to Quash**"), and in support thereof respectfully state as follows:

## I.   SUMMARY OF THE ARGUMENT

1.     The Court should first ask itself, "Why are we here?" UBS and the Debtor substantively agree with UBS's requested injunctive relief, and procedurally have twice agreed to the relief in a TRO and in an unopposed preliminary injunction. Why not just agree to the permanent injunction and be done? The answer: to create an artificial dispute necessary to get the Court to exercise its power against third parties.

2.     The Court should deny the Motion to Compel because: (i) the issue is moot; (ii) there is no actual live controversy for which additional evidence (either documentary or testimonial) is needed for the Court to enter an order granting the relief sought; and (iii) UBS, with the Debtor's cooperation, has manufactured an artificial "dispute" for the improper purpose of harassing third parties on a fishing expedition for information it hopes to use in potential litigation unrelated to the request for injunctive relief.

3.     First, the Motion to Compel is moot. The subpoenas at issue in both the Motion to Compel and the Motion to Quash were issued solely in connection with UBS's

request for *preliminary* injunction, not the *permanent* injunction. Indeed, UBS has stated in twenty-two different documents—including the live subpoenas currently at issue before this Court—that it needed discovery in connection with its request for a *preliminary* injunction without even one mention of the *permanent* injunction. It is, therefore, indisputable that the subpoenas for documents and testimony were issued *only* in connection with UBS's request for a *preliminary* injunction. The Debtor has definitively stated that it is not opposed to UBS's request for entry of a preliminary injunction identical to the TRO that the Court has already entered (which the Debtor also did not oppose). So, there is no need either for discovery or a hearing on the request for preliminary injunction. No party to the proceeding opposes the relief sought, and no evidence at all—let alone evidence from the non-party Former Employees—is required for UBS to obtain the order it seeks, which the Court could enter today.

4.      Second, UBS's protestations to the contrary notwithstanding, this proceeding represents the very definition of friendly-party litigation. The Debtor is not opposed to the TRO or the preliminary injunction, and while the Debtor has so far refused to say whether it supports or opposes UBS's request for a *permanent* injunction (with terms identical to the TRO and preliminary injunction), the Debtor has offered no reasonable justification as to why it is able to agree to the TRO and preliminary injunction but not consent to a permanent one, or how the discovery sought by UBS from the non-party Former Employees would have any bearing on the Debtor's position on the permanent injunction.

5.      The Debtor is bound by the terms of the Settlement Agreement not only to cooperate but to align with UBS in the "investigation and prosecution of claims or requests

for injunctive relief against the Funds." Settlement Agreement, ¶ 1(c); Settlement Mot. Hr'g Tr., May 21, 2021, 114:1-5. According to Jim Seery (the Debtor's CEO, independent board member, and authorized signatory), the Settlement Agreement will "take care of all disputes between UBS and the Debtor." Settlement Mot. Hr'g Tr. 124:22-24. Mr. Seery also acknowledges that the Debtor is only defending the Complaint in its capacity as manager of the Funds. Settlement Mot. Hr'g Tr. 125:4-9. If that is so, then under the Settlement Agreement the Debtor *must* assist UBS in obtaining the relief UBS seeks, as the only relief sought in the Complaint is "injunctive relief against the Funds." The Debtor cannot possibly oppose the relief sought without being in material breach of the Settlement Agreement. And the Debtor knows this.

6.     UBS knows this, too, which illustrates the third reason the Court should deny the Motion to Compel: UBS is abusing the bankruptcy process and seeking non-party discovery in bad faith and for improper purposes. UBS knows the Debtor supports the TRO and the preliminary injunction and is contractually prohibited from opposing the permanent injunction. Yet, despite knowing all this, on the day after the parties settled their disputes, UBS filed the Complaint alleging that UBS had "information" causing it to believe that without a preliminary injunction "the Debtor will engage in the Prohibited Conduct . . . by, *inter alia*: (i) putting the Transferred Assets further out of UBS's reach to satisfy the Phase I Judgment . . . ." Compl. at 17, ¶ 47. UBS also alleged that an injunction was necessary because without it the Debtor might "allow the transfer to Sentinel or its affiliates of the Sentinel Redemption payment or the CDO Fund Assets . . . ." Compl. at 18, ¶ 49. UBS does not explain in the Complaint why—just a day after Mr. Seery signed

the Settlement Agreement on behalf of the Debtor—UBS believed the Debtor would breach the Settlement Agreement to "engage in the Prohibited Conduct."

