**EXHIBIT**

**24**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In Re: | ) | **Case No. 19-34054-sgj-11** |
| | ) | Chapter 11 |
| | ) | |
| HIGHLAND CAPITAL | ) | Dallas, Texas |
| MANAGEMENT, L.P., | ) | Wednesday, April 28, 2021 |
| | ) | 1:30 p.m. Docket |
| Debtor. | ) | |
| | ) | |
| | ) | |
| UBS SECURITIES, LLC, et. | ) | **Adversary Proceeding 21-3020-sgj** |
| al., | ) | |
| | ) | - MOTION FOR PROTECTIVE ORDER |
| Plaintiffs, | ) | [23] |
| | ) | - MOTION TO MODIFY ORDER |
| v. | ) | GRANTING LEAVE TO FILE UNDER |
| | ) | SEAL [24] |
| HIGHLAND CAPITAL | ) | - MOTION FOR ORDER AUTHORIZING |
| MANAGEMENT, LP, | ) | ALTERNATIVE SERVICE OF |
| | ) | SUBPOENA [28] |
| Defendant. | ) | |
| | ) | |

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE STACEY G.C. JERNIGAN,
UNITED STATES BANKRUPTCY JUDGE.

WEBEX APPEARANCES:

For Plaintiff UBS                Andrew Clubok
Securities, LLC:                 LATHAM & WATKINS, LLP
                                 555 Eleventh Street, NW,
                                   Suite 1000
                                 Washington, DC  20004
                                 (202) 637-2200

For Plaintiff UBS                Kathryn K. George
Securities, LLC:                 LATHAM & WATKINS, LLP
                                 330 North Wabash Avenue,
                                   Suite 2800
                                 Chicago, IL  60611
                                 (312) 876-6567

```
 1   APPEARANCES, cont'd.:

 2   For James Dondero,          Clay M. Taylor
     Movant:                     John Y. Bonds, III
 3                               Will Howell
                                 BONDS ELLIS EPPICH SCHAFER
 4                                 JONES, LLP
                                 420 Throckmorton Street,
 5                                 Suite 1000
                                 Fort Worth, TX  76102
 6                               (817) 405-6900

 7   For the Debtor:             John A. Morris
                                 Gregory V. Demo
 8                               PACHULSKI STANG ZIEHL & JONES, LLP
                                 780 Third Avenue, 34th Floor
 9                               New York, NY  10017-2024
                                 (212) 561-7700
10
     For the Official Committee  Matthew A. Clemente
11   of Unsecured Creditors:     SIDLEY AUSTIN, LLP
                                 One South Dearborn Street
12                               Chicago, IL  60603
                                 (312) 853-7539
13
     For the U.S. Trustee:       Lisa L. Lambert
14                               OFFICE OF THE UNITED STATES
                                   TRUSTEE
15                               1100 Commerce Street, Room 976
                                 Dallas, TX  75242
16                               (214) 767-8967

17   Recorded by:                Michael F. Edmond, Sr.
                                 UNITED STATES BANKRUPTCY COURT
18                               1100 Commerce Street, 12th Floor
                                 Dallas, TX  75242
19                               (214) 753-2062

20   Transcribed by:             Kathy Rehling
                                 311 Paradise Cove
21                               Shady Shores, TX  76208
                                 (972) 786-3063
22

23

24
            Proceedings recorded by electronic sound recording;
25            transcript produced by transcription service.
```

1          <u>DALLAS, TEXAS - APRIL 28, 2021 - 1:34 P.M.</u>

2          THE COURT:  We have a setting in Highland.  Actually,

3   UBS versus Highland, Adversary 21-3020.  Let's get appearances

4   first.  I'll start with the Plaintiff, UBS.  Do we have Mr.

5   Clubok and your team appearing today?

6          MR. CLUBOK:  Good afternoon, Your Honor.  Andrew

7   Clubok from Latham & Watkins on behalf of UBS.  And I'm joined

8   with -- I'm joined by Kathryn George, also with Latham &

9   Watkins, will be arguing today's motions.

10         MS. GEORGE:  Good morning, Your Honor.

11         THE COURT:  Okay.  I heard Ms. George, and did you

12  say someone else?

13         MR. CLUBOK:  Just Kathryn George.

14         THE COURT:  Oh, Kathryn George?  All right.  Thank

15  you.

16     All right.  For the Defendant, Highland, do we have an

17  appearance today?

18         MR. MORRIS:  Yes, Your Honor, it's -- good afternoon.

19  It's John Morris from Pachulski Stang Ziehl & Jones.  With me

20  is my colleague Gregory Demo.  And we're here today on behalf

21  of the Debtor, although I'm not sure that these motions are

22  directed towards us *per se*.

23         THE COURT:  Okay.  Thank you.

24     All right.  Now, the Movant on a couple of these motions,

25  Mr. Dondero.  Mr. Taylor, are you appearing for Mr. Dondero

1   today?

2         MR. TAYLOR: Yes, Your Honor. Clay Taylor, Will

3   Howell, and John Bonds appearing on behalf of Mr. Dondero.

4   And I'll be handling the arguments today.

5         THE COURT: All right. Thank you. I know we'll

6   likely have some observers out there. I'll ask, does the

7   Committee -- do you want to appear today? I know you've made

8   a notice of appearance in the adversary.

9         MR. CLEMENTE: Good afternoon, Your Honor. Matt

10   Clemente; Sidley Austin; on behalf of the Committee.

11         THE COURT: All right. Thank you. I'll just ask:

12   Anyone else have a dying urge to make an appearance? Again, I

13   know we have lots of observers.

14         MS. LAMBERT: Lisa Lambert with the United States

15   Trustee.

16         THE COURT: All right. Thank you, Ms. Lambert.

17   Anyone else?

18     All right. Well, as far as who goes first here, we have

19   two motions of Mr. Dondero, a motion for protective order and

20   a motion to modify the Court's sealing order in this

21   adversary. Those were filed before the UBS request to

22   authorize alternative service methods for a subpoena on Mr.

23   Dondero. So I'll let Mr. Taylor go first, since your motions

24   are first in time. You may proceed.

25         MR. TAYLOR: Thank you, Your Honor. Just as

1   housekeeping matters, we had actually had a conference with

2   UBS last night and what we had talked about is actually me

3   going first because we thought that might be how Your Honor

4   ruled, and she did before we even got there.

5       But what we have also decided, in an attempt to streamline

6   this process and be as efficient as possible, is what we would

7   propose -- we think -- I believe UBS obviously can speak for

8   themselves -- believe these motions are all interrelated.  And

9   we think it makes the most sense to argue all three of these

10  together, and then allow UBS time to argue their case and then

11  do rebuttals, as necessary.

