

**PRIVATE AND CONFIDENTIAL**

| | Your Ref | |
|---|---|---|
Latham & Watkins LLP
555 Eleventh Street, N.W.
Suite 1000
Washington, DC 20004-1304
United States of America

Attn: Jason R. Burt

Your Ref

Our Ref    SL/50001151/0001

Doc.        10963685.1

23 July 2021

**BY EMAIL**

Dear Sirs

**SENTINEL REINSURANCE, LTD ("SENTINEL")**

We refer to your letter dated 21 July 2021 in which you request a response by 23 July 2021.

You continue to make serious allegations against our client. Whilst we do not accept that Sentinel has knowingly participated in any fraudulent activity, the directors of Sentinel have every intention of cooperating fully with their legal obligations and to the extent they are legally compelled to do so.

The current directors of Sentinel have only recently been appointed. Their respective appointments became effective between 28 May 2021 and 30 June 2021. They are each professional directors who are each independent of all service providers and shareholders of Sentinel. None of the new directors have ever been in contact with Mr Ellington or Mr Dondero and the allegation that Sentinel is assisting these individuals in hiding assets is categorically denied. The directors are working hard to secure Sentinel's assets and assess the various allegations being made and will preserve the status quo until the necessary due diligence has been concluded.

To that end and as stated in our previous letter to you on 15 July 2021, we have been in the process of seeking US legal advice in order to be able to engage with you fully. Unfortunately, we have not been able to find appropriate representation until earlier today and as such, we will not be in a position to provide a fulsome response in this letter. Given we have indicated that we intend to engage with you constructively, we find your letters and the imposition of aggressive and arbitrary deadlines wholly unnecessary. The fact that the new directors of Sentinel are taking time to conduct due diligence and ensure they are properly advised should make your client feel confident that they are taking their fiduciary obligations seriously. We do not wish to litigate by correspondence and hope to be in a position to provide a full response to your previous letters by 28 July 2021.

BVI // Cayman // Guernsey // Jersey // London                    www.collascrill.com

Floor 2, Willow House, Cricket Square, PO Box 709, Grand Cayman, Cayman Islands, KY1-1107
T: +1 345 949 4544 F: + 1 345 949 8460 E: cayman@collascrill.com
A Cayman Partnership. A list of partners is available at the above address.



Yours faithfully

**COLLAS CRILL**

Direct Tel: +1 345 914 9605
Email: Stephen.leontsinis@collascrill.com

**FOLEY**

FOLEY & LARDNER LLP

ATTORNEYS AT LAW

90 PARK AVENUE
NEW YORK, NY 10016-1314
212-682-7474 TEL
212-687-2329 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
212-338-3496
kcatanese@foley.com EMAIL

August 18, 2021

**VIA EMAIL**

Jason R. Burt
Latham & Watkins LLP
555 Eleventh Street, N.W.
Suite 1000
Washington, D.C. 2004-1304
jason.burt@lw.com

Re:     *UBS Securities LLC and UBS AG London Branch v. Highland Capital Management et al.* (Index No. 650097/2009)

Dear Mr. Burt,

We write as a follow-up to your letter dated August 10, 2021 ("UBS Letter"). We have reviewed the cases cited in the UBS Letter and stand by our position that the Third Party Discovery Documents[1] (including an information subpoena, the "Subpoena") UBS attempted to serve on Sentinel, a *non-party* entity incorporated in the Cayman Islands, via service on its registered agent without consideration of the law in the Cayman Islands, are not enforceable outside of the United States. As previously indicated in the letter to you from Collas Crill on July 15, 2021 as a matter of Cayman Islands law, in order for service to be effective on Sentinel in the Cayman Islands, the Subpoena needs to be served via the proper channels and in accordance with the Hague Evidence Convention.

