**LATHAM & WATKINS LLP**
Andrew Clubok (*pro hac vice*)
Sarah Tomkowiak (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200

Jeffrey E. Bjork (*pro hac vice*)
Kimberly A. Posin (*pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234

Kathryn George (*pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700

*Counsel for UBS Securities LLC and UBS AG London Branch*

**BUTLER SNOW LLP**
Martin Sosland (TX Bar No. 18855645)
Candice Carson (TX Bar No. 24074006)
2911 Turtle Creek Blvd., Suite 1400
Dallas, TX 75219
Telephone: (469) 680-5502

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| *In re*<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[1]<br><br>Debtor. | § § § § § § § § Chapter 11<br><br>Case No. 19-34054-sgj11 |
| UBS SECURITIES LLC and UBS AG LONDON BRANCH,<br><br>Plaintiffs,<br><br>v.<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Defendant. | § § § § § § § § § § § § § Adversary Proceeding<br><br>No. 21-03020 |

## UBS'S OPPOSITION TO FOREIGN NON-PARTY
## SENTINEL REINSURANCE, LTD.'S MOTION FOR PROTECTIVE ORDER

---

[1] The last four digits of the Debtor's taxpayer identification number are 6725. The Debtor's headquarters and service address is 300 Crescent Court, Suite 700, Dallas, TX 75201.

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................................1

FACTUAL BACKGROUND ..........................................................................................................2

LEGAL STANDARD .....................................................................................................................4

ARGUMENT ...................................................................................................................................5

I. The Court Should Strike The Motion Because It Is Procedurally Improper And Sentinel Lacks Standing To Challenge UBS's Subpoena To Beecher .............................5

II. The Motion Should Be Denied On The Merits Because Sentinel Has Not Met Its Burden To Warrant A Protective Order ...........................................................................9

    A. Sentinel Has Offered No Evidence To Prove That It Would Be Prejudiced Absent The Relief It Seeks In The Protective Order .................................9

    B. Sentinel's Arguments Regarding Privileged And Confidential Documents Are Without Merit ....................................................................................10

III. UBS Would Be Prejudiced By The Relief Sentinel Seeks ...............................................13

CONCLUSION ..............................................................................................................................14

UBS Securities LLC and UBS AG London Branch (together, "UBS"), plaintiffs in the above-captioned adversary proceeding and creditors in the above-captioned chapter 11 case, by and through their undersigned counsel, respectfully submit this opposition to the motion for a protective order [Adv. Dkt. No. 106] (the "Motion") by non-party Sentinel Reinsurance, Ltd. ("Sentinel"), which seeks to stay compliance with a *Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding* served on Beecher Carlson Insurance Services LLC ("Beecher").

## INTRODUCTION

1. Sentinel—indirectly owned and controlled by James Dondero and Scott Ellington—seeks to prevent UBS from obtaining documents lawfully subpoenaed from and in the possession of Beecher, Sentinel's insurance manager, by claiming that Sentinel has the unilateral right to determine what documents in Beecher's possession UBS is "legally entitled" to obtain. *See* Mot. ¶¶ 3, 20-22, 35.  The asserted basis for this argument is that the documents in Beecher's possession might contain what Sentinel deems to be confidential business information, which Sentinel argues is not discoverable.  *See, e.g.*, *id.* ¶ 12 (asserting that a protective order is necessary because Beecher might "possess[] certain confidential documents and information regarding Sentinel's business operations"); *id.* ¶ 26 ("The Subpoena seeks documents which, under the Confidentiality Provision in the Management Agreement, are Sentinel's confidential business information and protected from disclosure by Beecher.").  Notably, however, Beecher has already agreed to produce the subpoenaed documents and does not join in Sentinel's Motion.

