# EXHIBIT 6

UBSPO026

# ▮FOLEY

FOLEY & LARDNER LLP

ATTORNEYS AT LAW

90 PARK AVENUE
NEW YORK, NY 10016-1314
212-682-7474 TEL
212-687-2329 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
212-338-3496
kcatanese@foley.com EMAIL

August 4, 2021

**VIA EMAIL**

Jason R. Burt
Latham & Watkins LLP
555 Eleventh Street, N.W.
Suite 1000
Washington, D.C. 2004-1304
jason.burt@lw.com

      Re:    *UBS Securities LLC and UBS AG London Branch v. Highland Capital Management et al.* (Index No. 650097/2009)

Dear Mr. Burt,

As you know, we represent Sentinel Reinsurance Ltd. ("Sentinel"). We write as a follow-up to our phone call on July 29, 2021. As discussed on our call, the information subpoenas, restraining notice, and other documents (the "Third Party Discovery Documents") UBS attempted to serve on Sentinel in the Cayman Islands are not automatically enforceable outside of the United States. Evidence for use in foreign proceedings can only be compelled from a witness located in the Cayman Islands with the assistance of a Cayman Court, pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters (the "Hague Evidence Convention"). Compliance with the Hague Evidence Convention is required here since the Third Party Discovery Documents are being served outside the U.S. on a non-party.

New York law has consistently held that with respect to foreign non-parties, like Sentinel, use of the Hague Evidence Convention is "virtually compulsory." *Orlich v. Helm Bros., Inc.*, 160 A.D.2d 135, 143 (1st Dep't 1990)[1]. As *Orlich* held, this is because the use of non-judicial taking of evidence in a country where that is the requirement is "an affront to their

---

[1] *See also Matter of Agusta*, 171 A.D.2d 595, 596 (1st Dept. 12291) (reversing Surrogate's Court order that a non-party witness who was an Italian citizen living in Monaco appear in New York for a deposition, finding that the Hague Evidence Convention needed to be used, particularly when the discovery is sought from a non-party); *Ayyash v. Koleilat*, 38 Misc. 3d 916 (N. Y. Sup. 2012), aff'd 115 A.D. 3d 495 (1st Dep't, 2014) (holding that party seeking to enforce foreign judgment had to use Hague Evidence Convention to obtain bank account information from branches outside of New York, even though the banks had branches in New York); *Peters v. Peters*, 127 A.D.3d 656 (1st Dep't 2015) (Hague Evidence Convention was appropriate to obtain discovery from non-party UBS, particularly where disclosure could violate Swiss banking law); *Intercontinental Trading Corp. v. Roth*, 154 Misc. 2d 639 (N.Y. Supp. 1991) (Hague Evidence Convention procedure required after *Agusta* to obtain disclosure from Israeli bank as to accounts held outside of the United States, even if Israeli banking laws were not clearly implicated).

| | | | | |
|---|---|---|---|---|
| BOSTON | JACKSONVILLE | MILWAUKEE | SAN DIEGO | TALLAHASSEE |
| BRUSSELS | LOS ANGELES | NEW YORK | SAN FRANCISCO | TAMPA |
| CHICAGO | MADISON | ORLANDO | SHANGHAI | TOKYO |
| DETROIT | MIAMI | SACRAMENTO | SILICON VALLEY | WASHINGTON, D.C. |



FOLEY & LARDNER LLP

sovereignty." *Id*. Specifically, the *Orlich* court held that "[s]uch an exercise would be particularly offensive where, as here, the entity being subjected to the court-ordered fact gathering . . .is not even a party to the litigation. . ." *Id*. *Orlich* also identified several factors to determine whether the Hague Evidence Convention should be used: 1) the degree of specificity of the request, 2) whether the information originated in the United States, 3) the availability of an alternate source to obtain the information, 4) the extent to which non-compliance would undermine US interests; and 5) whether compliance would undermine important interests of the country where the information is located. *Id.* at 144. Here, these factors weigh heavily in favor of the use of the Hague Evidence Convention as (i) the information subpoena is incredibly broad, (ii) certain of the information likely did not originate in the U.S.—it originated in the Cayman Islands, (iii) there is an alternate source of the documents (Beecher Carlson, Sentinel's manager, which we understand has also received a similar subpoena), and (iv) the Cayman Island's interest in protecting its sovereignty, as well as the interests of the Cayman Islands to protect its citizens (especially given the divergence in discovery practices between the Cayman Islands and U.S.), override permitting service of broad discovery requests that would not be permitted without Cayman court oversight.

Further, as we discussed last week, Sentinel's prior directors have all resigned and have very recently been replaced by new independent directors with no prior affiliation with or knowledge of Sentinel or its actions with respect to the various Highland Capital entities. As such, and with recognition of the new directors' fiduciary duties to Sentinel, they are currently undertaking a review of the facts, including coverage under the insurance policy and the assets which were transferred to pay the premiums on the policy. In addition, the directors and their Cayman Islands counsel are working with Beecher Carlson regarding a review of documents that are in Beecher Carlson's possession (and not in Sentinel's).

Additionally, although we continue to dispute that service of these documents was proper and so no response to these documents is legally required at this time, as discussed above, the Sentinel directors only recently received--on July 26, 2021--from Sentinel's registered agent your May 14, 2021 letter, the undated restraining notice, the bankruptcy subpoena (dated April 2, 2021) and another copy of the information subpoena.

While we believe a consensual resolution is possible as we discussed on our call last week, and Sentinel and its new independent directors may be willing to cooperate with UBS, at this point, the independent directors are taking initial steps to understand the underlying facts and information in connection with their fiduciary duties and as required under the laws of the Cayman Islands.

Though you have previously indicated you believe New York courts have personal jurisdiction over Sentinel, and have requested that Sentinel waive any of its arguments regarding such jurisdiction, Sentinel does not waive and hereby reserves any and all of its objections to the Third Party Discovery Documents and the jurisdiction of the New York Supreme Court over Sentinel for any purpose whatsoever.



**FOLEY**

FOLEY & LARDNER LLP

We welcome the opportunity to discuss these matters with you further.

Very Truly Yours,

*/s/ Katherine R. Catanese*

Katherine R. Catanese

cc:     Stephen Leontsinis, Collas Crill