**LATHAM & WATKINS LLP**

Andrew Clubok (*pro hac vice*)
Sarah Tomkowiak (*pro hac vice*)
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
Telephone: (202) 637-2200

Jeffrey E. Bjork (*pro hac vice*)
Kimberly A. Posin (*pro hac vice*)
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234

Kathryn George (*pro hac vice*)
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700

*Counsel for UBS Securities LLC and UBS
AG London Branch*

**BUTLER SNOW LLP**

Martin Sosland (TX Bar No. 18855645)
Candice Carson (TX Bar No. 24074006)
2911 Turtle Creek Blvd., Suite 1400
Dallas, TX 75219
Telephone: (469) 680-5502

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| *In re* | § | |
| | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | |
| | § | Case No. 19-34054-sgj11 |
| Debtor. | § | |
| | § | |
| UBS SECURITIES LLC and UBS AG LONDON BRANCH, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Adversary Proceeding |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | No. 21-03020 |
| | § | |
| Defendant. | § | |
| | § | |

## UBS'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR EXPEDITED HEARING ON FOREIGN NON-PARTY SENTINEL REINSURANCE, LTD.'S MOTION FOR PROTECTIVE ORDER

---

[1]    The last four digits of the Debtor's taxpayer identification number are 6725.  The Debtor's headquarters and service address is 300 Crescent Court, Suite 700, Dallas, TX 75201.

UBS Securities LLC and UBS AG London Branch (together, "UBS"), plaintiffs in this adversary proceeding and creditors in the underlying chapter 11 case, respectfully submit this reply in support of their motion to set an expedited hearing [Adv. Dkt. No. 110] (the "Motion to Expedite") on Foreign Non-Party Sentinel Reinsurance, Ltd.'s Motion for Protective Order [Adv. Dkt. No. 106] (the "Motion" filed by "Sentinel") and to respond to Sentinel's Opposition to the Motion to Expedite [Adv. Dkt. No. 111] (the "Opposition").[1]

## INTRODUCTION

1.      As detailed in UBS's Motion to Expedite (¶¶ 4-6) and UBS's Opposition (¶¶ 4-7), UBS has for nearly three months been negotiating with Beecher to obtain documents in response to UBS's subpoena. During that time, UBS agreed to a number of extensions of the subpoena response deadlines in a good-faith effort to resolve this dispute without judicial intervention. Although time-consuming, this process with Beecher *was successful*—Beecher ultimately agreed to produce all documents responsive to the subpoena and to begin rolling productions on September 3, 2021, more than six weeks before the trial date scheduled in this case. But-for the Motion of Sentinel (a non-subpoenaed non-party, which has not moved to intervene and which is the very entity that facilitated the fraudulent transfer of well over a hundred million dollars of assets), UBS *today* would be in possession of a large number of the subpoenaed documents and the rolling production would be ongoing. *See* Tomkowiak Decl., Ex. 1.

2.      But Sentinel claims in its Opposition that UBS has no reason to expedite the resolution of Sentinel's Motion because UBS did not notify Sentinel of the trial date during negotiations with Beecher and because UBS will likely be forced *by Sentinel's actions* to seek a

---

[1]      UBS incorporates as relevant its Opposition to Sentinel's Motion [Adv. Dkt. No. 108] ("UBS's Opposition") and Appendix of Exhibits to UBS's Opposition [Adv. Dkt. No. 109], which includes the Declaration of Sarah Tomkowiak [Adv. Dkt. No. 109-1] ("Tomkowiak Decl.").

