# **<u>EXHIBIT J</u>**



# Notice of Service of Process

null / ALL
**Transmittal Number: 23676711**
Date Processed: 08/24/2021

| | |
|---|---|
| **Primary Contact:** | Brittany Zalich<br>Brown & Brown, Inc.<br>300 N Beach St<br>Daytona Beach, FL 32114-3304 |
| **Electronic copy provided to:** | Lauren Clark<br>Cheryl Gortmans<br>Maria Leal |
| **Entity:** | Beecher Carlson Insurance Services, LLC<br>Entity ID Number  3968236 |
| **Entity Served:** | Beecher Carlson Insurance Services, LLC |
| **Title of Action:** | UBS Securities LLC vs. Highland Capital Management, L.P. |
| **Matter Name/ID:** | UBS Securities LLC vs. Highland Capital Management, L.P. (11432589) |
| **Document(s) Type:** | Subpoena |
| **Nature of Action:** | Information/Appearance Request |
| **Court/Agency:** | New York County Supreme Court, NY |
| **Case/Reference No:** | 650097/2009 |
| **Jurisdiction Served:** | New York |
| **Date Served on CSC:** | 08/24/2021 |
| **Answer or Appearance Due:** | 09/07/2021 |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| Sender Information: | Sean McMahon<br>212-906-4673 |
| **Enclosures:** | Original Attachment Pending:<br>Check |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674   (888) 690-2882   |   sop@cscglobal.com

**Disbursement Account**
VOID AFTER 6 MONTHS-NOT TO EXCEED $250.00
Church Street Station – PO BOX 297
New York, NY 10008-2151

This is a Deluxe eCheck. The PAY TO THE ORDER OF line designates the Payee. For questions, call Deluxe Payment Exchange customer support at 877-333-6964. Ref: 2B1E-21A1

**VV580**

Date | 08/24/2021
Void after 90 days

PAY TO THE ORDER OF | Beecher Carlson Insurance Services, LLC         $ 18.00

Eighteen and 00/100 _____ Dollars

Sterling National Bank

Memo | UBS/Latham

⑆000580⑆ ⑈021909300⑈ 419254000⑆

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

---

| | |
|---|---|
| UBS SECURITIES LLC and<br>UBS AG LONDON BRANCH,<br><br>                  Plaintiffs,<br><br>- against -<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND CDO OPPORTUNITY MASTER FUND, L.P., HIGHLAND SPECIAL OPPORTUNITIES HOLDING COMPANY, HIGHLAND FINANCIAL PARTNERS, L.P., HIGHLAND CREDIT STRATEGIES MASTER FUND, L.P., HIGHLAND CRUSADER OFFSHORE PARTNERS, L.P., HIGHLAND CREDIT OPPORTUNITIES CDO, L.P., and STRAND ADVISORS, INC.,<br><br>                  Defendants. | Index No.: 650097/2009<br><br>Hon. Melissa Crane<br><br>**SUBPOENA DUCES TECUM** |

𝕿𝖍𝖊 𝕻𝖊𝖔𝖕𝖑𝖊 𝖔𝖋 𝖙𝖍𝖊 𝕾𝖙𝖆𝖙𝖊 𝖔𝖋 𝕹𝖊𝖜 𝖄𝖔𝖗𝖐

**To:** Beecher Carlson Insurance Services, LLC
c/o Corporation Service Company
80 State Street
Albany, NY 12207

      **WHEREAS**, in the above-captioned action in the Supreme Court of the State of New York, County of New York, between the plaintiffs UBS Securities LLC and UBS AG London Branch (together, "Plaintiffs") and the defendants Highland Capital Management, L.P., Highland CDO Opportunity Master Fund, L.P., Highland Special Opportunities Holding Company, Highland Financial Partners, L.P., Highland Credit Strategies Master Fund, L.P., Highland Crusader Offshore Partners, L.P., Highland Credit Opportunities CDO, L.P., and Strand Advisors, Inc. (together, "Defendants"), a judgment was entered on February 10, 2020, in favor of Plaintiffs, judgment creditors, and against Defendant Highland CDO Opportunity Master Fund, L.P. for the sum of $531,619,426.24 and against Defendant Highland Special Opportunities Holding Company (together with Highland CDO Opportunity Master Fund, L.P., the "Judgment Debtors") for the sum of $510,771,605.55, for a combined total including prejudgment interest (but excluding post-judgment interest) of $1,042,391,031.79—the entire sum of which, together with interest thereon,

1

remains due and unpaid;

**WHEREAS**, it is believed that you either (a) possess information about a Judgment Debtor (or both Judgment Debtors) that will assist in Plaintiffs' collection of the aforementioned judgment, (b) owe a debt to a Judgment Debtor (or both Judgment Debtors), or (c) are in possession or custody of property in which a Judgment Debtor (or both Judgment Debtors) has an interest;

**NOW, THEREFORE WE COMMAND YOU**, that you deliver to Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020 on or before September 7, 2021, the records, papers, documents, correspondence, copies and other things now in your possession, custody, or control that are responsive to the requests in the attached "Schedule of Documents."

