**EXHIBIT L**





**BY EMAIL**

13 September 2021

Collas Crill
P.O. Box 709
Willow House, 2 Floor
Cricket Square
Grand Cayman KY1-1007
Cayman Islands

Our Ref: CW/NDbt/171091

**RECEIVED FROM WALKERS**

Name: ALEX SOLOMON

Company: CIMA

Date: 14/09/21

Time: 9:55

Signature: [signed]

**Attention: Stephen Leontsinis**

Dear Sirs

**RE: HIGHLAND CAPITAL LP**

As you know, we are instructed and act on behalf of Highland CDO Opportunity Master Fund, LP (the "Insured"). We write in response to your letter of 15 July 2021, which purports to respond to our letter of 2 July 2021 regarding Sentinel Reinsurance, Ltd. ("Sentinel") and the Legal Liability Insurance Policy (the "Policy") issued by Sentinel in favor of the Insured, among others, on 1 August 2017. The 15 July letter also posed a series of questions to the Insured, which you assert must be answered to assist Sentinel's newly-appointed directors in their due diligence of the Insured's claim under the Policy.

Before turning to your inquiries, we continue to be surprised by the circumstances surrounding the mass resignation of Sentinel's former directors (the "Former Directors") and their replacement with a slate of new directors (the "Replacement Directors") to whom you, as attorneys, now report.

Also of concern is the Replacement Directors' apparent ignorance of the Policy, including the circumstances surrounding its issuance, and Sentinel's operations. This ignorance compounds the questions surrounding the Former Directors' mass resignation as good corporate governance practice and compliance with their duties to Sentinel would mandate an orderly transition between the Former Directors and the Replacement Directors. The Replacement Directors' claimed lack of basic knowledge concerning Sentinel and the Policy begs the question of whether the Former Directors, in a complete abdication of their duties, failed to (i) provide the Replacement Directors with any information concerning Sentinel and the Policy and (ii) assist in an orderly transition of leadership.

Under the circumstances, we are compelled to remind you of the background to the Insured's demand on the Policy and the structure and management of Sentinel.

**Background to the Demand**

By letter addressed to Sentinel, dated 19 March 2021, James P. Seery, Jr., acting as the authorized signatory for the Insured, made a formal demand (the "Demand") for coverage under the Policy.

Having received no response, on 28 April 2021, Mr. Seery sent a follow-up demand letter (the "Follow-Up Demand") to each of the Former Directors (to wit, Mathew DiOrio, Daniel Austin,

**Walkers**

190 Elgin Avenue, George Town
Grand Cayman KY1-9001, Cayman Islands

25278854.1 H3771.171091     T +1 345 949 0100  F +1 345 949 7886  www.walkersglobal.com

With effect from 1 July 2021, Walkers (Cayman) has converted to Walkers (Cayman) LLP but will continue to trade as Walkers.

**WALKERS**

Page 2

and Jan Neveril) and representatives of Beecher Carlson Cayman, Ltd., Sentinel's insurance manager. No response was received to this correspondence.

On 24 May 2021, we sent a letter to each of the Former Directors, their employers (if applicable), and Beecher Carlson Cayman, Ltd., demanding within five working days, *inter alia*, an acknowledgement of receipt of the Demand, the Follow-Up Demand, and an acknowledgement of coverage under the Policy.

By letter dated 26 May 2021 – two months after the Demand and one month after the Follow-Up Demand – you responded. Your 26 May letter claimed that only the Follow-Up Demand was received but that the Demand was not.

Remarkably, in your 26 May letter, you disclosed that Sentinel's entire board (the "Board") resigned just days before the Follow-Up Demand was received, and, pursuant to an application submitted to the Cayman Islands Monetary Authority ("CIMA") on 23 April 2021 and approved by CIMA on 25 May 2021, the Replacement Directors were appointed.

Your 26 May letter also asserted that the Former Directors were unaware of the Demand and that Sentinel did not learn of the Demand until after their resignation.

**Background to Sentinel and the Policy**

Sentinel is a Class B insurer licensed and regulated by CIMA under license number 642423 issued by CIMA on 23 January 2013.

As disclosed in our 2 July letter, we understand that Sentinel is ultimately owned, through a series of Cayman Island holding companies, by James Dondero and Scott Ellington. Mr. Dondero is the founder and former president and chief executive officer of Highland Capital Management, L.P. ("HCMLP"). Mr. Ellington is HCMLP's former general counsel.

Mr. Dondero was removed from his control positions at HCMLP on 9 January 2020 pursuant to an order entered by the U.S. Bankruptcy Court for the Northern District of Texas, Dallas Division (The "Bankruptcy Court"), and was asked to resign from all positions at HCMLP in October 2020 on account of actions he took that were adverse to HCMLP. Mr. Ellington was terminated for cause in January 2021 for actions he took that were adverse to HCMLP.

We also understand that:[1]

(a) Mr. Ellington has acted as Sentinel's representative in prior discussions with CIMA and was instrumental in securing and maintaining Sentinel's registration with CIMA. Mr. Ellington has also been directly involved in the management and oversight of Sentinel's business.

