**EXHIBIT N**



**PRIVATE AND CONFIDENTIAL**
Walkers
190 Elgin Avenue
George Town
Grand Cayman KY1-9001
Cayman Islands

**Attn: Colette Wilkins**

Your Ref

Our Ref    SL/50001151/0001

Doc.    10869365.0

24 September 2021

**BY EMAIL**

Dear Madam

**RE: HIGHLAND CAPITAL LP**

We refer to your letter dated 13 September 2021 in relation to the adversary proceedings filed by UBS Securities LLC and UBS AG London Branch (collectively **"UBS"**) in the Bankruptcy Court against Highland Capital Management (**"HCM"**) (the **"UBS Adversary Proceedings"**).

The independent directors of Sentinel (**"Directors"**) have been working diligently to get their arms around the assets of Sentinel whilst managing the various requests and issues arising out of US court proceedings to which Sentinel is not a party, including the UBS Adversary Proceedings, the existence of which Sentinel has only recently become aware of.

The investigations that the Directors are conducting relate to the nature and extent of Sentinel's assets, including those assets which were transferred to Sentinel under the Purchase Agreement dated 7 August 2017 (**"Purchase Agreement"**) (the **"Transferred Assets"**). As previously stated, the Directors have only been appointed recently and have therefore come to these matters afresh and as such have been trying to open channels of communication with various parties in order to secure the Transferred Assets for the benefit of all parties. None of the Directors have ever had any direct communications with Mr Ellington or Mr Dondero. Despite the Director's desires to find cooperative ways of engaging with the relevant parties in their attempt to secure Sentinel's assets, they have not opened channels of communications with either of Mr Ellington or Mr Dondero in order to allow Sentinel to remain truly independent, in light of the allegations being made in the US Courts.

With regards to Mr DiOrio, the Directors did contact Mr DiOrio to gather information in relation to Sentinel's assets (including the Transferred Assets), but received a response from Mr DiOrio's legal representatives, Baker & McKenzie, requesting that Sentinel desist from contacting their client directly. Baker & McKenzie told this firm that Mr DiOrio is no longer in possession of his records as a result of the termination of his employment with HCM. As a result of the aforementioned, the Directors have therefore been conducting their own investigations in order to obtain the requisite information and records.

BVI // Cayman // Guernsey // Jersey // London    www.collascrill.com

Floor 2, Willow House, Cricket Square, PO Box 709, Grand Cayman, Cayman Islands, KY1-1107
T: +1 345 949 4544  F: + 1 345 949 8460  E: cayman@collascrill.com
A Cayman Partnership.  A list of partners is available at the above address.



It is as part of that investigation that the Directors wrote to Mr James P. Seery Jr on 30 August 2021. Sentinel was not aware that Mr Seery Jr had separate legal representation, nor was the letter intended to raise issues of a legal nature. Nevertheless, we will be sure to inform our client that any communication with respect to this matter be addressed to your firm going forward.

The intention of the letter was to open channels of communication with Mr Seery Jr as it is the Directors' understanding that he was responsible for keeping up to date records and an inventory of Sentinel's assets to which HCM acts as manager. The letter attached a Schedule of assets owned by Sentinel and with respect to which the Directors asked the following questions:

1. Confirmation that Sentinel is listed as the current, registered owner of the asset.
2. If Sentinel is not registered as the current owner of the asset, please provide the appropriate documentation to perfect the re-registration of those assets into the name of Sentinel.
3. All valuations, NAVs and investor communications in respect of each of the assets.
4. The timing and amount of anticipated distributions from each of the assets, going forward.

The letter also requested confirmation that the US$32.8 million receivable by Highland Multi Strategy Credit Fund is "due, owing and payable" because Sentinel does not currently hold that information.

The Directors are generally operating in an information vacuum – they were not aware of the UBS Adversary Proceedings or the TRO. Until receipt of your letter Sentinel had never seen a copy of the TRO. We have requested that Sentinel's US counsel check the appropriate docket and we are told that the complaint in the UBS Adversary Proceedings is sealed, as is the Motion in relation to the TRO. To the extent that Walkers is able to provide copies of the underlying documents, we would be grateful for all assistance you can afford the Directors. To the extent that the US court documents are protected by a confidentiality agreement, we and Sentinel would be more than happy to enter into similar agreements in order to be able to obtain the necessary information in order for Sentinel to make informed decisions as to a way forward and to appropriately protect the Transferred Assets.

Given the current lack of information with respect to the UBS Adversary Proceedings and the TRO, Sentinel is not in a position to comment on those issues, or indeed intervene in the UBS Adversary Proceedings. The fact that Sentinel is currently not in a position to intervene in the UBS Adversary Proceedings or the TRO cannot be taken as *"a waiver of any objection to the cessation of distributions to Sentinel by HCMS or with respect to any of the other assets subject to the TRO"*.  Furthermore, any suggestion of *"lack of action from Sentinel"* is misconceived. Since their appointments, the Directors have been working towards ascertaining the nature and extent of Sentinel's assets as well as securing them and, will continue to do so. Any assistance that your firm or your client can provide might allow Sentinel to consider whether intervention in the UBS Adversary Proceedings and the TRO is necessary or appropriate and we ask again that you provide us with the relevant documentation in order to make such determination.

Sentinel's Directors wish to reiterate that they are aware of the allegations made against Sentinel and its UBOs, as well as what appears to have been very acrimonious litigation, all of which happened prior to the Directors' respective appointments.  Given the lack of information and/or possible discrepancies in the information reviewed to date, the Directors are conducting



investigations to both understand the financial position of Sentinel and to secure Sentinel's assets for the benefit of all parties involved.  There is no intention to deal with any of the Transferred Assets, until such time as the broader issues have been satisfactorily resolved. In the interim, the Directors are of the view that the Transferred Assets must be preserved.  As stated above, the questions sent to your client were part of a fact-finding exercise by Sentinel – to determine where its assets (whether they are part of the Transferred Assets or not) currently reside, who has control of them, what likely value they have, and the likelihood of recovery on those assets.  If it is HCM that has visibility into any of the assets and/or control over them, that is all very useful information for Sentinel to know, even if HCM cannot currently deal with those assets due to the imposition of the TRO.  If they are assets that HCM does not deal with (or refuses to provide information on), then the Directors will have to continue their investigations elsewhere to establish what has happened to those assets and bring them under Sentinel's control.  We hope that Sentinel's investigations and its desire to 'hold the ring' and secure all of its assets is seen to be of benefit to all parities, including your clients.

We understand that there are employees within HCM that maintain records for a number of the assets that were listed in the Schedule previously provided.  The Directors would suggest that the most efficient way forward would be a call between themselves and the most appropriate person at HCM for an initial and high level discussion on what information is and isn't available.  This can be done with or without counsel present (in order to save on costs).  We would be grateful if you could assist us in setting up such a call between our clients to move matters forward. If it then becomes necessary for the Directors to ask more detailed questions, we will be sure to direct those questions through you.

We look forward to hearing from you.


Yours faithfully

*Collas Crill*

**COLLAS CRILL**

Direct Tel: +1 345 914 9605
Email: Stephen.leontsinis@collascrill.com

Encls.

With a copy to:
Cayman Islands Monetary Authority
Attn: Ruwan Jayasekera