7.      In its answer to the Complaint (filed five days after the Court entered the order approving the Settlement Agreement), rather than deny UBS's allegations that the Debtor would breach the Settlement Agreement by engaging in Prohibited Conduct unless enjoined from doing so, the Debtor merely denied having "knowledge or information sufficient to form a belief as to the truth of the allegations set forth in paragraph 47 of the Complaint." Answer at 7, ¶ 47.

8.      In the Complaint, UBS asserts purported concerns that the Debtor might engage in "Prohibited Conduct" even though UBS knows that the Debtor has contractually obligated itself to not engage in such conduct. There was no reason for UBS to make these dubious allegations if all it wanted was entry of an order granting the injunctive relief. UBS and the Debtor, having just executed the Settlement Agreement, could have (and should have) submitted an agreed order with the Complaint, and the Court almost certainly would have entered it. But they did not. Why not?

9.      It appears that UBS had an ulterior motive in filing the Complaint, and the Debtor filed a completely non-committal answer to it in cooperation with UBS. The Debtor is working in concert with UBS (as it is obligated to do under the Settlement Agreement) to obtain the injunctive relief that UBS seeks. But the Debtor is cooperating not by simply and unequivocally stating its assent to the entry of a preliminary and then a permanent injunction (which would be the most natural and reasonable interpretation of the Debtor's obligation to cooperate under the Settlement Agreement). Rather, the Debtor is

"cooperating" by helping UBS maintain the illusion that they are "adversaries" in this proceeding, so as to keep the matter alive for the sole purpose of providing UBS a favorable forum to pursue discovery against non-parties on an uneven playing field and for the improper purposes of harassment, intimidation, scapegoating, and obtaining information they hope to use in potential future litigation. UBS has manufactured an adversary proceeding that is anything but adversarial and has weaponized the discovery process. This Court should not reward such chicanery.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

10.    Following more than a decade of protracted litigation, the Debtor and the largest creditor in its bankruptcy case, UBS, announced at the Debtor's plan-confirmation hearing on February 2, 2021 that they had settled all disputes between them. Under that settlement, the Debtor agreed "to assist UBS, to the extent possible, with the conveyance of CDO Fund's assets to UBS." *See* Main Case Dkt. No. 2199 (the "**Settlement Motion**"), at 3, ¶ 4.

11.    In February and March 2021, the Debtor and UBS re-opened negotiations on their settlement, purportedly in light of allegedly new information concerning a 2017 transaction between Highland and an offshore insurer. *See id.* at 6, ¶ 10. The result of these negotiations was a revised settlement agreement, under which the Debtor agreed to spend up to $3 million (subject to some contingent repayment provisions) "to assist UBS in its collection efforts against the Funds in the State Court litigation and its pursuit of other claims." *See id.* at 2, ¶ 2.

12.     Having agreed on revised terms, on March 30, 2021 UBS and the Debtor executed a settlement agreement (the "**Settlement Agreement**"), and on April 15, 2021 the Debtor filed the Settlement Motion seeking the Court's approval of the Settlement Agreement under Bankruptcy Rule 9019. After a hearing held on May 22, 2021, the Court entered an order on May 27, 2021 granting the Settlement Motion and approving the Settlement Agreement. *See* Main Case Dkt. No. 2389.

13.     Under the Settlement Agreement approved by the Court:

> *HCMLP will use reasonable efforts to (i) cause CDO Fund to pay the Insurance Proceeds in full to UBS as soon as practicable*, but no later than within 5 business days of CDO Fund actually receiving the Insurance Proceeds from or on behalf of Sentinel; (ii) if Sentinel refuses to pay the Insurance Proceeds, take legal action reasonably designed to recover the Insurance Proceeds or the MSCF Interests or to return the Transferred Assets to the Funds to satisfy the Phase I Judgment and in addition *shall provide reasonable assistance to UBS in connection with any legal action UBS takes* to recover the Insurance Proceeds or to return the Transferred Assets to the Funds to satisfy the Phase I Judgment or obtain rights to the MSCF interests, including but not limited to the redemption payments in connection with the MSCF Interests; *(iii) cooperate with UBS and participate (as applicable) in the investigation or prosecution of claims or requests for injunctive relief against the Funds*, *Multi-Strat, Sentinel . . . .*

Settlement Agreement § 1(c) (emphasis added); *see also* Settlement Mot. Hr'g Tr. 117:20-24.

14.     On March 31, 2021, the day after UBS and the Debtor signed the Settlement Agreement, UBS filed under seal the Complaint that initiated the above-captioned proceeding, alleging that UBS has information causing it to believe that the Debtor, under Mr. Seery's management and control, will engage in "Prohibited Conduct," which is defined as making "payments or further transfers to Sentinel or any of its affiliates . . . ." Compl.

at 17, ¶ 47. UBS does not elaborate in the Complaint why it thinks Mr. Seery would engage in such Prohibited Conduct. But UBS's sole stated reason for needing injunctive relief is its concern that, absent that relief, Mr. Seery would "allow the transfer to Sentinel or its affiliates of the Sentinel Redemption payment or the CDO Fund Assets . . . ." Compl. at 18, ¶ 49.