12      We've also agreed that this -- other than the documentary

13  evidence before the Court -- both parties filed a witness and

14  exhibit list out of an abundance of caution, but we would like

15  the Court to admit into evidence each of the parties' exhibits

16  that they have filed with their witness and exhibit list, but

17  there's no need for any live testimony.  We believe the Court

18  can decide on the papers, the arguments, and the documentary

19  evidence before it.

20      So we would move for admission of both our exhibits and

21  theirs as a preliminary matter, Your Honor.

22          THE COURT:  All right.  Mr. Clubok, you confirm this

23  is your agreement?   (Pause.)   You must be on mute.

24          MR. CLUBOK:  Your Honor, yes, that is the agreement,

25  although I was on mute because Ms. George is going to handle

1  the rest of the hearing.

2          THE COURT:  Oh, okay.

3          MR. CLUBOK:  So I'll let her --

4          THE COURT:  Ms. George, sorry about that.  All right.

5  So I got confirmation that is the agreement.  So, for the

6  record, all of the exhibits -- let's see, UBS's look like

7  they're at Docket Entry No. 30 and 37, and Mr. Dondero's look

8  like they appear at Docket 34 -- all of those are admitted

9  into evidence.

10     (UBS Securities, LLC's exhibits at Docket Entries 30 and

11  37 are received into evidence.  James Dondero's exhibits at

12  Docket Entry 34 are received into evidence.)

13          THE COURT:  All right.  Mr. Taylor?

14          MR. TAYLOR:  Thank you, Your Honor.  May it please

15  the Court.  For the record, Clay Taylor appearing on behalf of

16  James Dondero.

17     As Your Honor is aware, we're here on three different

18  motions.  The first is Mr. Dondero's motion for a protective

19  order.  The second is a motion for a modification of the order

20  sealing this adversary proceeding.  And the third is the

21  Debtor's motion for -- authorizing alternative service.

22     We believe, at the outset, Your Honor, that you should

23  grant the first two motions, for the protective order and

24  modify the sealing order, and that the motion for alternative

25  service, based upon the arguments and the rulings likely to be

1  made by this Court on the first two motions, should be denied

2  as moot.

3      I'll attempt to take these motions up in order.  They are,

4  of course, interrelated, but I'll try to address each of them

5  separately.

6      The first is the motion for protective order.  This motion

7  deals with some fundamental due process rights.  I hate to

8  repeat the timeline and what is already stated in our papers,

9  but I do believe the timeline is important, so I'm going to go

10  over a couple of dates with Your Honor.

11      On March 29th, there was a motion to file this complaint

12  under seal.  The same day, the Debtor filed essentially what

13  is a "me, too" motion.  It is clear, upon review of subsequent

14  events, that the "Plaintiff" and the "Defendant" are acting in

15  concert.

16      On March 31st, the Court granted the motion to file the

17  action under seal.  That was just two days after they had

18  filed the motion.  We're not sure, Your Honor, but I believe

19  that was probably done without a hearing or notice because

20  both parties agreed.

21      The very next day, on April 1st, the complaint was filed.

22      Meantime, in the meantime and in the background, UBS, on

23  March 30th, sent to Mr. Dondero via me a litigation hold

24  letter.  The Debtor, the very next day, sent a very similar

25  letter, a litigation hold letter, to Mr. Dondero through me.

1       It appears, although we are not sure because we have not

2   seen it, that these litigation hold letters may relate to this

3   suit.

4       On April 1st, the very -- the very same day that this suit

5   was filed, subpoenas were issued to my client.  And they were

6   sent to me and they asked me to accept service.  They asked me

7   to accept service for these subpoenas on a suit that I've

8   never seen.  They asked for documents from my client to be

9   produced eight days later.  And they asked for him to sit on

10  April 16th for his deposition on a suit on which he still to

11  this day has not seen.

12      I'm going to obviously go ahead and argue the motion, Your

13  Honor, but to be frank, just the recitation of those above

14  facts, to me, at least, make this abundantly clear how

15  unreasonable the subpoenas both were back in the past and

16  still are today.

17      What are the rules regarding discovery?  Well, generally

18  speaking, Your Honor, in an adversary proceeding, discovery

19  can't be issued before a Rule 26(f) conference is held.  Of

20  course, when we filed this motion, we were completely unaware

21  of whether a Rule 26(f) conference had been held, because, of

22  course, we weren't a party.  But you can bring a motion to

23  bring discovery and issue discovery early, prior to the Rule

24  26(f) conference being held, but a motion must be filed with

25  the Court to authorize such issuance.

1    Here, upon my examination of the docket, I am unaware of

2 any such motion having been filed.  Again, we're not a party

3 to this suit, I don't get all the ECF notices, but I am

4 unaware of any such motion having been filed, nor granted.

5    Even if such a motion is filed, the earliest that any

6 party could issue and serve discovery is 21 days after the

7 suit had been initiated and service perfected.  Of course, 21

8 days is -- is a pretty special date, and there's a reason why

9 they picked 21 days.  Well, that's when responsive pleadings

10 are due.  You can't have parties have to respond to discovery

11 before the parties have even appeared in the case.

12    THE COURT:  I know you're going to get to this, but

13 Mr. Dondero is not a party.

14    MR. TAYLOR:  That is one hundred percent correct,

15 Your Honor.  He's not a party.  However, the rules for

16 discovery as to nonparties is exactly the same.  And there is

17 no -- there is no provision for short-circuiting discovery

18 rules in an adversary proceeding as to a nonparty.

19    Now, I think what the other side will argue is, well, this

20 is a contested matter under Rule 9014, and therefore we can

21 issue discovery.  And quite frankly, Your Honor -- and they'll

22 cite to another adversary proceeding filed underneath this

23 lead bankruptcy case where a motion for protective order was

24 indeed filed by Mr. Dondero.  It was regarding the injunction

25 proceeding.  It was filed on December 28th.  The Debtor in

1    that case filed a response that same day.  And the next day, I

2    believe without notice and a hearing, the Court denied that

3    motion for protective order in part, granted it in part.

4    There was no rationale given in the order, which was largely

5    constructed, I believe, from an email that this Court had

6    directed to the parties.  But that is not a finding that 9014

7    should -- and therefore not applying Rule 26(f) is binding

8    authority on this Court or any other.

9        And Your Honor, to the extent that they make that

10    argument, we can find no case law in support.  In fact, we

11    find it to the contrary, that when an adversary proceeding is

12    initiated, the due process rights that are implicated are

13    important and should not be abrogated.  A contested matter is

14    a -- much looser rules of construction in how discovery can be

15    -- I'm sorry, did you say something, Your Honor?