You continue to cite to CPLR 5224(a)(3) in support of the Subpoena; however, the manner of service of the Subpoena as proscribed by the CPLR is irrelevant as to whether New York judgment creditors have jurisdiction to enforce compliance with a subpoena seeking discovery and information from a foreign non-party. As New York Courts have held, with respect to enforcement of Article 52 discovery, "[s]o long as the Court has in personam jurisdiction over a defendant or judgment creditor[,] there is neither a statutory or a due process bar to the Service provided by 5524(a)(3) whether that service is in-state or out." *Estate of Robert Marceca*, 2006 N.Y. Misc. LEXIS 5240, *8, 236 N.Y.L.J. 69 (*citing Banco Do Estado De Sao Paulo S.A. v. Mendes Junior Int'l. Co.*, 1997 N.Y. Misc. LEXIS 786 (Sup. Ct. 1997)) (emphasis added).

Here, as you acknowledge in your letter, Sentinel is *not a party* to UBS's proceeding against the Highland entities (or any other proceeding), and is a foreign entity incorporated in the

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in my letter to you dated August 4, 2021.

BOSTON          JACKSONVILLE     MILWAUKEE     SAN DIEGO       TALLAHASSEE
BRUSSELS         LOS ANGELES      NEW YORK      SAN FRANCISCO   TAMPA
CHICAGO          MADISON          ORLANDO       SHANGHAI        TOKYO
DETROIT          MIAMI            SACRAMENTO    SILICON VALLEY  WASHINGTON, D.C.

4813-9708-4660.10



Cayman Islands. It does not have offices in New York, conduct business in New York, or hold property belonging to the Highland judgment debtors. The insured parties here are not U.S. entities and, therefore, the losses they suffered were also incurred outside of the U.S. Further, the information sought by the Subpoena is information originating in the Cayman Islands and disclosure of such information (once the Subpoena is properly served) will be governed by the laws of the Cayman Islands.

As such, the Subpoena propounded by UBS on Sentinel is not allowable, since Sentinel, a non-party entity incorporated in the Cayman Islands and a stranger to UBS' proceeding, is not subject to the New York Court's jurisdiction. *See Marceca*, 2006 N.Y. Misc. LEXIS 5240 at *11-12 (finding that since wife of a judgment debtor located outside of New York state "was not a party to the underlying proceeding, no jurisdiction having been obtained over her in that proceeding, and the principles of long-arm jurisdiction are inapplicable to disclosure under CPLR Article 52 … service of the restraining notice on Mrs. Kingsford outside the state were improper.") (*citing Siemens & Halske, Gmbh v. Gres* (37 A.D.2d 768 [*12] [1st Dept 1971]); *Israel Discount Bank Limited v. P.S. Products corp.* (65 Misc. 2d 1002 [Sup. Ct., NY County 1971])).

As stated in our previous letter, *Orlich* and its progeny apply, regardless of whether the discovery sought is through an information subpoena or otherwise, as the use of non-judicial taking of evidence in a foreign country is "an affront to their sovereignty" and "[s]uch an exercise would be particularly offensive where, as here, the entity being subjected to the court-ordered fact gathering *. . .is not even a party to the litigation. . .*" *Orlich v. Helm Bros., Inc.*, 160 A.D.2d 135, 143 (1st Dep't 1990) (emphasis added). *See also Matter of Estate of Agusta*, 171 A.D.2d 595, 596 (1st Dept. 1991) (reversing Surrogate's Court order that a non-party witness who was an Italian citizen living in Monaco appear in New York for a deposition, finding that the Hague Evidence Convention needed to be used, particularly when the discovery is sought from a non-party); *Ayyash v. Koleilat*, 38 Misc. 3d 916 (N. Y. Sup. 2012), aff'd 115 A.D. 3d 495 (1st Dep't, 2014) (holding that party seeking to enforce foreign judgment had to use Hague Evidence Convention to obtain bank account information from branches outside of New York, even though the banks had branches in New York); *Peters v. Peters*, 127 A.D.3d 656 (1st Dep't 2015) (Hague Evidence Convention was appropriate to obtain discovery from non-party UBS, particularly where disclosure could violate Swiss banking law); *Intercontinental Credit Corp., Div. of Pan Am. Trade Dev. Corp. v. Roth*, 154 Misc. 2d 639 (Sup. Ct. 1991) (Hague Evidence Convention procedure required after *Agusta* to obtain disclosure from Israeli bank as to accounts held outside of the United States, even if Israeli banking laws were not clearly implicated); *Bank of Tokyo-Mitsubishi, Ltd., New York Branch v. Kvaerner*, 175 Misc. 2d 408 (Sup. Ct. 1998) (discussing *Agusta* and *Roth*, and agreeing with the finding that the only method to compel a deposition of a foreign non-party is under the Hague Convention since the entity whose deposition was sought was not under the jurisdiction of the New York court. "The key to the holding in both of those cases is that the discovery was sought from a non-party, that was not affiliated in any legal sense with the parties before the court.").