2. Sentinel's Motion is the latest in the long line of attempts to avoid producing documents that will shed light on hundreds of millions of dollars of assets (the "Transferred Assets") fraudulently transferred away from funds currently or previously controlled, owned, and/or managed by the Debtor (the "Fraudulent Transfers").  But Sentinel's position here is worse

1

than the meritless positions other parties have taken before this Court to avoid similar discovery in that (1) Sentinel, a non-party, seeks to prevent—without moving to intervene—*another non-party* from producing documents in *that party's* possession, (2) Sentinel claims the unilateral right to dictate to that third party what it may and may not produce under the subpoena, and (3) Sentinel argues that UBS is not "legally entitled to obtain" "Confidential Information" as defined under the Management and Administrative Services Agreement between Sentinel and Beecher as Sentinel's claims administrator ("Management Agreement"), notwithstanding that such "Confidential Information" is defined in the Management Agreement only to include business information, *not* privileged information, and there is already an existing protective order in this proceeding to protect such information once disclosed (which counsel for Sentinel was fully aware existed before filing the Motion).[1]  It speaks volumes that Beecher, the subpoenaed party, plainly views this supposed "Confidential Information" as discoverable, and stands ready to produce the documents.

3.    Because the Motion is procedurally improper, Sentinel lacks standing to bring this Motion, and the Motion is legally frivolous, the Court should deny the Motion and award UBS its costs and fees for being forced to respond.

## FACTUAL BACKGROUND

4.    On June 29, 2021, UBS served a subpoena for the production of documents on Beecher, with a return date of July 29, 2021.  Decl. of Sarah Tomkowiak ("Tomkowiak Decl."),

---

[1] Although the Motion includes references to the documents in Beecher's possession potentially containing "privileged" Sentinel information, that was never an objection Sentinel's counsel raised during the numerous meet-and-confer discussions or email and letter exchanges. The asserted basis of Sentinel's objection to Beecher's production was always that the Management Agreement between Sentinel and Beecher provided that the documents in Beecher's possession could contain "Confidential Information." "Confidential Information" is a defined term in the Management Agreement that does not include privileged material of Sentinel. *See* Mot. ¶ 15 (quoting the confidentiality provision of the Management Agreement in full); Decl. of Sarah Tomkowiak ("Tomkowiak Decl."), Ex. 1.

Ex. 2.  As Sentinel admits, Beecher is Sentinel's insurance manager and possesses "documents and information regarding Sentinel's business operations."  Mot. ¶ 12.  On June 30, 2021, Brown & Brown, Inc. ("B&B")—Beecher's parent company—acknowledged receipt of the subpoena and requested 45 days (until August 13, 2021) to respond.  Tomkowiak Decl., Ex. 3.

5.  Then, two weeks later and *after* Sentinel had received its own subpoena, B&B sent a letter on July 13 stating that it was now "objecting to the documents requested in th[e] subpoena" and that it has "a contract which makes the documents in [its] possession for this matter confidential."  Tomkowiak Decl., Ex. 4.[2]  This communication began over a month of meet-and-confer discussions, letters, and emails among counsel for UBS, Beecher, and Sentinel, in which Sentinel's counsel ultimately took the position that Sentinel could control Beecher's production and would not allow any purported confidential business information to be produced under the subpoena.  Tomkowiak Decl., Ex. 5.  While these conferences were ongoing, Beecher collected all responsive documents and, for reasons unknown, made them available in early August for Sentinel to review.  Tomkowiak Decl., Ex. 6 at 2.  After these documents were made available to Sentinel, Sentinel's counsel made clear on a meet-and-confer call with counsel for UBS on August 12 that its strategy would be to file a motion for protective order because it would take the Court "months" to resolve the motion—which would provide Sentinel the delay it sought (regardless whether the motion was granted) to review all the Beecher documents and remove anything Sentinel unilaterally deemed "confidential."

6.  Following this call, and once Sentinel's position on dictating Beecher's production became clear, Beecher replaced its counsel on August 20.  Tomkowiak Decl., Ex. 7.  Beecher's

---

[2] Sentinel has never produced the actual Management Agreement to UBS for review and did not attach it as an exhibit to the Motion.

new counsel quickly changed course and informed UBS that unless Sentinel moved to obtain a protective order prohibiting disclosure consistent with the Management Agreement, Beecher would not only respond to the subpoena, but would *not* take instruction from Sentinel on which documents to produce and would begin a rolling production of responsive documents no later than September 3.  Tomkowiak Decl., Ex. 8.  After Sentinel filed the Motion on September 2, Beecher's new counsel confirmed that if the Motion is denied, it will immediately begin a rolling production of documents as earlier discussed with UBS.  Tomkowiak Decl., Ex. 1.