short delay of the hearing. *See, e.g.*, Opp. ¶¶ 1-2. These arguments are unavailing. The reality is that UBS served a subpoena on Beecher in June—well in advance of the October trial date—and successfully resolved Beecher's objections through the meet-and-confer process (despite Sentinel's attempt to be an obstructionist to this process). Beecher would now be producing documents if Sentinel had not filed the Motion *the day before Beecher was set to begin production*. Further, as explained in UBS's Opposition, Sentinel's Motion is procedurally defective, Sentinel has no standing to contest the Beecher subpoena, and Sentinel has no right to delay resolution of its Motion for months while UBS is left in the lurch. *See* UBS's Opp. ¶¶ 5-24. Each day that goes by without resolution of the Motion only prejudices UBS, which is deprived for another day of the evidence it requires to obtain the relief it seeks—a permanent injunction forbidding any further transfer of monies and assets to Sentinel. Indeed, just two days before filing the Motion, Sentinel sent a letter to the Debtor demanding that the Debtor immediately transfer the millions of dollars in assets still purportedly under its management *to Sentinel* in direct violation of the Court's temporary restraining order. *See* Decl. of Kathryn K. George ("George Decl."), Ex. 1. This further confirms the urgent need for UBS to obtain the subpoenaed documents so that the permanent injunction can be entered.

3.      Moreover, all of Sentinel's arguments in the Opposition (¶¶ 4, 12-15) about Cayman Islands law, service of subpoenas to Sentinel under the Hague Evidence Convention, and Sentinel's supposed fiduciary duties are irrelevant because the Motion implicates a document subpoena served *on Beecher*—a U.S. entity—which is ready and willing to produce the subpoenaed documents now. This dispute does not involve a Sentinel subpoena or any obligation by Sentinel under Cayman law.

4. Fatally, Sentinel's Opposition, like its Motion, contains no evidence to substantiate its claim that it "will be significantly prejudiced" without a protective order from this Court. Opp. ¶ 16. To the contrary, the Opposition only confirms that Sentinel seeks delay precisely to prevent UBS from obtaining any documents that Sentinel deems "confidential." *See id.* ¶¶ 3-6, 13, 15. Sentinel admits in its Opposition that the documents it claims are confidential include documents containing the "personal information of beneficial owners" of Sentinel. *Id.* ¶ 5 n.3. This is a critical admission because the beneficial owners of Sentinel are *James Dondero and Scott Ellington*. In other words, Sentinel seeks delay here to prevent the discovery of information about Dondero and Ellington, the owners of Sentinel and the architects and beneficiaries of the fraudulent transfers. Sentinel's objection that the swift resolution of its Motion would inflict "significant[] prejudice[]" on Sentinel, *id.* ¶ 16, should be seen for what it is: A ploy to delay discovery and protect Dondero and Ellington. The Court should either grant the Motion to Expedite and schedule an expedited hearing on Sentinel's Motion or promptly deny Sentinel's Motion, thus allowing all of the evidence about the fraudulent transfers in Beecher's possession to come forth.

## **ARGUMENT**

### I. UBS HAS ESTABLISHED "CAUSE" TO EXPEDITE ANY HEARING ON SENTINEL'S MOTION

5. Sentinel's primary argument in opposition to UBS's Motion to Expedite is that UBS has not established "cause" to expedite any hearing because UBS may seek to extend the remaining deadlines in this adversary proceeding. *See* Opp. ¶¶ 7-11. Sentinel also asserts that this means the "emergency" is "of UBS's own making." *Id.* ¶ 9.[2] Sentinel is wrong on both counts.

---

[2] Taking a Goldilocks approach to characterizing the facts, Sentinel contends that UBS has simultaneously been too lax and too strict in seeking compliance with the subpoena. *Compare, e.g.*, Sentinel Mot. ¶ 21 ("UBS has thus far refused to provide Sentinel additional time to review the documents and is requiring Beecher to immediately produce [the] documents."), *with, e.g.*,

6.    *First*, regarding the claim that any emergency is of UBS's own making, UBS provided in its Opposition to Sentinel's Motion a detailed procedural description of UBS's negotiations with Beecher (supported with contemporaneous exhibits documenting what transpired), which prove that there was no delay on UBS's part—and that UBS worked in good faith to successfully resolve Beecher's objections and agree on a reasonable process for both parties for the production of the subpoenaed documents.  UBS Opp. ¶¶ 4-7.  UBS even sought to work reasonably with Sentinel when Sentinel inserted itself in these discussions and notified UBS in August that it would file a motion for protective order to delay the production for as long as possible and that it alone would dictate Beecher's production.  *Id.* ¶ 5.  After learning of Sentinel's position, Beecher replaced its counsel on August 20, and its new counsel quickly agreed that Beecher would produce all subpoenaed documents on a rolling basis beginning on September 3 and would not take direction from Sentinel on what to produce.  *Id.* ¶ 6.