**TAKE NOTICE** that failure to comply with this subpoena is punishable as a contempt of court and shall make you liable to the person on whose behalf this subpoena was issued for a penalty not to exceed $250 and for all damages sustained by reason of your failure to comply.

**DATED** this 24th day of August, 2021.          Respectfully submitted,

Sean McMahon
Latham & Watkins LLP
1271 Avenue of the Americas
New York, N.Y. 10020
Telephone: (212) 906-4673
Email: sean.mcmahon@lw.com


*Attorney for Judgment Creditors*
*UBS Securities LLC & UBS AG, London Branch*

## SCHEDULE OF DOCUMENTS

## INSTRUCTIONS AND DEFINITIONS

1. Except as otherwise provided below, each of the production requests below relates to and calls for Documents and Communications for the time period of December 5, 2008 to the present.

2. The Documents and Communications requested herein must be produced in their original form, except for books of account, for which a sworn transcript of such accounts may be produced.

3. The production requests below are continuing and if additional information is acquired or discovered by You or Your Institution, You or Your Institution must supplement Your response accordingly.

4. If any of the information requested herein is not in Your or Your Institution's possession, custody, or control but is known or believed to be in the possession, custody, or control of another Person, identify that Person and describe such information.

5. The terms utilized herein shall have the meanings specified below. Any term referencing any business, legal, or governmental entity or association shall be deemed a reference to any and all of its predecessors, successors, affiliates, and subsidiaries, as well as any and all of its past or present officers, directors, partners, members, managers, employees, consultants, advisors, representatives, attorneys, and agents, or anyone acting on behalf of such entity or its affiliates. Defined terms include the following:

   a. "Asset" means anything tangible or intangible that is capable of being owned or controlled to produce value of ownership that can be converted into cash.

   b. "BC LLC" means Beecher Carlson Insurance Services, LLC.

   c. "CDO Fund" means Highland CDO Opportunity Master Fund, L.P.

3

d. "CDO Holding Co." means Highland CDO Holding Co.

e. "CDO Opportunity Fund" means Highland CDO Opportunity Fund, Ltd.

f. "Collateral" means an Asset or Interest pledged to secure a loan or Debt.

g. "Communication" means the transmittal of information in all forms, including, without limitation, through meetings, in-person or telephone conversations, telegrams, facsimile or electronic mail transmissions, correspondence, letters, reports, memoranda, formal or informal statements, press releases, newspaper stories, records of conversations or messages, and similar modes. References to Communications withor by business entities shall be deemed to include all officers, directors, employees, personnel, agents, attorneys, accountants, consultants, independent contractors, orother representatives of such entities.

h. "Document" means each and every writing, of whatsoever nature, whether an original, draft or a copy, however produced or reproduced, and each and every tangible thing from which information can be processed or transcribed. This term includes, but is not limited to, any written, recorded, computer-generated, computer-stored or graphic matter, letters, correspondence, photographs, videos, telegrams, telexes, drawings, artistic renderings, work sheets, prints, memoranda, reports, calendar and diary entries, notes, drafts, books, pamphlets, graphics, mechanical or electrical reproductions or reproductions of any kind, Communications, notations made regarding any Communications, or similar items, regardless of the form maintained, and copies of any Documents which are not identical duplicates or originals (*e.g.*, because handwritten or "blind" copy notes appear thereon or are attached thereto).

i. "HCM" means Highland Capital Management, L.P.

j. "HFC" means Highland Financial Corp.

k. "HFP" means Highland Financial Partners, L.P.

l. "Insurance Policy" means that certain Legal Liability Insurance Policy dated as of August 1, 2017 between Sentinel Reinsurance, Ltd. as Insurer and Highland CDO Opportunity Master Fund, LP, Highland CDO Holding Company, and HighlandSpecial Opportunities Holding Company as Insureds

m. "Legal Action" means the above-caption case, *UBS Securities LLC and UBS AG, London Branch, v. Highland Capital Management, L.P., Highland Special Opportunities Holding Company, HighlandFinancial Partners, L.P., Highland CDO Opportunity Master Fund, L.P., Highland Credit Opportunities CDO, L.P., and Strand Advisors, Inc.*, Case No. 650097/2009.