---

[1] On 31 March 2021, UBS filed a proceeding in the Bankruptcy Court against HCMLP, which among other things, sought to enjoin HCMLP from making any distributions, either directly or indirectly, to Sentinel. Adv. Proc. No. 21-03020-sgj (Bankr. N.D. Tex. Mar. 31, 2021) (the "UBS Adversary"). In connection with the UBS Adversary, UBS deposed Messrs. Ellington, Leventon, and DiOrio, among others. The following information comes from such sworn deposition testimony.

25278854.1 H3771.171091

(b)     Messrs. Dondero and Ellington, among others, caused Sentinel to issue the Policy in August 2017.

(c)     At all relevant times, Mr. Ellington was primarily responsible for directing the Insured's response to the UBS Action[2] and interacting with UBS'[3] counsel at Kirkland & Ellis LLP and Latham & Watkins LLP. Mr. Ellington reported directly to Mr. Dondero with respect to all matters, including the UBS Action, and Mr. Dondero was ultimately responsible for directing the Insured's conduct with respect to the UBS Action.

(d)     From time to time, Isaac Leventon, HCMLP's former assistant general counsel, assisted Mr. Ellington in managing the UBS Action. Mr. Leventon was also terminated for cause in January 2021 for actions he took that were adverse to HCMLP.

(e)     Mr. DiOrio, one of the Former Directors, was an employee of, and reported directly to, Mr. Ellington. Mr. DiOrio performed services on Sentinel's behalf using his @sasmgmt email account, including monitoring and assisting in the monetization of Sentinel's assets. The @sasmgmt account was maintained by a company called SAS Management. SAS Management is directly or indirectly owned and controlled by Messrs. Dondero and Ellington and is, on information and belief, an indirect owner of Sentinel.

(f)     Mr. DiOrio routinely received updates on the UBS Action from Mr. Leventon, among others.

(g)     Messrs. Dondero, Ellington, and DiOrio, among others, actively conspired to keep the existence of the Policy hidden from Mr. Seery and the independent directors appointed by the Bankruptcy Court to manage HCMLP. The existence of the Policy was only discovered in or around February 2021 through the diligence of Mr. Seery and the other independent directors.

**15 July Letter**

Against this factual background, we received your letter dated 15 July 2021, which you sent in response to our letter dated 2 July 2021. Our 2 July letter provided you with additional information regarding the Policy and the circumstances surrounding its issuance in 2017. It also posed additional questions to you as Sentinel's counsel. Your 15 July letter does not address any of the questions or concerns raised in our 2 July letter nor does it address the factual background and circumstances against which the Demand was made.

Instead, your letter raises more questions about the good faith of Sentinel and its directors. We believe it is an attempt to evade Sentinel's obligations under the Policy. As to your 15 July letter, we will answer the questions posed.[4]

---

[2] "UBS Action" refers to *UBS Securities LLC and UBS AG London Branch v. Highland Capital Management et al.*, Supreme Court of the State of New York, Cause No. 650097/2009.

[3] "UBS" refers collectively to UBS Securities LLC and UBS AG London Branch.

[4] The following responses are given on behalf of the Insured only. The Insured takes no position as to conduct or actions of any of the other "Defendants."

25278854.1 H3771.171091

**WALKERS**　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 4

First, you ask on whose authority Mr. Seery is asserting a claim under the Policy and his role at the Insured. As an initial matter, Mr. Seery is not asserting a claim under the Policy; rather, the Insured is asserting a claim.[5] The Insured is included on the schedule to the Policy as an insured party and is a defendant in the UBS Action. As you should know, the Insured is a limited partnership organized in the State of Delaware. As a limited partnership, the Insured is managed by its general partner, Highland CDO Opportunity Fund GP, L.P. (the "CDO Fund GP"). CDO Fund GP is, in turn, managed by its general partner, Highland CDO Opportunity Fund GP, LLC ("CDO Fund LLC"). HCMLP is the sole member of CDO Fund LLC and is authorized, by and through its corporate officers, to direct CDO Fund LLC. An organizational chart showing the corporate structure of CDO Fund is attached as **Appendix A**.

Second, your 15 July letter includes a list of numbered questions. These are reprinted below along with our responses.

1.　　Please confirm whether any of the Defendants have appealed (or are intending to appeal) the judgment dated 22 January 2020 by the Hon. Marcy S. Friedman (Judgment). If no appeal was pursued, please explain the basis upon which this decision was taken.

　　**RESPONSE**: The Judgment was entered after the "Phase I" bench trial of certain issues in the UBS Action, which was to be followed by a "Phase II" jury trial of the remaining issues. The Honorable Judge Friedman originally issued her ruling, which formed the basis of the Judgment, in November 2019, which was after HCMLP filed for bankruptcy but while Mr. Dondero still completely controlled HCMLP.