15.    On April 9, 2021 UBS obtained a temporary restraining order enjoining and restraining the Debtor "from making or allowing funds under its management or control (including, but not limited to, Multi-Strat and CDO Fund) to make any payments or further transfers to Sentinel or any of its affiliates or any transferee of the Sentinel Entities, consisting of, resulting from, or relating to the Transferred Assets[2] until this Court's decision on UBS's requested preliminary injunction." (Adv. Dkt. No. 21) (the "**TRO**"). The Debtor agreed to entry of the TRO. The "Prohibited Conduct" enjoined by the TRO is precisely the same conduct that UBS seeks to enjoin with the preliminary and permanent injunctions. *See* Compl. at 19.

16.    Shortly after filing the Complaint under seal, UBS began bombarding the Former Employees with document and deposition subpoenas, seeking documents and testimony on an expedited basis purportedly relating to the Complaint and Motion for TRO and preliminary injunction that the Former Employees were not permitted to see. Over the next six weeks or so, counsel for UBS and counsel for the Former Employees negotiated the

---

[2] "Transferred Assets" is not defined in the TRO, but the Complaint defines "Transferred Assets" as Highland's ownership of "all or substantially all of the Funds' hundreds of millions of dollars' of assets" including, "among other assets: (i) a redemption interest in Multi-Strat (the '**Sentinel Redemption**') and (ii) assets held by CDO Fund related to Greenbriar CLO Ltd., Greenbriar Corp., Aberdeen Loan Funding Ltd., Eastland CLO Ltd., Grayson CLO Ltd., Valhalla CLO Ltd., and Governance Re, Ltd., including cash payments related to those assets (collectively, the '**CDO Fund Assets**'). Compl. at 3, ¶ 3.

terms of a confidentiality agreement and sought (unsuccessfully) to resolve issues relating to the subpoenas without the need for Court intervention.[3]

17.     On May 3, 2021, the Debtor and UBS filed a stipulation under which UBS agreed to allow the Debtor additional time to answer the Complaint, *see* Adv. Dkt. No. 52, and on May 14, 2021 the Debtor and UBS filed a stipulation and proposed scheduling order asking the Court to set a trial on the Complaint for the week of October 17, 2021. *See* Adv. Dkt. No. 69.

18.     On May 22, 2021, the Court held a hearing on the Settlement Agreement, at which Mr. Seery testified that all disputes between UBS and the Debtor were resolved. Settlement Mot. Hr'g Tr. 124:22-24. Following the Court's approval of the Settlement Agreement, the only capacity in which the Debtor is opposed to UBS in any litigation is as proxy for the Funds. Settlement Mot. Hr'g Tr. 125:4-9.

19.     In its answer to the Complaint filed on June 2, 2021, the Debtor—rather remarkably—states that it lacks "knowledge or information sufficient to form a belief as to" whether the Debtor under Mr. Seery's management and control will engage in Prohibited Conduct in the absence of a preliminary and permanent injunction. Answer ¶ 47 (Adv. Dkt. No. 84). The Debtor does not elaborate on what information it lacks that would enable it to determine whether it intends to engage in Prohibited Conduct (which would be a breach of the Settlement Agreement). Most notably, the Debtor's answer, unlike every standard answer in litigation, does not deny that the plaintiff is entitled to the relief it seeks. The Complaint seeks the same injunctive relief in three stages: TRO, preliminary

---

[3] See the Motion to Quash at 2-6, ¶¶ 5-22 for a detailed review of such negotiations.

injunction, and then permanent injunction. The Debtor answers that it agrees to the first, is unopposed to the second, and is intentionally silent as to the third, which is the sole remaining potential dispute. Indeed, the Debtor's "answer" leaves unanswered the central question: "Is there a live dispute between UBS and the Debtor that would permit the Court to grant the Motion to Compel?"