16        THE COURT:  Well, I was about to.  I apologize for

17    interrupting, but I think --

18        MR. TAYLOR:  No, go ahead.

19        THE COURT:  I think all the lawyers hopefully know I

20    tend to err on the side of being pragmatic.  And here is what

21    I'm about to ask you in that spirit.  It feels like we're

22    going through a lot of brain damage to kind of argue about

23    whether an early 34 request applies to a nonparty and whether

24    Rule 34 applies in a contested matter, is this a contested

25    matter, or should it be considered an adversary?  You know, we

1    could argue for a long time about that, and you all have, in

2    the pleadings, argued quite a bit.

3        But I'm looking at the docket, and the summons and

4    complaint it shows were served on the party, Highland, let's

5    see, this was filed April 5th, and it shows service occurred

6    on April 1st.  So, assuming Rule -- the early Rule 34

7    provision of Rule 26 applies here, we're now at more than 21

8    days after summons.  Now, I know you say -- okay.  If this

9    rules applies like you say, April 22nd, I guess, would have

10   been the very first day that the subpoenas could have been

11   served on Mr. Dondero.

12             MR. TAYLOR:  Correct.  Had a Rule --

13             THE COURT:  We're at April 28th now.  I mean, why are

14   we arguing about this, is what I'm asking, from a pragmatic

15   standpoint.

16             MR. TAYLOR:  Well, Your Honor brings up an

17   interesting point.  First of all, let me state that to the

18   extent early discovery had been requested, then, yes, it would

19   be April 22nd.  But no such motion was brought, first of all.

20       Second of all, and this is -- this is what to me is a

21   little bit mind-boggling, Your Honor.  It is -- we think it

22   appears to be clear that the ultimate target of this

23   litigation is other than the Defendant.  The Defendant and the

24   Plaintiff have a motion before this Court in the main

25   bankruptcy case to settle all the claims amongst themselves.

1   And so the Defendant is not truly a target defendant here.

2   What is being done is a true assault on fundamental due

3   process rights of third parties.  There's not a plaintiff-

4   versus-defendant that are adversarial to each other.  Instead,

5   they are acting in concert to try to get some sort of material

6   from my client to prove their ultimate case against him.  And

7   what -- are they going to try to implead him in this case, if

8   we don't intervene as a matter of right?  I don't know.  Are

9   they going to try to use some sort of finding made in this

10  Court, in this friendly litigation, to then go use that

11  finding in a subsequent proceeding?  Again, I don't know.  But

12  the fact that we are apparently some sort of a target of this

13  litigation, and being asked to sit for depositions and produce

14  documents for it, but they won't show us the complaint, to me

15  is just -- it truly blows my mind that --

16          THE COURT:  So, what we're really, really focusing on

17  today is the sealing motion, right?  I mean, I guess that's

18  what I felt like coming in.  This is all getting to whether

19  this thing should be unsealed.  Because we're more than 21

20  days --

21          MR. TAYLOR:  Correct.

22          THE COURT:  -- out.  You know, it seems like --

23          MR. TAYLOR:  I totally agree that --

24          THE COURT:  -- your motion is kind of now not moot,

25  but, you know, it has less of a punch to it now that we're

1  farther out.

2      And the alternative service motion of UBS seems like it's

3  going to be a no-brainer if they really convince me that Mr.

4  Dondero -- you know, service was attempted on him 31 times and

5  he somehow was always unavailable.  What we're really going to

6  fight about today is the sealing aspect of this adversary; --

7          MR. TAYLOR:  Well, --

8          THE COURT:  -- yes or no?

9          MR. TAYLOR:  I one hundred percent agree, but the

10  sealing then flows to the motion for protective order.  To ask

11  my client to produce documents when he hasn't seen the very

12  complaint about which he seems to be the target, and whether

13  he then gets a chance or should be -- move to intervene as a

14  matter of right or as a matter of discretion, before he has a

15  chance to review that, make an informed decision about that,

16  in my mind, and we believe the case law supports, that a third

17  party's rights should not be prejudiced and he shouldn't have

18  to produce discovery that could potentially be used against

19  him, sit for depositions that could potentially be used

20  against him.  The timing is just still off until we see what

21  we're talking about and have a true, legitimate chance, which,

22  generally speaking, would be 21 days after it is served, and

23  in my mind that equates to after it is unsealed.  At that

24  point, maybe then discovery is appropriate.  But it's just not

25  at this point.

1    They've attempted to use a secret court filing.  That is

2  just anathema to everything that our public system of justice

3  stands for, is to have secret proceedings.  Proceedings are

4  supposed to be true and open.  If there's highly secret and

5  confidential information, generally, they are filed and --

6  under seal and redacted, just those sensitive confidential

7  information.

8    And apparently whatever is sensitive and confidential has

9  something to do with my client and transactions that he may

10  have done and they say that were wrongful.  Well, if he

11  already has knowledge about them, what's the sensitive

12  confidential information that we're discussing?  Again, I

13  don't know because I haven't seen the complaint.

14    So, I agree with Your Honor.  The motion to seal does kind

15  of -- it's the driver here.  But then that feeds into the

16  relief that we think that this Court should afford itself,

17  should afford us, after the unsealing.

18    As far as the alternative service, I was not authorized to

19  accept service.  And why would I, for a suit that we don't

20  know anything about?  And, you know, they tried to serve him.

21  Yeah, he was unavailable.  But they shouldn't have been trying

22  to serve him anyway with this discovery about this secret star

23  chamber-like suit.

24    And so I hate to be so forthright about it, but it just

25  truly shocks the conscience a little bit, that that is what is

1   trying to be done here.

2          THE COURT:  You know, I will say I tend to agree with

3   most of what you're saying.  I am a judge who likes

4   transparency.  I don't like to seal things.  But let me play

5   devil's advocate.  You all have a pretty good clue what the

6   lawsuit is about.  I mean, you can tell from the publicly-

7   available docket that it's seeking injunctive relief.  And if

8   I understood --

9          MR. TAYLOR:  We don't know against whom, though, Your

10  Honor.

11         THE COURT:  And if I understood what I read

12  correctly, preservation notices were sent that looked pretty

13  detailed as far as what was going on here.

14      So, you know, I think this kind of cuts both ways.  It

15  cuts into your argument.  It's probably going to cut into Mr.

16  -- or I keep wanting to say Mr. Clubok.  I'm sorry.

17         MR. CLUBOK:  Ms. George, Your Honor.

18         THE COURT:  Ms. George.  It probably cuts into her

19  argument, too.

20      I mean, it feels like the cat's out of the bag here.  I

21  cannot believe that you and your client really have no clue

22  what this is about.  And given that, I'm really not sure why

23  we need to seal it.  But just if you can respond to that.  Is

24  it a little disingenuous to say you have no idea what this

25  lawsuit is about?  Your client has no idea?