The cases cited in the UBS Letter supporting the proposition that service on Sentinel was proper are inapposite (and manner of service is irrelevant). These cases primarily discuss (i) service of an information subpoena *on the judgment debtor itself* or other party to the proceeding, and not on a third-party stranger to the action, or (ii) service of process on a would-be party to an action. Further, in certain cases, the parties at issue had either consented to jurisdiction in New York, had branches or other operations in New York, or other basis for jurisdiction to compel enforcement of the subpoenas. *See, e.g., Aquavella v. Equivision, Inc.*, 181 Misc.2d 322 (Sup. Ct. 1999) (subpoena served on judgment debtor); *Ghostbed, Inc. v. Casper Sleep, Inc.* 315 F.R.D. 689 (S.D. Fla. 2016) (service of process); *Harbor Footwear Group v. ASA Trading*, 1 Misc.3d 911(A) (Sup. Ct. 2004) (subpoena served on judgment debtor where same had agreed to arbitration in New York); *International Soc. for Krishna Consciousness, Inc. v. Lee*, 105 F.R.D. 435 (S.D.N.Y. 1984) (subpoena served on defendant Lufthansa; while a foreign-based company, Lufthansa conducted business within the United States and was found to be amenable to the jurisdiction of American courts for discovery purposes); *Wilson v. Lufthansa German Airlines*, 108 A.D.2d 393 (App. Div. 1985) (same); *U.S. Corrugated, Inc. v. Scott*, 2015 WL 6829381 (Sup. Ct. 2015) (subpoena served on judgment debtor); *Mutual Benefits Offshore Fund v. Zeltser*, 140 A.D.3d 444 (App. Div. 2016) (service of process); *UMG Recordings, Inc. v. Kobler*, 2015 WL 4764207 (Sup. Ct. 2015) (service of process); *Banco Do Estado De Sao Paulo S.A. v. Mendes Junior Int'l. Co.*, 1997 N.Y. Misc. LEXIS 786 (Sup. Ct. 1997) (subpoena served on judgment debtor).

Notwithstanding the above, as discussed on last week's call, Sentinel and its independent directors are preparing a response to UBS as to whether it will produce certain documents on a rolling basis. UBS had requested such a response by today; however, we have not yet received the list of key documents which UBS is requesting be produced first. We await receipt of that list from you, and will consider it and respond appropriately to it, in due course. As you may be aware, the Cayman Islands is currently closed for business as Tropical Storm Grace moves through the region, with many businesses having lost power. We will advise when things are back online.

Sentinel does not waive and hereby reserves any and all of its objections to the Third Party Discovery Documents, as well as the jurisdiction of the New York Supreme Court over Sentinel for any purpose whatsoever. In addition, Sentinel has not conceded coverage and reserves all rights to deny coverage with respect to any insurance policies issued to the Highland entities.



We welcome the opportunity to discuss these matters with you further.

Very Truly Yours,

*/s/ Katherine R. Catanese*

Katherine R. Catanese

cc:     Stephen Leontsinis, Collas Crill
        Thomas Cahill, Duane Morrie

| | |
|---|---|
| **From:** | Catanese, Katie |
| **Sent:** | Friday, August 20, 2021 4:43 PM |
| **To:** | Jason.Burt@lw.com; Nann, Alissa M. |
| **Cc:** | Natascha.Steiner-Smith@collascrill.com; Stephen.Leontsinis@collascrill.com; TJCahill@duanemorris.com; Andrew.Clubok@lw.com; Sarah.Tomkowiak@lw.com; Sean.McMahon@lw.com; Danielle.McCall@lw.com; Shannon.McLaughlin@lw.com |
| **Subject:** | RE: Sentinel |

Jason,

We are currently reviewing 61,000 documents--the number of pages is much greater--and have an appropriate number of reviewers reviewing the documents in our possession. We believe it will take 6-8 weeks to review the entire subset. We do not consent to provide you these documents on a rolling basis, and we do not consent to prioritize the list of documents you tardily sent to us yesterday. We will review the entire subset of documents and produce to Beecher the documents they are legally obligated to produce only after we have fully reviewed them.