7. On August 31, two days before filing the Motion, Sentinel's counsel asked whether UBS would "concur[]" in the Motion.  Tomkowiak Decl., Ex. 9.  Counsel for UBS responded that UBS needed to know the basis of the proposed motion and then explicitly informed Sentinel's counsel that there was an existing protective order in the bankruptcy proceeding that has been applied to the adversary proceeding and would protect the confidentiality of whatever documents are produced.  *Id.*  A copy of this protective order was attached to the email.  *Id.*  Sentinel's counsel responded "that the protective order in place" did not "cover[] what we are seeking in our motion for protective order" and confirmed that Sentinel was seeking an order to allow it to "review the 61,000 documents rather than requiring Beecher to produce these documents beginning tomorrow on a rolling basis."  Tomkowiak Decl., Ex. 10.

## LEGAL STANDARD

8. Under Federal Rules of Civil Procedure 26 and 45,[3] the movant seeking a protective order "has the burden of proof."  *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004) (Rule 45); *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (per curiam) (Rule 26).

---

[3] Federal Rules of Bankruptcy Procedure 7026 and 9016 apply Federal Rules of Civil Procedure 26 and 45, respectively.

To meet this burden, the movant must show "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981) (citation omitted); *see also Terra*, 134 F.3d at 306 (movant may not rely on "stereotyped and conclusory statements" (citation omitted)). This requires that the motion be supported by "affidavits or other evidence that might provide support for [the movant's] assertion." *Terra*, 134 F.3d at 306-07; *see also, e.g.*, *Monitronics Int'l, Inc. v. Skyline Sec. Mgmt., Inc.*, No. 16-cv-2716, 2017 WL 7520612, at *3 (N.D. Tex. Oct. 30, 2017) (movant "should support its request for a protective order with affidavits or other evidence that might provide support for its position"); *Ford Motor Co. v. Versata Software, Inc.*, 316 F. Supp. 3d 925, 933 (N.D. Tex. 2017) (movant must "submit[] affidavits or offer[] evidence"). Only after the movant satisfies this heavy burden, the party seeking discovery must show "that the requested materials are relevant and necessary," after which the court balances the need for the evidence against the potential harm that could result from disclosure. *Monitronics*, 2017 WL 7520612, at *3-4.

## ARGUMENT

**I. THE COURT SHOULD STRIKE THE MOTION BECAUSE IT IS PROCEDURALLY IMPROPER AND SENTINEL LACKS STANDING TO CHALLENGE UBS'S SUBPOENA TO BEECHER**

9. The Court should strike the Motion for at least two independent reasons: (1) it is procedurally improper under Rule 26(c)(1), and (2) Sentinel has no standing to challenge the subpoena served on Beecher under Rule 45(d)(3). Because these are the two procedural rules Sentinel relies on in bringing the Motion, these defects are fatal. *See* Mot. ¶¶ 25, 29.

10. *First*, the Motion is procedurally defective under Federal Rule of Civil Procedure 26(c). The plain terms of Rule 26(c)(1) make clear that only "[*a*] ***party or any person from whom***

*discovery is sought*" may seek a protective order.[4] Here, Sentinel is neither—it is not a party, and the entity from whom discovery is sought is *Beecher*. Thus, the only procedural way for Sentinel to move for a protective order under Rule 26(c) in this case would be for Sentinel first to move to intervene under Rule 24, which it has not done.[5] *See, e.g.*, *In re Beef Indus. Antitrust Litig.*, 589 F.2d 786, 789 (5th Cir. 1979) (requiring "that a formal motion for intervention should have been filed pursuant to Rule 24(c)" before a non-party may file any motion in a case); *Estate of Baker ex rel. Baker v. Castro*, No. H-15-3495, 2020 WL 2235179, at *2 (S.D. Tex. May 7, 2020) (citing *In re Beef Industries*, 589 F.2d at 787, 789, in holding that "'[t]he procedurally correct course' for a nonparty to seek a modification of a standing protective order in an action is to obtain the status of intervenor through Rule 24"); *SEC v. Dowdell*, 144 F. App'x 716, 723 (10th Cir. 2005) ("[B]ecause Nelson has not been subpoenaed, is not a party to the underlying action, and has not moved to intervene, he lacks standing to move for a protective order under the clear language of Rule 26(c)."). The Court accordingly should strike the Motion to the extent that it relies on Rule 26(c). *See also In re Autohop Litig.*, No. 12-cv-4155, 2014 WL 3887734, at *1 (S.D.N.Y. Aug. 5, 2014) (denying request of a non-subpoenaed party to prevent the disclosure of what it deemed its "highly confidential" information called for under a subpoena to another party).