7.    There was nothing untoward or improper about UBS's negotiations with Beecher or Sentinel and certainly nothing that would support denial of UBS's Motion to Expedite.  To the contrary, UBS's negotiations with Beecher were *successful*, and if Beecher's production had begun on September 3, there would be nothing now for the Court to consider.  But the need for emergency relief exists now because of *Sentinel's actions* in seeking to delay and deny UBS the documents it is entitled to under the Beecher subpoena.  Sentinel's Opposition boils down to an argument that litigants who engage in good-faith (but time-consuming) negotiations to resolve discovery disputes should be penalized for their efforts while actors who interfere with discovery (and thereby derail a case's schedule) should be rewarded with the delay they seek.  That is exactly contrary to Rule

---

Opp. ¶ 8 ("[T]he Subpoena to Beecher has been outstanding for months and UBS is only now seeking to enforce it . . . .").

26 and the fundamental expectation that litigants will engage in good-faith negotiations to resolve discovery disputes absent court intervention.

8. *Second*, the fact that UBS likely will need to move for an extension of the scheduling order does not obviate the need for expedited resolution of Sentinel's Motion. Setting aside that the Motion is legally and factually frivolous, "every day of delay in resolving Sentinel's (meritless) Motion is another day in which Sentinel can prevent UBS and the Court from discovering the facts and potentially engage in further illicit conduct." Mot. to Expedite ¶ 6.[3] Indeed, it has already been four years since Dondero and Ellington orchestrated the transfers to Sentinel. Further delay in the exploration of the facts surrounding those transfers and the assets is highly prejudicial to UBS. *See, e.g.*, *Alcala v. Tex. Webb Cnty.*, 625 F. Supp. 2d 391, 405 (S.D. Tex. 2009) ("courts recognize that delay can lead to the loss of evidence and duly frustrate a plaintiff's ability to put on an effective case"); *SEC v. Mutuals.com, Inc.*, No. 03-cv-2912, 2004 WL 1629929, at *3 (N.D. Tex. July 20, 2004) ("a 'civil plaintiff has an interest in the prompt resolution of its claims and in obtaining discovery while information is still fresh in witnesses' minds'" (citation omitted)). These concerns are all the more heightened here where Sentinel has admitted that it is actively reviewing documents to identify and prevent the disclosure of any "personal information" related to beneficial owners of Sentinel such as Dondero and Ellington and where it is demanding that the Debtor immediately transfer millions of dollars in assets still purportedly under the Debtor's management to Sentinel, in violation of the temporary restraining order in place in this case. Opp. ¶ 5 n.3; George Decl., Ex. 1.

---

[3] Tellingly, in response to UBS's argument that Sentinel's complicity in the fraudulent transfers at the heart of this adversary proceeding and Sentinel's ongoing questionable conduct further establish the need for an expedited hearing, *see* Mot. to Expedite ¶¶ 5 & n.3, 10, Sentinel offers a one-paragraph conclusory denial, *see* Opp. ¶ 12, devoid of any evidentiary support.

9. The dispositive fact is that UBS needs Beecher's documents—and is entitled to those documents—*now*. UBS has been vigorously seeking all the discovery it requires to support its request for a permanent injunction and should not be forced to litigate this ultimate relief without the benefit of the Beecher production, which Sentinel is delaying, not UBS. That is the main reason an extension of the scheduling order will likely be necessary. But the sooner UBS gets the subpoenaed documents, the sooner the parties will be in a position to litigate the ultimate issue of a permanent injunction.