n. "Multi-Strat" means Highland Multi Strategy Credit Fund, L.P., formerly known as Highland Credit Opportunities CDO, L.P.

o. "Purchase Agreement" means that certain Purchase Agreement dated as of August 7, 2017 between Sentinel Reinsurance, Ltd. as Purchaser and each of Highland CDO Opportunity Master Fund, L.P., Highland CDO Holding Company, and Highland Special Opportunities Holding Company as Sellers.

p. "Tax Memo" means that certain June 30, 2018 Memorandum entitled "Tax Consequences of Sentinel Acquisition of HFP/CDO Opportunity Assets."

q. "Sentinel" means Sentinel Reinsurance, Ltd. and Sentinel Re Holdings, Ltd.

r. "SOHC" means Highland Special Opportunities Holding Company.

    s.    "You" or "Your" means BC LLC, as well as any division or subsidiary thereof, and any of its attorneys, representatives, officers, directors, employees, consultants, advisors, affiliates, or anyone acting on Your or such subsidiary's behalf.

    t.    "UBS" means UBS Securities, LLC, and UBS AG, London Branch.

6.    The terms used herein are to be given their most expansive and inclusive interpretation unless otherwise expressly limited. This includes, without limitation, the following:

    a.    construing "and" and "or" in the disjunctive or conjunctive as necessary to make a request more inclusive;

    b.    construing "any" to mean any, all, each, and every;

    c.    construing "among" to mean between or among and vice versa;

    d.    construing the masculine, feminine, or neutral pronouns to include other genders;

    e.    construing the singular form of a word to include the plural and vice versa;

    f.    construing the present tense of a verb to include its past tense and vice versa; and

    g.    construing "concerning," "relating to," and "regarding" broadly to mean all information, facts, Communications or Documents that directly, indirectly, or in any other way support, concern, negate, bear upon, touch upon, incorporate, affect, include, pertain to, or are otherwise connected with the subject matter of the request.

**DOCUMENTS TO BE PRODUCED**

1. Communications between Sentinel, and any of You, HCM, CDO Fund, HFP, SOHC, CDO Opportunity Fund, CDO Holding Co., HFC, Multi-Strat, James Dondero ("Dondero"), Isaac Leventon ("Leventon"), Matthew DiOrio ("DiOrio"), Jean Paul Sevilla ("Sevilla"), Mary Kathryn Irving ("Irving"), or Scott Ellington ("Ellington").

2. Documents or Communications concerning the Insurance Policy, including without limitation (i) any amendment thereto; (ii) board minutes or resolutions concerning the Insurance Policy; (iii) claims made on the Insurance Policy; (iv) Communications with the IRS concerning the Insurance Policy; and (v) any similar agreements.

3. Documents or Communications concerning the Purchase Agreement, including without limitation (i) any amendment thereto; (ii) transfer of assets pursuant to the Purchase Agreement; (iii) board minutes or resolutions concerning the Purchase Agreement; (iv) Communications with the IRS regarding any assets transferred pursuant to the Purchase Agreement; and (v) any similar agreements.

4. Documents or Communications concerning the Tax Memo, including without limitation (i) any amendment thereto; (ii) board minutes or resolutions concerning the Tax Memo; (iii) documents relied on in preparing the Tax Memo; and (iv) any similar memoranda.

5. Documents or Communications sufficient to identify any assets transferred from HCM, CDO Fund, HFP, SOHC, CDO Opportunity Fund, CDO Holding Co., or HFC to Sentinel, including without limitation all assets transferred pursuant to the Insurance Policy or Purchase Agreement, and information sufficient to identify the value of any such transferred assets.

6. Documents or Communications relating to any subsequent transfer or dissipation by Sentinel of any assets previously transferred from HCM, SOHC, HFP, CDO Fund, , CDO Opportunity Fund, CDO Holding Co., or HFC.

7. Documents or Communications sufficient to identify all accounts used to transfer or receive any assets transferred pursuant to the Insurance Policy or Purchase Agreement.

8. Documents or Communications concerning the value of any assets transferred pursuant to the Insurance Policy or Purchase Agreement, including without limitation those assets listed in Schedule A to the Purchase Agreement, from January 1, 2017 to the present, including documentation supporting the $105,647,679 value of those assets aslisted in the Tax Memo.

9. Documents showing the organizational structure of Sentinel and its affiliates, including information identifying the relationship between Sentinel and any of Dondero, Leventon, DiOrio, Sevilla, Irving, or Ellington.

10. Documents or Communications sufficient to determine the identities of Sentinel's directors and officers between January 1, 2016 and the present.

11. Documents or Communications from any time period concerning the formation or acquisition of Sentinel.

12. Documents or Communications between Sentinel and any person concerning the Legal Action.