　　Even after Mr. Dondero ceded control in January 2020, Mr. Ellington continued to be responsible for directing the Insured's responses to the UBS Action, including the Judgment. Further, we understand that Mr. DiOrio knew of Mr. Ellington's management of the UBS Action. As such, at all times, Sentinel knew of the Judgment and the decisions being made with respect thereto, including as to whether to appeal the Judgment.

2.　　Please provide details of any defences that were put forward by the Defendants (or any of them) in the UBS Action.

　　**RESPONSE**: The UBS Action has been pending for approximately twelve years and the multitude of pleadings on the docket reflect, *inter alia*, the various defences interposed by the "Defendants." The pleadings on the docket are publicly available for your review.

　　We note that Messrs. Dondero and Ellington were, at all relevant times, responsible for managing the UBS Action and dictating the Defendants' defences. Messrs. Dondero and Ellington own Sentinel and were Mr. DiOrio's supervisors. At all

---

[5] The Policy identifies Paul Lackey as an "Authorized Representative." Mr. Lackey is currently an attorney at Stinson LLP. Mr. Lackey and Stinson represent Mr. Dondero and certain of Mr. Dondero's related and affiliated entities in matters that are directly adverse to HCMLP's interests. Because of his debilitating conflicts, Mr. Lackey cannot fulfill his obligations as "Authorized Representative" through no fault of the Insured. Mr. Lackey has not been replaced as "Authorized Representative" and the role of "Authorized Representative" has been rendered nugatory. Sentinel should not take any instruction from Mr. Lackey.

**WALKERS** Page 5

relevant times, Mr. DiOrio was apprised of the management of the UBS Action. As such, Sentinel has, at all times (both before and after underwriting the Policy), had knowledge of the defences put forward by the Defendants in the UBS Action.

3. Please confirm whether the Judgment is a full and final judgment in the UBS Action as at October 14, 2020.

    **RESPONSE**: The Judgment is a final judgment.

    Sentinel, through Messrs. Dondero, Ellington, and DiOrio, has at all times known of the Judgment and the finality of the Judgment. Because of the active concealment of the Policy by Messrs. Ellington and DiOrio, among others, the Insured was unable to make demand on the Policy until the date of the Demand.

4. We assume that your client (as a Defendant to the UBS Action) became aware of the Judgment on 22 January 2020. Please could you confirm the same by return.

    **RESPONSE**: Sentinel, through Messrs. Dondero, Ellington, and DiOrio, has at all times known of the Judgment. The Insured became aware of the Judgment on or about 22 January 2020. Because of the active concealment of the Policy by Messrs. Ellington and DiOrio, among others, the Insured was unable to make demand on the Policy until the date of the Demand.

5. Please provide details of any payments that any of the Defendants have made towards the satisfaction of the Judgment, including the dates on which such payments were made.

    **RESPONSE**: As far as we are aware the Insured has made no payments towards satisfaction of the Judgment to date.

Finally, you assert the Replacement Directors have no knowledge of the allegations set forth in the Pleadings supplied to you as enclosures to our 2 July letter and present additional questions regarding the Policy, as follows:

1. You state that the face value of any assets alleged to have been transferred is US$300 million and that the market of the same assets is alleged to be US$100 million. Please could you provide details on how these respective valuations have been arrived at.

    **RESPONSE**: These statements are based on the schedule of assets annexed to the Policy. Although Sentinel has a copy of the Policy, we have attached the Policy to this letter as **Appendix B**.

    We also refer you to a Memorandum, prepared by HCMLP's tax department, which ascribes a fair market value of approximately US$100 million to the transferred assets. A copy of the Memorandum is attached hereto as **Appendix C**.

    Finally, we believe Sentinel has substantial information concerning the market value of the assets transferred to Sentinel. For example, the endorsements to the Policy attached to your 15 July letter were necessitated by a re-valuation of such assets.

**WALKERS**  Page 6

2.  Please provide by return a list of assets that are alleged to have been transferred.

    **RESPONSE**: See response to prior question.

We trust that the above will allow Sentinel to provide a conclusive response to the Demand, which is hereby reiterated.

We also remain sceptical that the mass resignation of Sentinel's directors one month after the Demand was sent was a coincidence. We reject your suggestion that it was and again ask for an explanation of these curious circumstances.

We also request an explanation of the discrepancy regarding the date of Mr. DiOrio's resignation. According to your 15 July letter, Mr. DiOrio did not actually resign until 25 June 2021 and was replaced by Mr. de Jager on 30 June 2021.

Finally, the 15 July letter encloses copies of two putative endorsements to the Policy which, if effective, purport to reduce the limit of the Policy from US$100 million to US$91 million. Your letter offers no explanation of the provenance of these documents or how you came to possess them. We ask that you reply with this information as well as any other information surrounding the genesis of these putative endorsements and how they came into your possession.

The Insured hereby reserves all rights and remedies based on Sentinel's failure to honor the Policy and remit payment thereunder as demanded in the Demand and the Follow-Up Demand.

We look forward to your response.

Yours faithfully

*[signature]*

WALKERS
colette.wilkins@walkersglobal.com
1 345 914 4215

CC: CIMA

25278854.1 H3771.171091