III.    **ARGUMENT AND AUTHORITIES**

    *A.    The Debtor Has Agreed to the TRO and Preliminary Injunction*

    20.    In their Motion to Quash filed on May 15, 2021, the Former Employees noted that UBS had asserted in its Complaint that the Debtor was unopposed to UBS's request for injunctive relief, including the request for a preliminary injunction. Compl. at 18, ¶ 48; Mot. to Quash at 10, ¶ 27. The Former Employees argued that UBS could not possibly need discovery in support of an unopposed preliminary injunction. In its Motion to Compel filed five days later, UBS acknowledged that it was seeking discovery only "to present evidence" at the yet-to-be-scheduled hearing on its "requested ***preliminary*** injunction." Mot. to Compel at 3, ¶ 5 (emphasis added). But in its Memorandum in Support, UBS ***for the first time*** argued that "UBS needs (and is entitled to) discovery in order to develop fully a record supporting good cause to enter a preliminary ***and permanent injunction***." *See* UBS Mem. in Supp. at 20, ¶ 39 (emphasis added). Thus, it was only after the Former Employees pointed out that the ***preliminary*** injunction was unopposed that UBS suddenly changed its position, now arguing that it needs the Former Employee discovery in support of a ***permanent*** injunction. UBS needs no additional discovery from anyone, let alone the non-party Former Employees, on its request for a preliminary injunction and is only now moving

the goalposts and arguing it needs discovery on the permanent injunction to make it appear there is still some point of contention with the Debtor.

21. UBS's own papers contradict its revisionist narrative. For example, on April 2, 2021, each of UBS's subpoenas directed at the Former Employees stated the subpoenas were being issued "in connection with Plaintiffs' Motion for a Temporary Restraining Order and ***Preliminary*** Injunction against Highland Capital Management, L.P." *See* Adv. Dkt. No. 75, UBS App. at Exs. 1–5 (five subpoenas to Former Employees) (emphasis added). UBS repeated on April 15, 2021 that it needed the discovery in connection with the ***preliminary*** injunction. *See id*. at Ex. 10–14 (five amended subpoenas to Former Employees). UBS repeated a third time—on May 7, 2021—that it needed the discovery in connection with the ***preliminary*** injunction. *See* Adv. Dkt. Nos. 55, 56, 58, 59, and 60 (Notices of Deposition to Former Employees). Furthermore, UBS sought six other depositions of third parties, all solely in connection with the ***preliminary*** injunction. *See* Adv. Dkt. Nos. 23-5, 35, 36, 39, 47, and 57.

22. And on April 26, 2021, in connection with a motion for protective order filed by another non-party from whom UBS sought discovery, UBS stated that "it needs (and is entitled to) discovery in order to develop fully the record to support its requested ***preliminary*** injunction and present evidence at a hearing on such request . . . . To that end, on April 1, 2021, UBS began attempting to serve discovery requests on . . . former Debtor employees." *See* Adv. Dkt. No. 38, ¶ 3 (UBS's response to Dondero motion).

23. Because UBS issued the subpoenas solely in connection with its request for a ***preliminary*** injunction, and the Debtor is not contesting that relief, there is no need for

any discovery from the Former Employees. Accordingly, the Court should deny the Motion to Compel as moot and grant the Motion to Quash.

### B.    There Is No Case or Controversy Between the Debtor and UBS

24.    The plaintiff UBS and the nominal "defendant" Highland Capital Management, L.P. are not actual adversaries in this proceeding. The Debtor, at least, has admitted as much. At the hearing on the Settlement Motion, Mr. Seery (testifying on behalf of the Debtor) acknowledged that the Settlement Agreement resolves all the disputes between UBS and the Debtor: "Q: And will this settlement, if approved, take care of all disputes between UBS and the Debtor? A: I believe it will, yes." Settlement Mot. Hr'g Tr. 124:18–24. Mr. Seery also acknowledged that the Debtor is a defendant in this proceeding solely in its capacity as a representative of the Funds. *Id.* 124:25–125:9. Mr. Seery further testified that under the Settlement Agreement the Debtor has "certain obligations" and that the Debtor would "continue to adhere to those obligations." Settlement Mot. Hr'g Tr. 125:19-21. Those obligations include using "reasonable efforts to cooperate and participate (as applicable) in the investigation or ***prosecution of claims*** or requests ***for injunctive relief against the Funds***." *See* Settlement Agreement, § 1(c) (emphasis added).

25.    The Debtor simply cannot both defend the Funds and simultaneously adhere to its contractual undertaking to prosecute the Funds for the same claims. Assuming the Debtor did not breach its contractual obligations with UBS just a day after making them, the Court can only be left with one conclusion: acting as a paper-tiger "defendant" in this proceeding is ***how*** the Debtor is cooperating with UBS, setting up a friendly party for the purpose of taking discovery from non-parties who lack the full procedural rights and

constitutional due-process protections of parties. The nature of the Debtor's cooperation is also evident from the fact that Debtor's counsel has so far refused to respond in any way to a letter sent by email a month ago (May 10, 2021) to five of the Debtor's attorneys of record asking for the Debtor's position on the relief sought in the Complaint. A true adversary would have had no problem answering that correspondence stating its opposition to the relief. Nor would a true adversary omit from its answer a request that the Court deny the relief sought by the plaintiff, as the Debtor did here.