1          MR. TAYLOR:  So, again, timing is important here,

2   Your Honor.  When we were served with the subpoenas, that was

3   April 1st.  The motion to settle with UBS, which made these

4   allegations that $300 million had been denuded from the estate

5   and sent somewhere else, that hadn't been filed.  We really

6   have no idea.  There's some sort of injunctive relief that has

7   been sought and may be granted in this case.  I'm not really

8   sure.

9          THE COURT:  It's -- the order is --

10         MR. TAYLOR:  I don't know who the injunction is

11  against.

12         THE COURT:  The order is right there on the docket,

13  right?  Isn't the order -- the order is not under seal, is it?

14         MR. TAYLOR:  Your Honor, the TRO is not, Your Honor.

15         THE COURT:  Uh-huh.

16         MR. TAYLOR:  The injunction that they're asking for,

17  I mean, I'm not sure why they have to enjoin a friendly

18  defendant.  They can't enjoin anybody else who's not a party.

19  So, again, I'm not exactly sure why the injunctive relief was

20  necessary or sought.  And I think it was probably just to get

21  expedited discovery going to then try to issue it to my

22  client.

23      But, so we have some idea what it's about.  But, again,

24  what does this Court look for, and when we go to trial, what's

25  the active pleading?  Well, it's the Plaintiffs' complaint

1  right up until the joint pretrial order, which lays everything

2  back out.  I mean, that's the guts of what lawyers have to

3  rely upon, so we've got to be able to see it.

4       Sure, do I have a decent idea now, after the UBS

5  settlement motion has been filed and the litigation hold

6  letters came up?  Were we able to kind of piece it together?

7  Sure.  But should we have to try to piece together what's in a

8  lawsuit that alleges, apparently, $300 million worth of

9  damages or somewhere thereabouts?  We shouldn't have to be

10  guessing.

11       These are serious allegations.  They should be taken

12  seriously.  We should be able to see what that -- that lawsuit

13  is about if we're going to be asked to produce discovery about

14  it.

15       So, yes, I get your -- but at the same time, when these

16  subpoenas were first issued and we started kind of drafting up

17  -- as we started piecing stuff together, we filed our motion

18  for protective order the day after the UBS settlement motion

19  was filed.  And so we had already kind of prepared that, and

20  we were still trying to evaluate that UBS settlement motion,

21  exactly what they were saying.

22       So, but again, why should -- why are we searching around

23  in the dark for something?  It's not something we should have

24  to do.  That's why there are due process requirements.

25       Did that answer Your Honor's question?

1              THE COURT:  Well, it does.  And what about this?  I

2      seem to recall, in UBS's pleading, response to this, they said

3      they did offer to show your client the lawsuit, but they

4      wanted your client to agree not to share it beyond, you know,

5      himself and you, and his lawyers.  And that was a no go.  Tell

6      me about that.

7              MR. TAYLOR:  Sure.  First of all, I was surprised to

8      see those communications come about.  Those clearly were

9      settlement communications.  But be what it may, I'm happy to

10     address them.

11        I think if Your Honor turns back in the prior emails, when

12     we first made the suggestion that we were thinking about

13     opposing and moving for a protective order, I said, but let me

14     see the suit.  And Mr. Pomerantz or Mr. -- and Mr. Morris's

15     firm said, no, but really what you -- who you need to ask is

16     the Plaintiff, UBS.  And so I went to Mr. Clubok, I said, can

17     we see them?  And the answer was no.

18        It was only after we filed the motion for protective order

19     that they came back and said, you know what, we'll let you see

20     them, but you can only share it with Mr. Dondero and his

21     counsel, which, okay, that -- that's a step in the right

22     direction.  But I don't know what this lawsuit says, but I --

23     we have a decent idea.  My guess is it implicates rights of

24     third parties.  It also might implicate rights of affiliate

25     entities.  Mr. Dondero may or may not -- we're still

1  investigating the factual background and the way the legal

2  framework exists -- he may owe fiduciary duties to those third

3  parties.

4      And for him to have an essential gag order because he

5  can't share it with any other affiliate or third parties to

6  which he has fiduciary duties that, hey, these allegations are

7  being made, this may implicate your rights, you need to

8  evaluate and take appropriate action on that entity's behalf,

9  that, quite frankly, handcuffs him to a degree which is, we

10  believe, impermissible, Your Honor.

11      THE COURT:  You don't think a court order shields him

12  from accusations of breach of fiduciary duty?

13      MR. TAYLOR:  No, Your Honor, I don't.  I think he has

14  to protect very hard those fiduciary duties, and he must, if

15  appropriate, ask Your Honor and point out that this puts him

16  in an untenable position.

17      And to the extent that that court order is issued, we --

18  we obviously would have to get there later if that's where --

19  the way it were to come about.  But I think he would have to

20  consider appealing that, because that really does put him in

21  an untenable position.  I'm not trying to be overly

22  argumentative or saying that, you know, we must have our way

23  or we will appeal, but I truly do believe that that could put

24  him in such a position that he would have no choice but to at

25  least pursue that.  Otherwise, open himself up to liability to

1   third parties.

2           THE COURT:  Okay.

3           MR. TAYLOR:  So, Your Honor, I think, with your

4   questions -- I mean, I've got eight more pages of notes here.

5   But I think our back-and-forth between you and I have pretty

6   much established what our positions are.  Unless Your Honor

7   has any more questions for me at this point, I'm happy to

8   yield the floor.

9           THE COURT:  All right.  Thank you, Mr. Taylor.

10      All right.  Ms. George, I'll hear from you.

11          MS. GEORGE:  Thank you, Your Honor.  Can you hear me

12  all right?

13          THE COURT:  I can.  Uh-huh.

14          MS. GEORGE:  Great.  Thank you, Your Honor.

15      You, in your back-and-forth with Mr. Taylor, you covered

16  many of the points I was going to raise.  I don't want to take

17  the Court's time in repeating those.

18      I will just briefly cover the fact that we did offer Mr.

19  Taylor to share the complaint with Mr. Dondero, as long as he

20  kept it confidential and not share it with anyone else.  That

21  offer was not accepted.  So we really think that belies the

22  assertion in his papers that the reason he needs to see the

23  sealed pleadings is to determine if his interests are

24  implicated.

25      The TRO order, which, as Your Honor correctly pointed out,

1  is public, states that the Debtor is enjoined from making

2  payments or transfers that were a part of the fraudulent

3  transfers to Sentinal, an entity that Mr. Dondero has a

4  majority ownership in.  We would submit that that is more than

5  enough information to determine if his interests are

6  "implicated" and if he needs to move to intervene.  We take no

7  stance on whether intervention is correct, but we think that's

8  more than enough.

9      And the fact that we offered to show him the allegations,

10  as long as he kept it confidential, and that wouldn't work for

11  him, really goes to our fears that Mr. Dondero is looking to

12  find this complaint to further conspire with other parties and

13  possibly hurt UBS further and move these assets further or

14  dissipate them that are the subject of these fraudulent

15  transfers.