The tenor of your email is threatening and unnecessarily hostile. As was indicated to you on our call last week, it is directly contrary to your statements that you want to work cooperatively and is offensive. As we have reiterated on numerous occasions, this is not an issue of whether to cooperate with UBS or side with Sentinel's owners.  The independent directors have duties to Sentinel and must ensure that their legal fiduciary obligations to Sentinel are met. Requiring Sentinel to turn over documents to UBS on a rolling basis is not an efficient use of Sentinel's limited time or resources.  Although we still maintain that there is a consensual resolution that can be reached here, Sentinel's directors are unwilling to compromise their fiduciary duties to appease your hostility and unrealistic timeline, especially given the severe deficiencies in service and the lack of jurisdiction the New York Supreme Court has over Sentinel, as further described in our last letter. The 6-8 weeks it will take for Sentinel to complete its review of documents will in no way prejudice your client.

Sentinel does not waive and hereby reserves any and all of its objections to the subpoenas that were improperly served on Sentinel, as well as the jurisdiction of the New York Supreme Court over Sentinel for any purpose whatsoever.  In addition, Sentinel has not conceded coverage and reserves all rights to deny coverage with respect to any insurance policies issued to the Highland entities.

Please govern yourselves accordingly.
Katie


Katherine R. Catanese
Foley & Lardner, LLP
90 Park Avenue
New York, NY 10016
O: 212-338-3496
C: 517-449-7587

---

**From:** Jason.Burt@lw.com <Jason.Burt@lw.com>
**Sent:** Thursday, August 19, 2021 4:13 PM
**To:** Catanese, Katie <KCatanese@foley.com>; Nann, Alissa M. <ANann@foley.com>
**Cc:** Natascha.Steiner-Smith@collascrill.com; Stephen.Leontsinis@collascrill.com; TJCahill@duanemorris.com; Andrew.Clubok@lw.com; Sarah.Tomkowiak@lw.com; Sean.McMahon@lw.com; Danielle.McCall@lw.com;

Shannon.McLaughlin@lw.com
**Subject:** RE: Sentinel

**\*\* EXTERNAL EMAIL MESSAGE \*\***

Katie,

Thank you for your note.  As I made clear in my email yesterday, if we do not hear from Sentinel by tomorrow with a final answer on whether they will be producing documents on a rolling basis, we will unfortunately be forced to seek court intervention. The list we provided is purely a courtesy to help facilitate the first rolling document production; it has nothing to do with the question whether Sentinel will cooperate with the UBS.  The directors have had months to make that decision, and we can delay no longer.  If they agree to cooperate, we will of course work in good faith on a reasonable schedule of rolling production, starting with the categories of documents identified below.  Further, your promise last Thursday to provide us at a bare minimum the volume and number of documents for review was in no way dependent on our provision the list below.  We are disappointed that your letter yesterday did not include even this basic promised information.  We sincerely hope that the answer tomorrow is that Sentinel will work with us in good faith, but we are prepared to move forward immediately if it is otherwise.

Best,
Jason

---

**From:** Catanese, Katie <KCatanese@foley.com>
**Sent:** Thursday, August 19, 2021 9:21 AM
**To:** Burt, Jason (DC) <Jason.Burt@lw.com>; Nann, Alissa M. <ANann@foley.com>
**Cc:** Natascha.Steiner-Smith@collascrill.com; Stephen.Leontsinis@collascrill.com; TJCahill@duanemorris.com; Clubok, Andrew (DC) <Andrew.Clubok@lw.com>; Tomkowiak, Sarah (DC) <Sarah.Tomkowiak@lw.com>; McMahon, Sean (NY) <Sean.McMahon@lw.com>; McCall, Danielle (DC) <Danielle.McCall@lw.com>; McLaughlin, Shannon (NY) <Shannon.McLaughlin@lw.com>
**Subject:** RE: Sentinel

Jason,

Thank you for this list. As I am sure you can understand, we need this list to consider the information you seek regarding the number of reviewers, amount of time for production, etc., and we were hoping to have this list last week after our call. As we clearly indicated on the call, upon receiving the list, we would assess the additional information you are seeking. At this point, the public reports indicate that the majority of Grand Cayman is without power or internet, and most businesses closed around 2pm on Tuesday to prepare for Tropical Storm Grace, which likely impacted the document review process. As soon as I am able to make contact with Cayman counsel and the independent directors regarding the below, we will be in touch.