---

[4] All emphasis added and all alterations and omissions in original unless otherwise noted.

[5] Sentinel deliberately has chosen not to move to intervene because it seeks to maintain the position that it is *outside* the jurisdiction of any U.S. court and thereby can avoid liability in U.S. courts for the Fraudulent Transfers. *See* Mot. ¶ 5 n.1 (arguing that "the filing of this motion by Sentinel shall be construed and intended to be only a special appearance filed out of compulsion to keep its proprietary, privileged, and confidential information protected"). There is no provision at law, and Sentinel cites none, that would allow Sentinel to seek a protective order without intervening and while making only an undefined "special appearance." But because moving to intervene would subject Sentinel to the Court's jurisdiction, *see Team Worldwide Corp. v. Wal-Mart Stores, Inc.*, 287 F. Supp. 3d 651, 659 (E.D. Tex. 2018), Sentinel seeks to obtain the relief it wants without intervening. The Court should not countenance this type of gamesmanship.

6

11.     *Second*, Sentinel's Motion is similarly defective under Rule 45(d)(3) because Sentinel has failed to establish that it has standing to challenge the Beecher subpoena. Because it is neither a party to this action nor a subpoenaed party, and has not moved to intervene to obtain a protective order, the only standing hook Sentinel could have to bring the Motion is Rule 45(d), which allows a non-party to challenge a subpoena only if the non-party has a "personal right or privilege with respect to the materials subpoenaed." *Brown v. Braddick*, 595 F.2d 961, 967 (5th Cir. 1979). But courts, including the Supreme Court, have long held that standing has to be established *with evidence*. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (party with the burden of proof must establish its standing "with the manner and degree of evidence required at the successive stages of the litigation"). Here, Sentinel has failed to offer any evidence establishing that it has standing to challenge UBS's subpoena to Beecher.

12.     Sentinel asserts that it has standing because the subpoena allegedly seeks documents that are "Sentinel's confidential business information" or might be privileged. Mot. ¶ 26. But Sentinel "did not support its motion for protective order with any affidavits or other evidence that might provide support for this simple assertion." *Terra*, 134 F.3d at 306. Nor does Sentinel offer any explanation, let alone evidence or law, for why "confidential business information" may be withheld from discovery simply on a movant's own say-so and where there is a protective order in place to protect confidential materials from disclosure outside the case. *See* Protective Order at 2-3, [Bankr. Dkt. No. 382] (providing for protection of disclosed confidential information). Ultimately, Sentinel has provided nothing to establish an interest in preventing the disclosure of its confidential information beyond its counsel's baseless assertions that Sentinel's confidential business information is not discoverable. This is both legally wrong and not actual evidence. Nor does Sentinel provide any actual evidence, such as a sworn affidavit, that the

Beecher documents might contain Sentinel's privileged material. *See Terra*, 134 F.3d at 306; *see also, e.g.*, *Performance Pulsation Control, Inc. v. Sigma Drilling Techs., LLC*, No. 17-cv-450, 2018 WL 5636160, at *3 (E.D. Tex. Oct. 30, 2018) (movants "provide[d] no evidence that the subpoenaed materials are actually confidential" and thus "fail[ed] to meet their burden"); *Areizaga v. ADW Corp.*, 314 F.R.D. 428, 439 (N.D. Tex. 2016) ("[A] one-sentence restatement of the allegation that a discovery response would violate work-product protection or attorney-client privilege is not adequate.").