## II. SENTINEL'S OPPOSITION CONFIRMS THE NEED FOR EXPEDITED RESOLUTION

10. Denying UBS's Motion to Expedite would allow Sentinel to halt Beecher's production until Sentinel has pre-screened and withdrawn documents from production that it deems are "confidential." Sentinel has now repeatedly admitted that, under the pre-screen-and-approval process that it seeks to impose, it will prevent UBS from receiving documents that are discoverable and that UBS is legally entitled to, if Sentinel deems them to be "confidential." *See, e.g.*, Opp. ¶ 4 (asserting that UBS is not entitled to and would not receive "[]confidential documents"); *see also* UBS Opp. ¶¶ 17-20 (detailing why Sentinel is wrong).

11. Indeed, Sentinel now even invokes "the laws of the Cayman Islands" and announces its intent to "redact[]" and "withh[o]ld" documents based on Cayman law, including all documents concerning the beneficial owners of Sentinel (*i.e.*, Dondero and Ellington). Opp. ¶ 5 & n.3. Sentinel conspicuously offers no legal support for the notion that Cayman law dictates the scope of discoverable information that a U.S. corporation—*Beecher*—must produce in U.S. federal court pursuant to a U.S. subpoena. Nor, even now after apparently having reviewed a substantial portion of the documents at issue, does Sentinel provide any actual evidentiary support that the production contains privileged material. These baseless arguments only confirm that

Sentinel cannot be allowed to dictate Beecher's subpoena response to UBS. Delaying resolution of Sentinel's Motion so that Sentinel can execute its plan and hamper Beecher's production to UBS will prejudice only one party—UBS.

## III. EXPEDITING (OR DISPENSING WITH) THE HEARING WILL NOT PREJUDICE SENTINEL

12. Sentinel's prejudice arguments do not withstand scrutiny either. For one thing, Sentinel is not even entitled to a hearing in the first place. Although the Bankruptcy Code and Rules specify that certain matters require "a hearing," 11 U.S.C. § 102(1), motions for a protective order are not one of them. So nothing prevents the Court from deciding Sentinel's Motion on the papers now that it is fully briefed. And if Sentinel is not even entitled to a hearing, it cannot claim prejudice from expediting the hearing date either.[4]

13. Sentinel asserts that its "due process rights" entitle it to "time to prepare adequately for a hearing on its protective order and respond to the allegations in [UBS's Objection], including preparing a reply and providing declarations in support of the Motion for Protective Order." Opp. ¶ 15. But the time for Sentinel to submit declarations (or any other evidence) in support of its Motion has passed. *See* Fed. R. Bankr. P. 9006(d) ("When a motion is supported by affidavit, the affidavit shall be served with the motion."); L.B.R. 7007-1(g)(1) ("A party who relies on documentary (including an affidavit, declaration . . . ) or non-documentary evidence . . . to support or oppose a motion shall include such evidence in an appendix."); *see also In re Stone*, 588 F.2d

---

[4] Even if Sentinel were entitled to a hearing, it received one here. *See, e.g.*, *Kaufman v. S & C Corp.*, 171 B.R. 38, 41 (S.D. Tex. 1994) ("Absent a congressional mandate through the bankruptcy code for oral argument, the requirement of a hearing is met by allowing the parties to file their briefs."); *see also In re River Hills Apartments Fund*, 813 F.2d 702, 706 (5th Cir. 1987) (summarizing hearing requirement). And even if an *evidentiary* hearing were required, this Court "may decline to conduct an evidentiary hearing where the alleged facts, even if true, would not change the outcome." *In re Elmwood Dev. Co.*, 964 F.2d 508, 512 (5th Cir. 1992).