26. For its part, UBS argues there is a dispute with the Debtor because UBS fears that "[i]n the absence of injunctive relief . . . the Debtor will engage in the Prohibited Conduct," defined as the Debtor making or allowing its funds to make any further transfers or payments to Sentinel relating to the assets transferred in 2017. Compl. at 17, ¶ 47. But UBS's concerns, assuming they are honestly asserted in the Complaint, appear to be entirely unfounded, as Mr. Seery's testimony at the hearing on the Settlement Motion made clear. Mr. Seery testified that the Debtor has an obligation to cooperate and participate in recovering the Transferred Assets for UBS, including any such assets at the Funds. *See* Settlement Mot. Hr'g Tr. 114:12–115:19; *see also* Settlement Mot. Hr'g Tr. 116:7–15 & 118:2–10. And counsel for the Debtor at the hearing on the Settlement Motion stated that the Debtor was "assisting UBS in recouping the assets that were fraudulently transferred away from [the Funds]." Settlement Mot. Hr'g Tr. 180:2–14. The Debtor voluntarily undertook this contractual obligation the day before UBS filed the adversary proceeding. *See* Settlement Agmt. § 1(c). Even absent a Court order, UBS's assertion in the Complaint that it believes

the Debtor intends to make, or allow its managed Funds to make, further transfers to Sentinel is simply not credible.

27.     Furthermore, examination of UBS's claims underscores the fact that UBS has no true party opponent. UBS seeks to enjoin the Funds, acting through the Debtor as their agent, from making future transfers to Sentinel. *See* TRO ¶ 2; Compl. at 3, ¶ 3; Compl. at 5, ¶ 6; Compl. at 17, ¶ 47. The relief therefore affects three potential counterparties to UBS: the Debtor itself, the Funds (with the Debtor as agent), and Sentinel. The Debtor has no interest as a direct litigant; it has settled with UBS and faces no further liability. The Funds have no interest in defending the case; the Debtor (on their behalf) has undertaken to send all proceeds from the Transferred Assets to UBS without need for further Court action. Only Sentinel, the payee on the alleged transfers from the Funds, has any interest in defending against the injunctive relief. But Sentinel is not a party in this proceeding.

28.     It is also notable that UBS admits that the enjoined parties are the Funds, not the Debtor. Mem. in Support at 20, ¶ 39 ("it is the Debtor's managed funds that would be enjoined if UBS's request for permanent injunction is successful."). But UBS has not sued the Funds, only the Debtor as their manager. If UBS had sued the Funds, it likely would have had to sue them in New York or at least in District Court. UBS's creative selection of its "defendant" seeks to create jurisdiction in this Court where there is none.

29.     Instead of suing the Funds, UBS has sued only the Debtor. At the same time, UBS claims to have brought its lawsuit *for the benefit of the Debtor*. UBS's Complaint states that "in the absence of injunctive relief, UBS and *the Debtor will be irreparably*

*harmed*." Compl. at 17, ¶ 47 (emphasis added). UBS and the Debtor are united in seeking the Court's imprimatur on their agreement to withhold further payments from the Funds to Sentinel without including Sentinel or the Funds themselves as parties.

30.      Finally, UBS's argument that "regardless of the Debtor's stance," UBS needs discovery "to develop fully a record supporting good cause to enter a preliminary and permanent injunction" is spurious. Mem. in Support at 20, ¶ 39. UBS needs no "record" for the Court to enter an order granting the relief UBS seeks in its Complaint. The only parties to the action agree that such an order should be entered. The only plausible reason for needing "to develop fully a record" is if UBS anticipates an appeal from that order. But only the Debtor has standing to appeal, and the Debtor not only apparently has no inclination to appeal, but would be in breach of the Settlement Agreement if it did so (and Mr. Seery has testified that the Debtor intends to "adhere to those obligations" it has under the Settlement Agreement. Settlement Mot. Hr'g Tr. 125:19-21). Absent opposition from the Debtor, UBS has no need to either make or defend its "record" against any party to this proceeding.

## C.      *UBS's Subpoenas Were Served with Improper Purpose and in Bad Faith*

31.      UBS and the Debtor at any time could submit a proposed agreed order granting the relief requested in the Complaint.  They have already agreed twice; why not a third time? Why haven't they? Why won't they?