16      Your Honor, Mr. Dondero's motion seeks to not only unseal

17  the complaint but also the TRO motion and the exhibits

18  underlying that motion.  And as Your Honor is aware, those

19  exhibits include documents that Mr. Dondero is not copied on,

20  communications with former Debtor employees that Mr. Dondero

21  is not copied on.  And we have real concern with him gaining

22  access to those and causing further issues pursuant to this

23  fraud.

24      I'm happy, Your Honor, to go over the various procedural

25  arguments.  We don't think that the Federal Rules have

1   anything to do with due process rights of third parties.   And

2   Your Honor correctly pointed out that these are -- all of the

3   rules go to parties, and Mr. Dondero is not a party.   And we

4   agree that, had -- if he did see the complaint, the seal --

5   the sealing order from this Court would protect any supposed

6   fiduciary duty that he claims, although that seems pretty

7   unavailing.

8        We have met all of the applicable rules here.   And as Your

9   Honor pointed out, even if Rule 26(b)(2) did apply, which we

10  don't believe it does here, it's been more than 21 days.   His

11  arguments are moot.   He's evaded service now for almost a

12  month.   There's -- and there's really no argument that an

13  expedited timeline at this point isn't appropriate.   His

14  counsel, at the very least, has had these subpoenas for a full

15  month.

16       So, asking that he produce documents within seven days and

17  sit for a deposition within seven days we feel is more than

18  adequate.   And it's in line with the discovery that Your Honor

19  allowed in the adversary proceeding between the Debtor and Mr.

20  Dondero, which sought documents in five days over the

21  Christmas holiday.   And Mr. Dondero filed a very substantially

22  similar motion there, and the Court denied it.   And we believe

23  that that should be done here as well.

24       We -- I'm happy to cover any questions that you would

25  like, Your Honor, but we believe that the motion for

1  alternative service should be granted and that both of Mr.

2  Dondero's motions should be denied.

3         THE COURT:  All right.  A couple of follow-ups.  I

4  think I used the expression, it seems like the cat is out of

5  the bag to me because of the litigation hold letters and the

6  TRO that is public information and just the title of the

7  lawsuit.

8      So, I ask you, really, what is the big deal at this point?

9  I mean, I feel like Mr. Dondero has to understand what this

10  lawsuit is about, from what little bit has trickled out there,

11  so what's the big deal?  It sounds like to me you're just

12  worried about the exhibits, the attachments to -- I can't

13  remember if it was to the complaint or the motion for TRO and

14  preliminary injunction.  Is that -- am I hearing that

15  correctly, it's really these documents more than anything else

16  you feel are sensitive?

17         MS. GEORGE:  Well, we feel it's all sensitive, Your

18  Honor.  That's why we were willing to share the complaint on a

19  strictly confidential basis with Mr. Dondero.  We feel very

20  strongly that he should not have full access to the complaint

21  without any confidentiality restrictions upon it, because our

22  -- one of our major concerns is him seeing the complaint,

23  seeing other individuals described therein, seeing the

24  documents with the conversations that he's not copied on, and

25  then going to those individuals and working to further, you

1  know, relieve assets and further hurt UBS's chances at

2  recovering the billion-dollar judgment that's owed against

3  these, you know, these Highland funds.

4       THE COURT:  Okay.  All right.  So, again, just to

5  make sure I'm hearing you loud and clear, if there was an

6  order here where the Court required the unsealing of the --

7  or, you know, I don't know how we want to phrase it -- allowed

8  Mr. Dondero to see everything, the pleading and the exhibits,

9  as long as it restricted him from sharing it or discussing it

10 with anyone other than his counsel, you all are willing to

11 live with that?  Am I hearing that correctly?

12      MS. GEORGE:  I think -- very close.  We would be

13 willing to share the complaint with him, as long as he agreed

14 not to share it, discuss it, or use it to develop strategy

15 with any -- anyone else other than his attorneys.  We would

16 feel uncomfortable sharing the exhibits, --

17      THE COURT:  Okay.

18      MS. GEORGE:  -- as those are the documents that he is

19 not on.

20      THE COURT:  Okay.  I misheard you on the exhibits.

21 All right.  Well, and I guess we don't need to say anything

22 about the alternative service.  Again, I've got your

23 affidavit, your declarations of many, many process servers

24 that I've seen here, and I think you've kind of said all you

25 need to say on that one from your pleading.

1      All right.  Well, before I return back to you, Mr. Taylor,

2  Mr. Morris, you're a party in this, obviously, your client is.

3  Do you have anything you want to say about these disputes?

4          MR. MORRIS:  Your Honor, John Morris; Pachulski Stang

5  Ziehl & Jones.  Just very briefly.

6      As I understand the motion and I understand the argument

7  today, the only thing we're talking about is a complaint and

8  the exhibits attached to the complaint.  We're not talking

9  about the Debtor's response or the exhibits attached to the

10  response.  And if that's the case, Your Honor, we take no

11  position on how the Court should rule on the treatment of the

12  complaint and the exhibits annexed thereto, nor do we take a

13  position on service or the deposition.  We haven't joined in

14  that.

15          THE COURT:  Okay.  I'm going to go back to Ms.

16  George.  Were there exhibits attached to the complaint, or

17  just to the motion for a TRO and preliminary injunction?  And

18  the Debtor's --

19          MS. GEORGE:  Just the motion, Your Honor.  So, yeah,

20  the complaint is a standalone document.

21          THE COURT:  Okay.  Okay.  Okay, thank you.

22          MS. GEORGE:  The exhibits were attached to the

23  motion.  Yes.

24          THE COURT:  Okay.  Okay.

25          MR. MORRIS:  Okay.  So, Your Honor, just to clarify,

1    then, that's fine, and the Debtor's position stands, as long

2    as we're not talking about the Debtor's response and the

3    exhibits attached to the Debtor's response.  I don't think

4    that's part of the motion.  I don't think any request has been

5    made of us in that regard.

6              THE COURT:  All right.  Mr. Taylor, I'll give you the

7    last word, but I'll tell you where I'm leaning so you know

8    exactly what perhaps you need to address.  I'm leaning

9    towards, I guess we would say, granting your motion for

10   protective order in part, and that would work like this.  That

11   UBS would provide to you and Mr. Dondero the complaint, just

12   the complaint, and the Court would order that the complaint

13   not be shared beyond Mr. Dondero and his lawyers at Bonds

14   Ellis absent further order of the Court.

15     I always like to say the obvious, that I have discretion

16   to change that if ever someone urges and convinces me to

17   change that, but that would be the ruling on that.  And I

18   would be inclined to rule that alternative service of the

19   subpoena, by service on you and electronic service to Mr.