Katie

Katherine R. Catanese
Foley & Lardner, LLP
90 Park Avenue
New York, NY 10016
O: 212-338-3496
C: 517-449-7587

---

**From:** Jason.Burt@lw.com <Jason.Burt@lw.com>
**Sent:** Wednesday, August 18, 2021 5:15 PM
**To:** Nann, Alissa M. <ANann@foley.com>
**Cc:** Catanese, Katie <KCatanese@foley.com>; Natascha.Steiner-Smith@collascrill.com;

Stephen.Leontsinis@collascrill.com; TJCahill@duanemorris.com; Andrew.Clubok@lw.com; Sarah.Tomkowiak@lw.com; Sean.McMahon@lw.com; Danielle.McCall@lw.com; Shannon.McLaughlin@lw.com

**Subject:** RE: Sentinel

**\*\* EXTERNAL EMAIL MESSAGE \*\***

Counsel:

We have received your letter of August 18, which does not address the central points the parties agreed to last Thursday.  During that call, you specifically agreed to tell us no later than **today, August 18**, (1) the size and scope of review of documents Beecher has made available for Sentinel to review, and (2) whether Sentinel would cooperate with UBS in responding to the information subpoena by providing documents on a rolling basis or whether the parties are at an impasse.  While we provide below the list of documents/categories of documents that should come first in a rolling production, UBS's provision of this list was never a condition of Sentinel providing answers to items (1) and (2) above.  The decision whether Sentinel will cooperate has nothing to do with what documents UBS would like it to focus on first in a rolling production.  Further, while we appreciate that "many businesses" have lost power in the Cayman Islands, you do not tell us whether this has specifically affected the directors or their ability to provide a response to items (1) and (2) today.  We can thus only interpret your letter as further equivocation and refusal to cooperate.

Nonetheless, in a final showing of a good-faith effort to avoid needless litigation and in light of the tropical storm, we will allow the directors until this **Friday, August 20** to provide definitive answers to items (1) and (2) above.  UBS will interpret any further equivocation or failure to provide definitive answers to items (1) and (2) as a refusal to cooperate and will proceed accordingly.  The Sentinel directors have had time enough to decide whether to cooperate with UBS or side with Sentinel's owners in opposing UBS's efforts to obtain the lawful judgment owed it.

Best,
Jason

- Actuary engagement letters and reports (Jason Stubbs was an actuary involved, but there could be others)
- Audit engagement letters and reports
- Communications regarding Endorsements Nos. 1 and 2 to the Insurance Policy
- Reports, memos, or other valuations of the assets transferred from the judgment debtors and related entities in 2017 to satisfy the premium – at the time of transfer and subsequently
- The location and identity of the accounts that received or held the assets transferred by the judgment debtors and related entities in 2017 to satisfy the premium (both at the time the assets were received and any accounts to which these assets have subsequently been moved)
- Documents related to 2019 transfer of assets to Sebastian Clarke, including information about the bank accounts used to facilitate the transfer
- Emails to/from/cc/bcc Dondero and/or Ellington
- Minutes of board meetings starting April 2017
- Board resolutions (all board resolutions are sought, but focus is on those to the Insurance Policy, actuary reports, premium payment, and endorsements)
- Meetings with CIMA regarding the ATE policy
- Communications regarding "worthless" assets being taken off Sentinel's books / impacting Sentinel's audit outcomes, especially to/from CIMA

Please note that this is not an exhaustive list, and UBS reserves the right to supplement it and follow up on any items included in the list

**From:** Nann, Alissa M. <ANann@foley.com>
**Sent:** Wednesday, August 18, 2021 4:04 PM