13.     Further, Sentinel does not have standing under either rule to assert that production of documents would impose an undue burden *on Beecher*. Sentinel argues that "[r]equiring Beecher to respond" to the subpoena would "impose[] an undue burden on Beecher," Mot. ¶ 29—but Sentinel does not get to raise that argument on Beecher's behalf. *See, e.g.*, *Swire v. Kempf*, No. 18-cv-1003, 2020 WL 2326198, at *3 n.2 (W.D. Tex. May 11, 2020) ("[A] party may not challenge a subpoena made to a third party on the grounds that the information sought is not relevant or imposes an undue burden." (citation omitted)); *Schmidt v. McKee*, No. 10-cv-20, 2012 WL 13137023, at *3 (S.D. Tex. Feb. 21, 2012) (same); *see also* 8A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2035, Westlaw (3d ed., database updated Apr. 2021) ("A party may not ask for an order to protect the rights of another party or a witness if that party or witness does not claim protection for himself[.]"). Beecher has not claimed that production would impose an undue burden, and in fact stands ready to produce documents in response to the subpoena. *See* Tomkowiak Decl., Ex. 8.

14.     For any or all of these reasons, the Court should strike the Motion.

## II. THE MOTION SHOULD BE DENIED ON THE MERITS BECAUSE SENTINEL HAS NOT MET ITS BURDEN TO WARRANT A PROTECTIVE ORDER

15. Even if the Motion were procedurally proper and Sentinel had standing to challenge the subpoena, the Court should deny the Motion because Sentinel has offered no facts or law to justify its demand to halt Beecher's production so that Sentinel can unilaterally review the documents, determine what constitutes "confidential business information" and then prevent Beecher from producing this information. Nor can Sentinel justify its position that it is entitled to withhold from production any document it alone deems to contain "confidential business information." The Court should see this Motion for what it is—a self-serving attempt by the very actor that facilitated the massive (ongoing) fraud to prevent the disclosure of any document that it deems "confidential." Nothing in the law supports such a request, which cuts against the purpose of Rule 26(b)(1)'s liberal discovery standards and would serve only to facilitate the concealment of evidence of the ongoing fraud. *See Herbert v. Lando*, 441 U.S. 153, 177 (1979) ("[D]iscovery rules are to be accorded a broad and liberal treatment to effect [sic] their purpose of adequately informing the litigants in civil trials.").

### A. Sentinel Has Offered No Evidence To Prove That It Would Be Prejudiced Absent The Relief It Seeks In The Protective Order

16. Sentinel fails to carry its burden of proof to justify a protective order that would allow it unilaterally to deem what documents Beecher may produce. The law requires that Sentinel support its Motion with "affidavits or other evidence," which in this case requires Sentinel to show with evidence *why* a protective order should be entered to allow Sentinel to review the documents in Beecher's possession, determine what constitutes "confidential business information," and then prevent disclosure of that information (despite the existence of a protective order that protects disclosed confidential information). *See, e.g.*, *Wiwa*, 392 F.3d at 818; *Terra*, 134 F.3d at 306. Sentinel has not (and cannot) adduce such evidence. Instead, it argues that "Beecher has not

9

confirmed to Sentinel that it will refrain from producing confidential or privileged information," Mot. ¶ 19, and offers as "evidence" the subpoena, a letter by B&B's counsel, and correspondence between UBS's counsel and Sentinel's counsel, [Adv. Dkt. Nos. 106-2-106-4]. None of this demonstrates that Sentinel is entitled to review Beecher's documents to prevent the disclosure of "confidential business information" or that Beecher holds Sentinel's privileged documents. Indeed, Sentinel fails to provide actual evidence that it will suffer *any* prejudice if Beecher complies with the subpoena. *See* Mot. ¶¶ 31, 34. The Motion thus fails and should be denied on these grounds alone. *See, e.g.*, *Terra*, 134 F.3d at 305; *see also McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (district court properly denied motion for protective order where movant offered "merely conclusory" objections (citation omitted)).

**B.    Sentinel's Arguments Regarding Privileged And Confidential Documents Are Without Merit**

17.    The Motion would still fail even if Sentinel had produced evidence that the documents in Beecher's possession contain confidential or privileged material because Sentinel's arguments are legally baseless.

18.    *First*, regarding confidential material, Sentinel claims that it is entitled to determine what documents in Beecher's possession contain Sentinel's confidential business information and then *prevent the disclosure* of these documents. Indeed, Sentinel could not have been clearer in the Motion that it believes UBS is not "legally entitled" to obtain Sentinel's confidential business information and thus Sentinel should be allowed to withhold these documents from Beecher's production. *See* Mot. ¶¶ 1, 3-4, 12, 16, 19-23, 26-27, 30, 35. And the only basis Sentinel offers to support this position is a supposed Management Agreement between Beecher and Sentinel, which it did not provide to UBS or the Court. *See id.* ¶ 15.