1316, 1322 (10th Cir. 1978) (bankruptcy court properly refused to consider untimely affidavit). Nor could a reply brief salvage Sentinel's Motion. *See, e.g.*, *McGinnis v. Nationwide Life & Annuity Ins. Co.*, No. 20-cv-3138, 2021 WL 2531190, at *2 (N.D. Tex. June 21, 2021) (refusing to consider a declaration submitted with reply brief because "[a] reply brief that presents dispositive evidence by way of new affidavits and exhibits deprives the nonmovant of a meaningful opportunity to respond" (citation omitted)); *In re e2 Commc'ns, Inc.*, 320 B.R. 849, 860 (Bankr. N.D. Tex. 2004) ("a reply should 'contain argument, not new supporting materials'" (citation omitted)).[5]

14.     Finally, Sentinel asserts that it will be "significantly prejudiced if it cannot protect its interests and review documents containing its business information prior to production by Beecher." Opp. ¶ 16. But that assertion confuses the effect that *expediting the hearing date* will have with the effect that *denying Sentinel's Motion* will have. Sentinel's admission that it really just seeks to run the clock here shows the need for this Court to promptly adjudicate—and deny—Sentinel's Motion. Moreover, all of Sentinel's arguments about its obligations under Cayman law justifying further delay falsely presume that the subpoena was issued to *Sentinel* and requires *Sentinel* to produce documents. None of Sentinel's obligations under Cayman law, whatever they are, is applicable to Beecher or at issue here.

---

[5]     UBS's Appendix submitted with this reply brief does not contravene this rule because UBS already "presented the substance of this [supplemental] evidence" in its Motion. *Lopez v. Reliable Clean-Up & Support Servs. LLC*, No. 16-cv-2595, 2017 WL 6611615, at *2 (N.D. Tex. Nov. 15, 2017), *report and recommendation adopted*, No. 16-cv-2595, 2017 WL 6611578 (N.D. Tex. Dec. 27, 2017); *see* Mot. to Expedite ¶ 9 ("Sentinel has asked the Debtor when it will receive an approximately $32 million redemption interest in Highland Multi Strategy Credit Fund, L.P., another Debtor-managed fund").

## **CONCLUSION**

15.    The Court should either promptly deny Sentinel's Motion or grant UBS's Motion

to Expedite and schedule an expedited hearing on Sentinel's Motion.  The Court should further

order supplemental submissions on UBS's right to recover its fees and costs in being forced to

respond to Sentinel's frivolous Motion and award any other relief that is just and equitable.

Dated:  September 15, 2021                    Respectfully submitted,

                                              */s/ Sarah Tomkowiak*                    

                                              **LATHAM & WATKINS LLP**
                                              Andrew Clubok (*pro hac vice*)
                                              Sarah Tomkowiak (*pro hac vice*)
                                              555 Eleventh Street, NW, Suite 1000
                                              Washington, DC 20004
                                              Telephone: (202) 637-2200
                                              Email:    andrew.clubok@lw.com
                                                        sarah.tomkowiak@lw.com

                                              Jeffrey E. Bjork (*pro hac vice*)
                                              Kimberly A. Posin (*pro hac vice*)
                                              355 South Grand Avenue, Suite 100
                                              Los Angeles, CA 90071
                                              Telephone: (213) 485-1234
                                              Email:    jeff.bjork@lw.com
                                                        kim.posin@lw.com

                                              Kathryn George (*pro hac vice*)
                                              330 North Wabash Avenue, Suite 2800
                                              Chicago, IL 60611
                                              Telephone: (312) 876-7700
                                              Email:    kathryn.george@lw.com

                                              **BUTLER SNOW LLP**
                                              Martin Sosland (TX Bar No. 18855645)
                                              Candice Carson (TX Bar No. 24074006)
                                              2911 Turtle Creek Blvd., Suite 1400
                                              Dallas, TX 75219
                                              Telephone: (469) 680-5502
                                              Email:    martin.sosland@butlersnow.com
                                                        candice.carson@butlersnow.com

                                              *Counsel for UBS Securities LLC and UBS AG*
                                              *London Branch*

## CERTIFICATE OF SERVICE

I, <u>Martin Sosland</u>, certify that *UBS's Reply in Further Support of Its Motion for Expedited Hearing on Foreign Non-Party Sentinel Reinsurance, Ltd.'s Motion for Protective Order* was filed electronically through the Court's ECF system, which provides notice to all parties of interest. And a courtesy copy of this reply brief will be provided to counsel for Beecher Carlson Insurance Services, LLC by email.

Dated: September 15, 2021                    */s/ Martin Sosland*
                                             Martin Sosland