32.      UBS had ulterior motives in filing the Complaint without an accompanying proposed agreed order (despite having reached a global settlement of its dispute with the Debtor the day before the Complaint was filed). UBS, with the Debtor's cooperation, is

using this Court for an improper purpose—to harass, intimidate, scapegoat, and run up the legal bills of the non-party Former Employees in an attempt to find support for whatever causes of action UBS is trying to manufacture against the Former Employees and others. In doing so, UBS is abusing the bankruptcy process.

33.    That the Debtor is cooperating with UBS by helping UBS maintain the illusion that there is an actual controversy requiring extensive discovery from non-parties is evident from the way the two parties to the proceeding have behaved over the last few months. First, UBS and the Debtor agreed to have the Complaint filed under seal so the non-parties from whom UBS sought discovery would not know the nature of the proceeding and would, therefore, be prejudiced in their ability to defend themselves. UBS certainly knew that their discovery requests would be met with a reasonable request by the Former Employees to see the Complaint to which the requests purportedly related. When that request inevitably was made, UBS responded by offering to make the Complaint available only upon acceptance of unreasonable conditions (such as agreeing—before seeing the Complaint—not to oppose the discovery requests).[4]

34.    UBS then used the delay that *they* had created by insisting on unreasonable terms for providing the sealed Complaint to the Former Employees—conditions they knew could not and would not be accepted—as bogus "grounds" for its Motion to Compel and accompanying request for expedited consideration of the same. *See* Adv. Dkt. No. 79

---

[4] Contrary to what UBS claims in the Motion to Compel, the Former Employees only agreed to sign a confidentiality agreement to obtain a copy of the sealed Complaint after UBS dropped the condition it had been repeatedly and consistently insisting upon that the Former Employees agree before seeing the Complaint that they would not object to any of the propounded discovery requests. UBS did not drop that condition until early May, at which point counsel for the Former Employees signed the confidentiality agreement expeditiously.

at 3, ¶ 5. At the same time that they were pressing for discovery from the Former Employees on an accelerated schedule, they agreed to extend the Debtor's deadline for answering the Complaint all the way to June 2, 2021 (doubling the response time), apparently thinking it would be advantageous for the Debtor not to have to state its position on the relief sought until after UBS had obtained the discovery it was seeking from non-parties. *See* Adv. Dkt. No. 52. During the same timeframe (mid-May), UBS and the Debtor submitted a stipulated scheduling order asking the Court for the trial on the Complaint to be set for mid-October. *See* Adv. Dkt. No. 69.

35.     Once the Former Employees were finally able to read the Complaint, it was clear why UBS and the Debtor initially did not want them to see it. The Complaint confirmed what the Former Employees suspected, namely that the Debtor did not oppose the relief sought. Compl. at 18, ¶ 48. After the Court thwarted UBS's and the Debtor's scheme to put off the answer deadline until after UBS had completed its fishing expedition against non-parties (by denying UBS's request to expedite the hearing on the Motion to Compel), the Debtor was forced to file its answer to the Complaint on June 2, 2021. That answer contains no expression of opposition to the relief sought in the Complaint. Indeed, despite UBS's mocking the Former Employees for their "prediction" that the Debtor would not oppose entry of the preliminary injunction, *see* Mem. in Support at 20, ¶ 48, the Debtor explicitly confirmed it in its answer to the Complaint. *See* Answer at 8, ¶ 48. Nevertheless, although the Debtor's position on the ***preliminary*** injunction was finally smoked out with the filing of its answer, the Debtor continues to "cooperate" with UBS by craftily refusing to take a position on the ***permanent*** injunction, claiming (incredibly) that it lacks

information to know whether it intends to engage in prohibited conduct, as UBS alleges in the Complaint. *See* Answer at 7, ¶ 47.

36.     The idea that UBS needs to conduct discovery on the Former Employees in order for the Debtor to make up its mind on whether it supports or opposes a permanent injunction is illogical. Indeed, UBS and the Debtor had enough information about the Sentinel 2017 transaction to renegotiate the terms of their global settlement, putting a value on claims related to it and agreeing on revised settlement amounts. UBS and the Debtor apparently had sufficient information to accuse the Former Employees of a parade of vaguely defined horribles in the Complaint, in the Settlement Motion, at the hearing on the Settlement Motion, and in the Motion to Compel. Yet, somehow, they want the Court to believe that the only way the Debtor can ascertain whether it opposes a permanent injunction (while supporting precisely the same TRO and preliminary injunction) is for UBS to take extensive discovery on the non-party Former Employees. This beggars belief.