20   Dondero, is appropriate, and say at this point that the

21   document production would occur seven days after you see the

22   complaint, and the deposition maybe a couple of days after

23   that.

24     So, what -- knowing where I'm leaning, what say you, Mr.

25   Taylor?

1          MR. TAYLOR:  Your Honor, first of all, I'd like to

2     point out that we offered to view the complaint and related

3     items under the auspices of the protective order that is in

4     place in the main bankruptcy case.  We believe that is the

5     appropriate standard by which it should be done, instead of

6     just Bonds Ellis and his attorney.  The protective order in

7     place does allow him to discuss what he sees with affiliates

8     and their -- and their agents.  I'm sorry, their attorneys.  I

9     said agents.  I apologize.  And we believe that that is the

10    appropriate thing.

11         I think what becomes really apparent here, Your Honor, is

12    this is not only a strategic move to get free discovery from

13    who the ultimate target is by two different parties, we need

14    to be able to see the complaint to -- the complaint and the

15    response.  So, despite what Mr. Morris said, that that's not

16    what we're asking for, it is.  If I inartfully pled it, I

17    apologize.  But we need to see the full thing.

18         These are two parties acting in concert to ultimately

19    drive the litigation goal that appears to be aimed against my

20    client.  These are not true plaintiff and defendant here.  The

21    fact that they enjoined themselves is -- is kind of laughable.

22    It just is.  And they have an agreement in total that they --

23    to settle everything, but yet they asked for an injunction of

24    one party against the other.  It's -- that's just silly.

25         And Your Honor, they're trying to also wall Mr. Dondero

1   off.  I love our attorneys here at Bonds Ellis and I think we

2   do a great job, but let's look at the manpower that they

3   wanted to stack this up against.  They want Pachulski Stang

4   and Latham & Watkins v. little Bonds Ellis.  And you know

5   what, they can swamp us.  And you know what, they're doing a

6   damn good job of trying to do it.

7       And, but they're trying to wall Mr. Dondero off from being

8   able to get the resources he needs to be able to defend

9   himself and any affiliated entities.  And they're trying to

10  wall it off and they're -- it's a clever -- you -- sometimes

11  you've just to call out a spade a spade, and that's what's

12  happening here, in addition to the free discovery and ultimate

13  litigation.  They're trying to wall Mr. Dondero off.  And it's

14  not appropriate, Your Honor, and we need your help to prevent

15  -- prevent that from happening.  They're trying to stack the

16  deck.

17      And as far as seven days after, with all due respect, I've

18  -- I've got trial that is continuing and has been for the past

19  month in Judge Hale's court, and we've got three -- two, maybe

20  three more days left of trial in that.  I've got a couple

21  other matters down in Judge Isgur's court that are equally

22  large and actually, as far as terms of dollars, much larger

23  even that this case.  And there's only so much bandwidth I

24  have to be able to deal with this, Your Honor.

25      Also, our lead -- as Your Honor is aware, our lead person

1   on this case is not here anymore, and I'm not leaning on that

2   as an excuse, but there is some ramp-up that we are

3   experiencing, trying to overcome that. And so it's just --

4   it's too fast.

5       Normally, after you got served with a complaint, you would

6   at least have 21 days before they could even serve you with

7   discovery, and then you should have 30 days to be able to

8   answer it. That's the standard response date that is laid out

9   in the Rules. So, in my opinion, it should be 51 days after

10   we get to view the response.

11       And I see Mr. Seery is laughing, but, you know, it's --

12   those are what the Rules are. And if they wanted to bring

13   litigation against Mr. Dondero, then bring it. Don't hide

14   behind this third -- this two friendly-party litigation.

15       And I'm sorry my voice is getting raised, but it just --

16   it raises my ire a little bit. I know other parties are

17   probably -- equally have as much ire against my client. And

18   so I will try to refrain from doing that in the future.

19   That's all, Your Honor.

20         MR. MORRIS: Your Honor, may I be heard? It's John

21   Morris with Pachulski.

22         THE COURT: Do you have something to clarify, or

23   what?

24         MR. MORRIS: I do, actually. You know,

25   notwithstanding my respect for Mr. Taylor, I do take offense

1    to the use of the words "laughable" and "silly."  The fact of

2    the matter is the Debtor is a defendant in a lawsuit.  We have

3    not joined in seeking discovery against Mr. Dondero.  Indeed,

4    we are the recipient of very voluminous discovery demands

5    pursuant to the subpoena that was served on the Debtor itself.

6    We've taken no position as to whether or not the complaint

7    should be disclosed.  We've taken no position as to whether or

8    not alternative service should be granted.  The notion that

9    this is a friendly -- a so-called friendly litigation, Mr.

10   Taylor is simply mistaken.

11        And I would ask, Your Honor, can we make sure that Mr.

12   Dondero is on this call, pursuant to the court order?  I don't

13   see his video here.

14             THE COURT:  All right.  What about that, Mr. Taylor?

15             MR. TAYLOR:  So, one, I did send him a link, and I

16   don't know if he is attending or not.

17        Two, I don't believe -- and this is where this gets -- it

18   points out the problems we have with not following the

19   procedural rules.  From what I understand of the order

20   requiring him to be present for all bankruptcy proceedings,

21   and this is -- this is an adversary proceeding, to which he is

22   not a party, because he has not been sued, and that order

23   simply doesn't require him to be here.

24        Now, he may be here or not, because it was important to

25   him, but I don't know what his schedule was, so I didn't

1   confirm for sure whether he was going to be on.  And so I'd

2   quite simply say I sent him a link but I didn't instruct him

3   that he absolutely had to be here because I did not believe,

4   under the Court's order, that he had to be.  And certainly, as

5   a nonparty, I don't think he is.  And that's all I can tell

6   the Court on that issue.

7           THE COURT:  All right.  Well, let me ask.  Mr.

8   Dondero, if you're out there, please speak up so we know.

9       (Pause.)

10          THE COURT:  Just so you know, I have a screen here in

11  my courtroom they call the Polycom.  I can't see every single

12  -- I can just see that there are 49, 50, 51, 52, 53 -- 55 or

13  56 participants.  But I can only see people who have recently

14  spoken or are speaking.  I can't see every person who's

15  involved.

16      Mike, do you happen to see if --

17          THE CLERK:  I don't see him on there.

18          THE COURT:  Yes.  We don't see Mr. Dondero.  All

19  right.  So, gosh.

20          MS. GEORGE:  Your Honor, may I respond briefly?

21          THE COURT:  Okay.  Go ahead.  Go ahead.

22          MS. GEORGE:  Thank you, Your Honor.  You know, Mr.

23  Taylor made some -- some outrageous accusations there.  This

24  is not a collusive suit by any stretch of the imagination.  We

25  are seeking a temporary restraining order against the Debtor.