10

19. The law, however, does not permit private parties to enter agreements to prevent the disclosure of otherwise discoverable information. *See, e.g.*, *Allergan, Inc. v. Teva Pharms. USA, Inc.*, No. 2:15-cv-1455-WCB, 2017 WL 132265, at *3 (E.D. Tex. Jan. 12, 2017) (granting motion to compel and holding that "no . . . confidentiality agreement can bind a court and bar the court from ordering production of [the requested material]" because, "[o]therwise, parties could, by agreement, effectively create new privileges against discovery orders"); *Shell Offshore, Inc. v. Eni Petroleum US LLC*, No. 16-cv-15537, 2017 WL 4226153, at *3 (E.D. La. Sept. 22, 2017) (holding that "[n]either Shell's confidentiality agreement with other parties . . . nor its own internal policy are determinative of the sealing issue" and citing cases for the proposition that private agreements do not affect discovery standards); *Brown & Williamson Tobacco Corp. v. FTC*, 710, F.2d 1165, 1180 (6th Cir. 1983) ("The confidentiality agreement between the parties does not bind the court in any way."). Because Sentinel's Motion is premised precisely on the argument that its private agreement with Beecher permits it to withhold discoverable information, it fails. Sentinel notably does not argue that the documents are irrelevant to "any party's claim or defense" or not "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). It simply wants to withhold any document it deems to be confidential as supposedly defined in the Management Agreement and thereby place itself above the rules of discovery. There is no rule or case that allows Sentinel to do this.[6]

---

[6] Sentinel asserts that "the [c]ourt in *Bounds v. Capital Area Family Violence Intervention Center, Inc.*, 314 F.R.D. 214 (M.D. La 2016)," approved a "similar process" as the unilateral review process that Sentinel requests here. Mot. ¶ 30. That is wrong. In *Bounds*, the court approved of a process the parties *had already agreed to* which would limit the material produced under a vastly overbroad subpoena that sought material "beyond the scope of discovery." 314 F.R.D. at 219-20. *Bounds* did not hold that a party can unilaterally withhold discoverable material because it deems the material "confidential" under a private agreement.

20. If that were not enough, Sentinel also fails to explain why the existing protective order in this case is insufficient to protect its confidential information. *See, e.g.*, *Monitronics*, 2017 WL 7520612, at *4 (denying motion for protective order where movants "present[ed] no evidence" to support their assertions and "fail[ed] to explain why the protective order that govern[ed] th[e] case would not ensure confidentiality"); *Orchestrate HR, Inc. v. Trombetta*, No. 13-cv-2110, 2014 WL 772859, at *5 (N.D. Tex. Feb. 27, 2014) (requiring production of asserted confidential materials because "the Protective Order expressly covers documents designated as confidential by third parties from whom the parties to this lawsuit request documents"). Indeed, Sentinel does not move to modify the protective order in any way to provide heightened or different protections; it simply argues that it is entitled to a separate protective order that would forbid UBS from obtaining what Sentinel unilaterally decrees to be confidential business information. The Court ultimately has nothing before it to support a finding that the existing protective order is in any way deficient to protect Sentinel's confidential information.

21. *Second*, regarding the claim that the protective order is necessary to protect privileged material, Sentinel has provided no explanation why Beecher's possession of allegedly privileged material would not destroy any claim of privilege that Sentinel may have. To the contrary, it is black-letter law that the disclosure of privileged material to a third party waives any privilege contained in that material. *See, e.g.*, *Nguyen v. Excel Corp.*, 197 F.3d 200, 207 (5th Cir. 1999) (party "waived the attorney-client privilege by selectively disclosing confidential communications" to third party). Furthermore, Sentinel's own assertions demonstrate that Beecher is not part of any privileged relationship since Sentinel is concerned that Beecher does not have

"the requisite knowledge to be able to make these determinations on Sentinel's behalf." Mot. ¶ 19. Sentinel's claim of privilege cannot support its asserted need for any protective order.[7]