37.     UBS and the Debtor should have resolved *if* there is a dispute before seeking to invoke the Court's power to adjudicate the dispute. Presumably, UBS could take Mr. Seery's deposition and ask whether the Debtor is opposed to a permanent injunction and, if so, why (and also how the Debtor could take that position without breaching the Settlement Agreement). And the Debtor, if it needed information from the Former Employees to determine if it opposes the permanent injunction, could have asked the Former Employees any time after the alleged February discovery of the Sentinel Transfer. The Debtor never did so. UBS and (apparently) the Debtor both want discovery, enforced by Court power, *before* they can even tell the Court *if* there is a dispute. If there is a dispute,

then the Debtor must have breached its cooperation obligations the day after settling with UBS, and somehow this was never mentioned at the Settlement Motion hearing. Alternatively, there is no dispute, and therefore the Court has no power to enforce the UBS subpoenas against the Former Employees.

### D. The Case Law Does Not Support UBS's Position

38.     Revealingly, UBS fails to describe a single case in its Motion to Compel factually similar to the one at hand. In addition, UBS wrongly calls into question the Former Employees' reliance on *MetroPCS*. In that case, the District Court quashed a subpoena sought by a plaintiff directed at a third party, finding the subpoena unduly burdensome under Rule 26. *MetroPCS v. Thomas*, 327 F.R.D. 600, 627 (N.D. Tex. 2018). According to the District Court, this was because the ***only*** basis for the subpoena was that a witness testified that the third party "***may*** be involved in a scheme" with a defendant in the plaintiff's lawsuit. *Id.* at 628 (emphasis added). As such, the third party's testimony was unnecessary to "prove or support" the plaintiff's claim. *Id.* The same is true here: the Former Employees' testimony is completely unnecessary for UBS to prove or support its request for injunctive relief.

39.     In *MetroPCS*, the District Court also quashed the subpoena because it found no evidence in the record that the third party's testimony would be relevant to the plaintiff's lawsuit. *See id.* The same is also true here. The Former Employees' evidence was not necessary for agreement on the TRO or the preliminary injunction, and therefore likely it would be unnecessary for the same relief being made into a permanent injunction. As such, it is not relevant to the relief sought in the Complaint. The holding in *MetroPCS* is

compelling. As explained in the Former Employees' Motion to Quash, the District Court in *MetroPCS* found that "non-parties have greater protections from discovery." *Id.* at 610 (citing *Hume v. Consolidated Grain & Barge, Inc.*, Civ. A. No. 15-935, 2016 U.S. Dist. LEXIS 176538, 2016 WL 7385699, at *3 (E.D. La. Dec. 21, 2016) (quoting E. Laporte and J. Redgrave, *A Practical Guide to Achieving Proportionality Under New Federal Rule of Civil Procedure 26*, 2015 Fed. Cts. L. Rev. 19, 57 (2015))). And "burdens on non-parties will impact Rule 26's proportionality analysis."[5] *MetroPCS*, 327 F.R.D. at 610. This Court should adopt the same framework and reach the same conclusion as *MetroPCS*: the depositions sought by UBS directed at the Former Employees are unduly burdensome because the testimony sought is unnecessary for UBS to prove or support the relief it seeks in the Complaint. For these reasons, in keeping with *MetroPCS*, the Motion to Compel should be denied and the Motion to Quash granted.

40.    UBS also wrongly claims that *In re Ramirez* is inapplicable to the facts of this case. *In re Ramirez* stands for the proposition that "Rule 27 may not be used as a vehicle for discovery prior to filing a complaint . . . . It is only available in special circumstances to preserve known testimony that could otherwise be lost." *In re Ramirez*, 241 F.R.D. 595, 596 (W.D. Tex. 2006) (citing *Ash v. Cort*, 512 F.2d 909, 912 (3d Cir. 1975)). *See also In re Ford*, 170 F.R.D. 504, 507 (M.D. Ala. 1997) ("Here, Ford seeks to discover or uncover testimony, not to perpetuate it. . . . Ford simply wants to know who shot Roberts and why. Rule 27 simply

---

[5] The cases cited in *MetroPCS* make clear that if a would-be deponent is a third party, then the third party is entitled to heightened protection under a Rule 26 analysis. *See, e.g., Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) ("Further, if the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party." (collecting cases).

does not provide for such discovery."). In *In re Ramirez*, a District Court denied an order permitting a deposition because the plaintiff failed to "adequately set forth a basis" why there was "an immediate need to perpetuate [the] testimony." *In re Ramirez*, 241 F.R.D. at 596. It is true that the plaintiff sought discovery before filing a lawsuit. But this is only half the story.[6] The District Court's primary justification for disallowing the deposition was that the plaintiff had not shown an immediate need for it. *See id.* In the same way, UBS has not demonstrated that the Former Employees' testimony will be lost if not preserved by this Court under Rule 27.[7] Consequently, *In re Ramirez* dictates that, in the absence of a lawsuit to which they are parties or for which their testimony is necessary to the resolution of the case or controversy, the depositions of the Former Employees should not be allowed.