1 They are on the other side. And the rules that Mr. Taylor

2 continues to cite are with regard to parties. They do not

3 apply in injunctive -- in emergency injunctive relief on third

4 parties.

5     I -- you know, Mr. Taylor mentioned he's very busy. I'm

6 sure everyone on this call is very busy. I know for a fact

7 that Your Honor is incredibly busy. I receive the docket

8 updates every day. And so I think he's making a lot of

9 excuses, and he has had -- and the short timeline is, you

10 know, of his own making. They have been evading service for

11 30 days now. There is no question that they have had more

12 than enough time to prepare for a deposition, to collect the

13 documents responsive to the subpoenas. So any short timeline

14 that's going to be an issue for him is because of his client

15 avoiding service.

16         THE COURT: Okay.

17         MS. GEORGE: Thank you, Your Honor.

18         THE COURT: Thank you.

19     Well, let me say several things here. I don't have

20 memorized the exact way I worded my instruction many weeks ago

21 regarding Mr. Dondero attending all of these court hearings.

22 I can't remember. I know what I intended to do, and I'm

23 surprised if I didn't get it worded in an order this way.

24 What I intended to do was at least say this: At any hearing

25 where he takes a position, where he files a pleading or wants

1   to take a position, he needs to be here.  That's what I

2   thought I said.  And I didn't mean just in the underlying

3   bankruptcy case or in certain adversaries.  I meant if he

4   wants the Court to devote time to him and his positions, I

5   don't want it to be just the lawyers.  I want him to be here,

6   available.  Available to the Court, available to any party who

7   might want to examine him with regard to the positions he

8   takes.  And I want him to see what's happening.

9       I had many motivations, but of course a strong motivation

10  for ordering that was when, at a hearing shortly after the

11  TRO, the December 10th TRO, he, in deposition testimony and

12  then at the preliminary injunction hearing testimony, he gave

13  the impression that he hadn't ever read the TRO.  Or hadn't

14  visited about -- hadn't attended the hearing on the TRO,

15  hadn't read it, didn't really -- you know, acted like he

16  wasn't completely aware of its details.  So I wanted to make

17  sure that never happened again.  If there was an order somehow

18  affecting him, I wanted to be sure he was here when it all

19  happened.  But I also think, again, if he's taking positions,

20  he needs to be here and be a part of it all.  Okay?  So, --

21          MR. MORRIS:  Your Honor, if I may, because I can just

22  read you the order right now.

23          THE COURT:  Oh, good.

24          MR. MORRIS:  Because it's clear as day, just as Your

25  Honor recalled it.

1          It's at Docket No. 59 in the adversary proceeding

2     concerning the injunctive relief.  The preliminary injunction

3     was entered on January 12, 2021.  And Paragraph 6 provides,

4     "James Dondero is ordered to attend all future hearings in

5     this Bankruptcy Court by WebEx or whatever other video

6     platform is utilized by the Court unless otherwise ordered by

7     the Court."

8               THE COURT:  Okay.

9               MR. MORRIS:  There's no exceptions.  It's --

10              THE COURT:  All right.

11              MR. MORRIS:  And I would -- yeah.  I'll just leave it

12    at that.

13              THE COURT:  It's even a little broader than I

14    remembered.  It didn't narrow in on if he's taking a position.

15    So that, you know, he's violated a court order today.  But,

16    anyway, I'm sure you will communicate to him that he needs to

17    participate in the future.  Okay?  And I guess I'm going to

18    have to play teacher and call roll and make sure he's out

19    there right at the beginning of every hearing.

20              MR. TAYLOR:  Your Honor, I'll make sure of that.  And

21    to the extent, if that was my fault, of course, I wasn't

22    involved with this case when -- when Your Honor made those

23    rulings.

24              THE COURT:  Okay.

25              MR. TAYLOR:  As you know, I only recently came into

1  this case, just merely it was supposed to be just for purposes

2  of confirmation.

3          THE COURT:  Okay.

4          MR. TAYLOR:  And the circumstances have --

5          THE COURT:  Well, if --

6          MR. TAYLOR:  -- developed.

7          THE COURT:  If it sets your mind at ease, I'm not

8  going to an issue a show cause order this afternoon to hold

9  him in contempt of court for not being on today's WebEx.  I've

10 already got enough contempt motions in front of me in this

11 case, and I don't want to add to it with this.  Okay?

12     But let me get to the matters before me.  You know, I --

13 the word "silly" was used at some point by someone, and, you

14 know, I always cringe a little.  I was tempted to come out

15 here and say, this is silly.  You know, he's dodging service.

16 And by the way, the cat's out of the bag.  Surely he knows

17 what this lawsuit is about.  I was tempted to use that word

18 myself.  But I wanted to make sure Mr. Dondero knows and

19 everyone knows, I mean, this is serious stuff.  I read the

20 complaint, obviously.  I've read the motion for the TRO and

21 attachments.  It's serious stuff.  And you know, have no doubt

22 about that.

23     But it is a complaint of UBS against Highland.  Mr.

24 Dondero is not a defendant.  None of the various entities that

25 we've talked about in so many hearings, in so many contexts,

1  under the Highland umbrella, none of them are defendants in

2  this lawsuit.  There may be other lawsuits that mushroom and

3  involve some of them regarding some of what is alleged in the

4  complaint.  But at this point, it's UBS against Debtor.

5       And yes, I understand describing it as friendly litigation

6  when, right at the beginning, Highland agrees to a TRO.  But

7  gosh, isn't this case full of irony, among other things?  You

8  know, I don't know that I've ever seen two parties fight each

9  other as hard as Highland and UBS as we've seen in this case.

10  And they went to mediation.  No go.  Didn't settle.  We had a

11  long estimation hearing.  We've had appeals.  You know, it's

12  -- I find it a little of a stretch to think of this as

13  friendly litigation.  It's cooperation at this point, is what

14  I would call it, and we'll see what happens.  But, again, I

15  just stress for the record that Mr. Dondero is not a party,

16  nor is any other entity in the Highland umbrella, other than

17  the Debtor Highland itself.

18       Now, having said that, I do not take sealing lightly at

19  all.  I'm trying to think -- well, it's not very often that

20  I've been asked to seal an adversary proceeding.  It happens,

21  but I don't take it lightly, because I am, like I think any

22  judge, sensitive to transparency, to Bankruptcy Code Section

23  107, and allowing all parties in interest in a bankruptcy case

24  to know what's going on.  But there are times when there is

25  sensitive commercial information, potentially scandalous,

1  defamatory matter.  You know the examples in 107 and the case

2  law.  There are situations where at least temporary sealing is

3  warranted.  And I decided, after spending a half a day at my

4  desk looking through this one, that it was appropriate, at

5  least for now.