### III. UBS WOULD BE PREJUDICED BY THE RELIEF SENTINEL SEEKS

22. Finally, Sentinel's assertion that "[t]he short delay in UBS obtaining the documents" from Beecher "will not substantially prejudice" UBS, Mot. ¶ 33, likewise fails. UBS has been seeking these highly relevant documents for over three months to support its anticipated motion for a permanent injunction. Indeed, the prejudice of further delay is clear given that Sentinel's proposed deadline of November 1, 2021 is weeks *after* the dispositive motion deadline and scheduled trial on the permanent injunction.[8] But more fundamentally, it has already been four years since the Debtor's former employees orchestrated the Fraudulent Transfers *to Sentinel*. Indeed, on information and belief, Sentinel may have already moved a number of the Transferred Assets to other entities. "[F]urther delay creates the risk of prejudice to [UBS] in the form of lost evidence, fading memories, and potentially dissipating assets to pay [that] judgment." *Worldcom Techs., Inc. v. Intelnet Int'l, Inc.*, No. 00-cv-2284, 2002 WL 1971256, at *6 (E.D. Pa. Aug. 22, 2002). It is imperative that UBS discover the full extent of the fraudulent activity so that the Court is able to craft appropriate permanent injunctive relief.

23. Sentinel's supposed burden, on the other hand, is unsupported and of its own making. As explained above, Sentinel has not supported its asserted claim of privilege over the documents sought, and any claim that confidential documents should not be produced is without

---

[7] Even if the privilege were not waived (and Sentinel had presented evidence that the Beecher documents contain Sentinel's privileged material), the relief Sentinel seeks goes far beyond merely protecting such privileged materials from disclosure. Sentinel wants to review every document to preclude the disclosure of privileged *and confidential* material.

[8] Due to these and other delays in obtaining discovery, UBS will likely seek an extension of the remaining deadlines in the adversary proceeding, including the week of trial.

merit. *See supra* ¶¶ 17-21. Further, Sentinel's "new directors" have been aware of the Subpoena since July 2021, so Sentinel's complaint of an "extremely expedited timeline given the volume of production in question," Mot. ¶¶ 2, 31, is not credible.

## CONCLUSION

24. For the reasons set forth above, the Court should either strike the Motion as procedurally improper and because Sentinel lacks standing, or, if it considers the merits, should deny the Motion as legally baseless. Either way, Sentinel fails to show that it is entitled to the relief it seeks and has failed to set forth any law or evidence that would justify the relief sought or show that the Motion is not frivolous. UBS therefore respectfully requests that the Court award UBS's fees and costs incurred in responding to this baseless Motion and award any other relief that is just and equitable. *See* 11 U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [Title 11]"); *In re Dernick*, No. 18-32417, 2019 WL 5078632, at *6 (Bankr. S.D. Tex. Sept. 10, 2019) (awarding fees in connection with motion for protective order).

Dated: September 10, 2021

Respectfully submitted,

/s/ *Sarah Tomkowiak*

**LATHAM & WATKINS LLP**
Andrew Clubok (*pro hac vice*)
Sarah Tomkowiak (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200
Email: andrew.clubok@lw.com
sarah.tomkowiak@lw.com

Jeffrey E. Bjork (*pro hac vice*)
Kimberly A. Posin (*pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071

Telephone: (213) 485-1234
Email:    jeff.bjork@lw.com
            kim.posin@lw.com

Kathryn George (*pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Email:    kathryn.george@lw.com

**BUTLER SNOW LLP**
Martin Sosland (TX Bar No. 18855645)
Candice Carson (TX Bar No. 24074006)
2911 Turtle Creek Blvd., Suite 1400
Dallas, TX 75219
Telephone: (469) 680-5502
Email:    martin.sosland@butlersnow.com
            candice.carson@butlersnow.com

*Counsel for UBS Securities LLC and UBS AG London Branch*

**CERTIFICATE OF SERVICE**

I, <u>Andrew Clubok</u>, certify that *UBS's Opposition to Foreign Non-Party Sentinel Reinsurance, Ltd.'s Motion for Protective Order* was filed electronically through the Court's ECF system, which provides notice to all parties of interest. And a copy of this Opposition will be provided to counsel for Beecher by email

Dated: September 10, 2021

<u>/s/Andrew Clubok</u>
Andrew Clubok