## IV.   CONCLUSION

41.     UBS has not and cannot explain how there is a case in controversy permitting the Court to use its powers to compel third-parties. In sum, the Court will note the inconsistencies between the title "adversary" and how the parties have acted in this alleged dispute:

(1)     The Debtor agreed to cooperate in ***prosecuting*** the very claims for injunctive relief it allegedly is ***defending***;

(2)     The Debtor and UBS undertook this cooperation the day before UBS filed this action;

---

[6] And indeed, a potential red herring. In *In re Ramirez*, the District Court never articulated that it disallowed the deposition ***only because the lawsuit had not been filed yet***. On the contrary, the District Court appears to indicate, in dicta, that it may be possible to take a deposition before filing a lawsuit in some cases.

[7] Furthermore, the underlying logic of *In re Ramirez* is persuasive to this case because there is no true controversy here (as UBS and the Debtor have settled their claims against each other).

(3)     The Debtor agreed both in the Settlement Agreement and again at the Settlement Motion hearing that it would take the very actions sought by UBS in the permanent injunction;

(4)     At the Settlement Motion Hearing, UBS never alleged that the Debtor's "defense" of this action breached its cooperation obligations in the settlement agreement;

(5)     UBS, with the Debtor's agreement, filed the entire proceeding under seal in an effort to obfuscate the underlying allegations before taking discovery;

(6)     UBS attempted to force the Former Employee discovery before the Debtor had to file an answer "opposing" UBS's Complaint;

(7)     When that timing did not work, the Debtor's "answer" did not actually oppose any relief sought by UBS;

(8)     Procedurally, the Debtor has agreed twice, in the TRO and preliminary injunction, to UBS's relief, but is coyly silent as to whether it agrees a third and final time;

(9)     Substantively, the Debtor agrees that the transfers to Sentinel were a fraudulent transfer, but for some reason has not simply agreed to the permanent injunction's directive not to participate in additional such transfers;

(10)    UBS's Complaint stated that the Debtor was not opposed to any of the relief sought by UBS, and in fact that the relief was sought to prevent irreparable harm *to the Debtor*;

(11)    UBS's Complaint alleges that it needs the injunction to prevent the Debtor from permitting further transfers to Sentinel, when the Debtor agreed in writing just a day before the Complaint was filed not permit such transfers;

(12)    The Debtor provided information pre-suit to UBS to support its claims;

(13)    The Debtor has not opposed a single motion or action of UBS in this proceeding;

(14)    The Debtor agrees that all of its disputes with UBS are settled; it only is a party in its representative capacity of the Funds, but;

(15)    The Funds, which are the actual enjoined transferors, are not parties;

(16)    Sentinel, the only entity monetarily impacted by UBS's relief, is not a party;

(17)    UBS stated at the April 27 meet-and-confer that it did not know if the Debtor was opposed to the preliminary injunction, when UBS had said in its (at-that-

point-still-hidden-from-the-Former-Employees) Complaint that it knew the Debtor was unopposed;

(18)    The subpoenas were issued to obtain evidence for a preliminary injunction hearing where the injunction is unopposed and the hearing likely will never occur;

(19)    UBS stated twenty-two times it wanted the discovery for the preliminary injunction, and then changed to needing it for the permanent injunction when the Former Employees noted the preliminary injunction was unopposed; and

(20)    UBS wants the discovery to "make a record" for appeal when there is no adverse party with standing to appeal.

42.    UBS may try to explain away each of these inconsistencies. But rather than accepting each and every strained explanation, the Court should accept the simplest explanation: UBS and the Debtor are friendly parties creating the appearance of a dispute to invoke the Court's power against third-parties. The Court should deny UBS's Motion to Compel and grant the Former Employees' Motion to Quash.

Respectfully submitted June 10, 2021

By:  /s/ Frances A. Smith
Judith W. Ross
State Bar No. 21010670
Frances A. Smith
State Bar No. 24033084
Eric Soderlund
State Bar No. 24037525
**ROSS & SMITH, PC**
700 N. Pearl Street, Suite 1610
Dallas, Texas 75201
Telephone: 214-377-7879
Facsimile: 214-377-9409
Email: judith.ross@judithwross.com
frances.smith@judithwross.com
eric.soderlund@judithwross.com


**COUNSEL FOR MARY KATHRYN LUCAS (NEÉ IRVING), JOHN PAUL SEVILLA, SCOTT ELLINGTON, ISAAC LEVENTON, AND MATTHEW DIORIO**