6      And I don't even think, the way UBS worded it -- well, I

7  know they worded it in an open way, where, you know, for now.

8  I'm thinking you said until a hearing on the preliminary

9  injunction, maybe.  Am I right, Mr. Clubok or Ms. George?

10         MS. GEORGE:  That's correct, Your Honor.

11         THE COURT:  Yes.

12         MS. GEORGE:  Your Honor, that's correct.  It's just

13 sealing until the preliminary injunction hearing.

14         THE COURT:  Yes.  So, you know, that's a big deal,

15 right?  That's a big factor, that we're talking about a finite

16 period of time.  And, again, I spent a half a day at my desk

17 looking at this, and was convinced there are valid concerns in

18 keeping this sealed for a finite period of time.

19     So, what I'm going to do is grant in part Mr. Dondero's

20 motion, and I'm going to do it the way I suggested earlier.

21 He shall be allowed to see the complaint.  Okay?  He can see

22 the complaint.  And at this point, it can only be shared with

23 him and Bonds Ellis.  Okay?  So that's the ruling for now.

24 Okay?  We're talking about a finite period of time.  So I'm

25 not persuaded that his fiduciary duties make this intolerable

1   or he needs more lawyers than Bonds Ellis.  I mean, this is

2   the ruling for now.  I think it strikes a fair balance.

3       So he gets to see the complaint and Bonds Ellis gets to

4   see the complaint, but protective order is in place so that

5   they are restricted from sharing or discussing the contents

6   with anyone else.

7       So, my further ruling is that the alternative service of

8   the subpoenas on Mr. Dondero is approved.  Again, mailing to

9   Mr. -- regular mail to Mr. Dondero is fine, and email to Mr.

10  Taylor is fine.

11      And I can't remember, I mean, it's not an onerous list of

12  documents sought, right?  I've got to pull this up again.  It

13  was how many categories of documents?

14          MR. TAYLOR:  Sorry, I'm turning there right now, Your

15  Honor.

16      (Pause.)

17          THE COURT:  It didn't occur to me that more than

18  seven days was needed.

19          MS. GEORGE:  It's twelve categories of documents,

20  Your Honor.

21          THE COURT:  Okay.  Show  me again the docket number

22  or tell me the docket number that it appears at.

23          MS. GEORGE:  Certainly.  It's Docket 23.

24          THE COURT:  Okay.  There it is.

25          MS. GEORGE:  And it's Page -- yeah, Page 27 of that

1   PDF.

2          THE COURT:  Okay.  Page 27.

3          MS. GEORGE:  And as Your Honor will see, they're

4   fairly limited categories of documents.

5          THE COURT:  Okay.  Well, I just wanted to double-

6   check.  Okay.  (Pause.)  Okay.  Seven days from, again, the

7   time the complaint is received.  I assume you're going to send

8   the complaint today.  I don't know, maybe you want to have the

9   order in place before you do that, so maybe tomorrow.  So

10  let's just get a date certain.  Okay?  So, the documents shall

11  be produced -- what is seven days from tomorrow?  What is

12  that?

13         MR. TAYLOR:  May 6th, Your Honor.

14         THE COURT:  May 6th.  And so can we say a deposition

15  the following Monday?  I'm going to be the secretary/scheduler

16  here just while you're all on the line, so we don't waste a

17  bunch of time offline.   That'll be 10th, May 10th.  Everybody

18  good with May 10th for -- of course, Mr. Dondero is not here,

19  so we don't -- does anyone know why May 10th doesn't work?

20         MS. GEORGE:  May 10th works for UBS, Your Honor.

21         THE COURT:  Okay.  May 10th unless you all otherwise

22  agree.  If you all mutually agree to something different,

23  fine.  But if you can't, May 10th at 9:30 in the morning.  How

24  does that sound?

25      All right.  Well, --

1           MR. TAYLOR:  Your Honor, I --

2           THE COURT:  Uh-huh?

3           MR. TAYLOR:  Your Honor, I would note for you, I

4  believe that you have docket call on the injunction suit

5  against Highland Capital v. Dondero on May 10th.

6           THE COURT:  Okay.

7           MR. MORRIS:  That is true.

8           THE COURT:  Okay.  Just the trial docket call?

9           MR. MORRIS:  Correct.

10          THE COURT:  Okay.

11          MR. MORRIS:  I actually think the scheduling order

12  may say the week of, but I'm not certain, Your Honor.

13          MR. TAYLOR:  I don't know.  I'm just showing it on my

14  docket calendar as 1:30.

15          THE COURT:  Okay.

16          MR. TAYLOR:  I'm not --

17          MR. MORRIS:  It may --

18          THE COURT:  So that's probably the regular -- that

19  should be our regular trial docket call, which is just a time

20  where we all show up and say, are you all trial-ready?  Okay.

21  If so, we're going to set it, you know, the following week of

22  May 17th.  So it seems like you can do both, right?  You can

23  take a break from the deposition, if you're still going at

24  1:30, and dial into the WebEx and we'll see if you all are

25  going to be trial-ready.  Because it wouldn't be a trial.

1  It's just our trial docket call to hear if everyone is trial-

2  ready.  All right?  So, I think we can do that.

3         MS. GEORGE:  We will absolutely take a break, Your

4  Honor, if that's scheduled for that day.

5         THE COURT:  Okay.  All right.  Ms. George, can I

6  depend on you to upload forms of order that reflect the

7  Court's ruling?

8         MS. GEORGE:  Yes.  We'd be more than happy to.  Thank

9  you, Your Honor.

10        THE COURT:  All right.  Thank you.  We stand

11  adjourned.

12        THE CLERK:  All rise.

13     (Proceedings concluded at 2:39 p.m.)

14                          --oOo--

15

16

17

18

19                       CERTIFICATE

20     I certify that the foregoing is a correct transcript from
   the electronic sound recording of the proceedings in the
21  above-entitled matter.

22   **/s/ Kathy Rehling**                        **04/29/2021**

23  _____    _____

    Kathy Rehling, CETD-444                      Date
24  Certified Electronic Court Transcriber

25

42

INDEX

1

PROCEEDINGS                                                    3
2

WITNESSES
3

-none-
4

EXHIBITS
5

UBS Securities' Exhibits, Docket Entries 30 and 37  Received 6
6

James Dondero's Exhibits, Docket Entry 34          Received 6
7

RULINGS                                                       37
8

    Motion for Protective Order filed by James Dondero
9       (23)

10
    James Dondero's Motion to Modify Order Granting Leave
11      to File Under Seal (24)

12
    Plaintiffs' Motion for an Order Authorizing Alternative
13      Service of Subpoena (28)

14  END OF PROCEEDINGS                                        41

15  INDEX                                                     42

16

17

18

19

20

21

22

23

24

25