PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Robert J. Feinstein (NY Bar No. 1767805) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX  75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[1]<br><br>Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| UBS SECURITIES LLC AND UBS AG LONDON BRANCH,<br><br>Plaintiffs,<br><br>vs.<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Defendant. | Adversary Proceeding No.<br><br>21-03020 |

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357).  The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

**HIGHLAND CAPITAL MANAGEMENT, L.P.'S MOTION TO
WITHDRAW ITS ANSWER AND CONSENT TO JUDGMENT
FOR PERMANENT INJUNCTIVE RELIEF**

Highland Capital Management, L.P., the reorganized debtor and defendant ("Defendant" or "Highland") in the above-captioned adversary proceeding (the "Adversary Proceeding") in the above-captioned chapter 11 case (the "Bankruptcy Case"), pursuant to Federal Rules of Civil Procedure 11 and 15, made applicable to the Adversary Proceeding by Federal Rules of Bankruptcy Procedure 9011 and 7015, hereby submits *Highland Capital Management L.P.'s Motion to Withdraw its Answer and Consent to Judgment for Permanent Injunctive Relief* (the "Motion"). In support of its Motion, Highland respectfully states as follows:

**PRELIMINARY STATEMENT**[2]

1. In or around February 2021, Highland, through the diligence of the independent directors appointed by this Court in January 2020 (the "Independent Directors"), discovered that, in August 2017, Highland's senior management and certain of its employees had caused Highland CDO Opportunity Master Fund, L.P. ("CDO Fund") and Highland Special Opportunities Holding Company ("SOHC," and together with CDO Fund, the "Funds"), among others, to transfer in excess of $300 million in face-amount of cash and securities to Sentinel Reinsurance, Ltd. ("Sentinel"). The transfers were ostensibly made to pay a $25 million "premium" on a $100 million "after-the-event" insurance policy issued by Sentinel (the "Policy") that purportedly insured defense costs and judgments incurred in connection with a lawsuit brought by UBS Securities LLC and UBS AG London Branch (together, "UBS") against the Funds and Highland in New York state court. Former management and employees of Highland, including in-house

---

[2] Capitalized terms not defined in this Preliminary Statement shall have the meanings ascribed to them below.

attorneys, purposefully hid the transfers and the Policy from the Independent Directors causing significant damage to Highland.

2. Promptly after discovering the transfers to Sentinel, Highland disclosed them to UBS and was consequently forced to renegotiate its settlement of UBS's claim against Highland's estate—a settlement ultimately approved by this Court.

3. UBS subsequently commenced the Adversary Proceeding against Highland seeking an injunction prohibiting Highland from making, or causing to be made, transfers to the Sentinel Entities. Although Highland consented to the relief requested on a temporary basis, the underlying facts concerning the Transferred Assets were largely in the hands and memories of certain of Highland's former employees and third parties, such as Sentinel and its accounting firm. Consequently, Highland believed a fully-developed factual record was required before it could determine whether permanent injunctive relief was justified.

4. Now, after having reviewed the factual discovery conducted in the Adversary Proceeding, as well as its own books and records, Highland has concluded that, subject only to further Court order, it is compelled to withdraw its Answer and consent to the permanent injunctive relief sought by UBS. Specifically, Highland has concluded that (a) its defenses are not warranted by existing law or supported by a non-frivolous argument for extending, modifying, or reversing existing law, or establishing new law, (b) after having a reasonable opportunity for further investigation and discovery, there is no evidentiary support to oppose the relief requested, and (c) certain of Highland's prior denials in its Answer are no longer reasonably based on a lack of information.

5. Based on the foregoing, including events that occurred after Highland served its Answer, Highland (a) moves for leave to withdraw its Answer and (b) consents to the entry of a

judgment (the "Judgment") in the form annexed hereto as **Exhibit A** that provides, among other things, that:

> Subject to any further order of the Court, Highland is hereby permanently enjoined from making, or allowing funds under its control (including but not limited to Multi-Strat or CDO Fund) to make, any payments or further transfers to the Sentinel Entities (or any entities known by Highland to be transferees of the Sentinel Entities) consisting of, resulting from, or relating to the Transferred Assets pending a decision of a court of competent jurisdiction as to whether the Transferred Assets were fraudulently transferred to or for the benefit of Sentinel, Dondero, Ellington, and/or any of their affiliates or as part of a fraudulent scheme.

*See* Docket No. 3 (*Original Complaint for Injunctive Relief*) ¶ 6.

6. Entry of an order granting the relief requested herein will conserve the resources of the parties to the Adversary Proceeding and third-parties, and the Court and is justified based on the factual record developed in this Action.

## STATEMENT OF FACTS

**A. The Bankruptcy Case**

7. On October 16, 2019 (the "Petition Date"), Highland filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, Case No. 19-12239 (CSS) (the "Delaware Court").

8. On December 4, 2019, the Delaware Court entered an order transferring venue of Highland's bankruptcy case to the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "Bankruptcy Court") [Bankr. Docket No. 186].[3]

9. On January 22, 2021, Highland filed its *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* [Bankr. Docket No. 1808] (the "Plan").

10. On February 22, 2021, the Bankruptcy Court entered the *Order Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and*

---

[3] "Bankr. Docket No. ___" refers to the docket maintained by the Bankruptcy Court in Case No. 19-34054.

*(ii) Granting Related Relief* [Bankr. Docket No. 1943] (the "Confirmation Order") which confirmed Highland's Plan.

11.  On August 11, 2021, the Plan became effective [Bankr. Docket No. 2700].

**B.   The Adversary Proceeding**

12.  On March 31, 2021, UBS commenced the Adversary Proceeding by filing its *Original Complaint for Injunctive Relief* (the "Complaint") against Highland [Docket No. 3].[4]

13.  In its Complaint, UBS alleged that James Dondero (Highland's founder and former President and CEO) and certain former Highland employees fraudulently transferred assets worth hundreds of millions of dollars from funds currently or previously owned, controlled, or managed by Highland to a Cayman Islands-based entity, Sentinel, that is owned and controlled by Mr. Dondero and Scott Ellington (Highland's former general counsel), in anticipation of UBS obtaining a judgment against those funds in New York. Complaint ¶ 1.

14.  In the Adversary Proceeding, UBS seeks a permanent injunction preventing Highland from allowing funds under its management or control to make payments to the Sentinel Entities pending a judicial determination as to whether the Transferred Assets were fraudulently transferred to, or for the benefit of, Sentinel, Mr. Dondero, Mr. Ellington, and/or any of their affiliates or as part of a fraudulent transfer scheme (the "Prohibited Conduct"). Complaint ¶ 6.

15.  On the same day it filed its Complaint, UBS also moved for a temporary restraining order enjoining Highland from engaging in any Prohibited Conduct. [Docket No. 4].

16.  On April 9, 2021, the Court entered an *Order Granting Plaintiff's Motion for a Temporary Restraining Order* [Docket No. 21] pursuant to which Highland was temporarily

---

[4] Refers to the docket maintained in the Adversary Proceeding.

enjoined from engaging in the Prohibited Conduct until the Court decided UBS's request for a preliminary injunction.

17. On June 2, 2021, Highland filed its *Answer to Complaint* [Docket No. 84] (the "Answer") in which it denied certain material allegations on the ground that it did not have knowledge or information sufficient to form a belief as to the matters asserted.

18. Indeed, Highland's lack of knowledge prevented it from consenting to the imposition of permanent injunctive relief at the time the Adversary Proceeding was filed. As Highland's counsel explained during a hearing on a related matter, many of the facts alleged were within the exclusive purview of Mr. Dondero, Mr. Ellington, and other former Highland employees and third parties. Accordingly, Highland sought to determine whether a full record would support the imposition of permanent injunctive relief.[5]

19. During these proceedings, UBS sought documents from and/or deposed the following witnesses (collectively, the "Third Party Discovery"): (a) Clifford Stoops; (b) Jeremy Ringheimer; (c) Carter Chism; (d) James Dondero; (e) Shawn Raver; (f) Matthew DiOrio; (g) Scott Ellington; (h) Brian Fuentes; (i) Isaac Leventon; (j) Mary Kathryn Lucas (nee Irving); (k) Jean Paul Sevilla; and (l) Beecher Carlson Insurance Services, LLC.

20. In addition, UBS served broad discovery requests on Highland. In response, Highland searched for, and produced, a large volume of documents to UBS and continued to

---

[5] If Sentinel, or Mr. Dondero, or Mr. Ellington believed that a good faith, factual basis existed to oppose the relief sought by UBS, they could have and should have intervened in this Action. Indeed, Highland invited them to do so almost a year ago. *See* Transcript of June 24, 2021 hearing at 48:7-18 ("[T]o the extent that anybody is critical of how the Debtor is defending this litigation brought by UBS, Sentinel is free to intervene. In fact, Sentinel's two owners are represented here today. Mr. Dondero owns the majority of it. He's on the line. And Mr. Ellington owns the rest of it, and he's represented by counsel. So if Sentinel is -- wants to, you know, enter this litigation, the Debtor certainly has no objection. . . . [T]hey've been resisting service of process on subpoenas. I don't know whether they'll resist being named in the lawsuit. But they didn't on their own seek to intervene, which we kind of expected they would.").

5

investigate the underlying facts so it could respond to extensive sets of interrogatories and requests for admission.

21. From Highland's perspective, the Third Party Discovery and the information it produced in discovery shed considerable light on the allegations for which Highland previously lacked knowledge and established or confirmed the following facts, among others:

- Former employees of Highland caused the Transferred Assets to be conveyed to Sentinel in August 2017;

- Highland caused CDO Fund, among others, to transfer assets to Sentinel both before and during the bankruptcy without the knowledge and/or approval of the Independent Board;

- Mr. Dondero and Mr. Ellington indirectly own and control Sentinel;

- The Transferred Assets conveyed to Sentinel had a face value of more than $300 million and a market value at the time of transfer of over $100 million;

- Despite having a face amount of more than $300 million and a market value in excess of $100 million, the Transferred Assets were used to pay a $25 million premium on the $100 million Policy—an "after the event" policy issued by Sentinel;

- The Policy was ostensibly issued to satisfy any judgments in favor of UBS, plus costs of defending against UBS (although Sentinel has refused to pay on the Policy notwithstanding demand having been made);

- None of the former Highland employees subject to the Third Party Discovery ever disclosed the existence of the Policy to Highland or its independent management and, in fact, purposefully hid the existence of the Policy and the transfers from the Independent Board;

- Mr. Ellington and Mr. Leventon told the Independent Board that information on CDO Fund and SOHC assets was limited or did not exist, and it is now clear that those statements were untrue and appear to have been designed to hide the Policy and defraud Highland and its affiliates of the benefits of the Policy;

- In reliance on the information provided by Mr. Ellington and Mr. Leventon, Highland told UBS that information on CDO Fund and SOHC assets was limited or did not exist, statements that subsequently proved to be untrue;

- Mr. Ellington and Mr. Leventon withheld evidence from the Independent Board concerning the Policy and the conveyance of the Transferred Assets to Sentinel

6

and were assisted in doing so by, among others, Highland legal department employee Matthew DiOrio who was an undisclosed director of Sentinel before and during the bankruptcy case; and

- Mr. Ellington, Mr. Leventon, and Mr. DiOrio lied to the Independent Board and caused them to make misrepresentations to UBS and the Court.

22. Based on the foregoing, Highland has concluded that (a) its defenses are not warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or establishing new law, (b) after having a reasonable opportunity for further investigation and discovery, there is no evidentiary basis to oppose the relief requested, and (c) certain of Highland's prior denials in its Answer are no longer reasonably based on a lack of information.

## CONCLUSION

23. For the reasons set forth herein, Highland respectfully requests that the Court (a) grant Highland's Motion, (b) enter without opposition the Judgment annexed as **Exhibit A** hereto, and (c) grant such other and further relief that the Court deems proper and just under the circumstances.

*[REMAINDER OF PAGE INTENTIONALLY BLANK]*

| | |
|---|---|
| Dated: June 8, 2022 | **PACHULSKI STANG ZIEHL & JONES LLP**<br>Jeffrey N. Pomerantz (CA Bar No. 143717)<br>Robert J. Feinstein (NY Bar No. 1767805)<br>John A. Morris (NY Bar No. 266326)<br>Gregory V. Demo (NY Bar No. 5371992)<br>10100 Santa Monica Blvd., 13th Floor<br>Los Angeles, CA 90067<br>Telephone: (310) 277-6910<br>Facsimile: (310) 201-0760<br>Email: jpomerantz@pszjlaw.com<br>          rfeinstein@pszjlaw.com<br>          jmorris@pszjlaw.com<br>          gdemo@pszjlaw.com<br><br>-and-<br><br>**HAYWARD PLLC**<br><br>*/s/ Melissa S. Hayward*<br>Melissa S. Hayward (Texas Bar No. 24044908)<br>Zachery Z. Annable (Texas Bar No. 24053075)<br>10501 N. Central Expy, Ste. 106<br>Dallas, Texas 75231<br>Tel: (972) 755-7100<br>Fax: (972) 755-7110<br>Email: MHayward@HaywardFirm.com<br>          ZAnnable@HaywardFirm.com<br><br>*Counsel for Highland Capital Management, L.P.* |

**EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[6]<br><br>Debtor. | § Chapter 11<br>§<br>§ Case No. 19-34054-sgj11<br>§ |
| UBS SECURITIES LLC AND UBS AG LONDON BRANCH,<br><br>Plaintiffs,<br><br>vs.<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Defendant. | § Adversary Proceeding No.<br>§<br>§ No. 20-03020-sgj<br>§ |

**ORDER AND JUDGMENT GRANTING PLAINTIFFS' REQUEST FOR A
PERMANENT INJUNCTION AGAINST HIGHLAND CAPITAL MANAGEMENT, L.P.**

---

[6] The Debtor's last four digits of its taxpayer identification number are (6725). The headquarters and service address for the above-captioned Debtor is 300 Crescent Court, Suite 700, Dallas, TX 75201.

This matter having come before the Court on *Highland Capital Management, L.P.'s Motion to Withdraw its Answer and Consent to Judgment for Permanent Injunctive Relief* [Adv. Pro. Docket No. __] (the "Motion"), filed by Highland Capital Management, L.P. ("Highland"), the reorganized debtor and defendant in the above-captioned adversary proceeding (the "Adversary Proceeding") in the above-captioned chapter 11 case (the "Bankruptcy Case"), and this Court having considered (a) the Motion and (b) the *Declaration of James P. Seery, Jr. in Support of Highland Capital Management, L.P.'s Motion to Withdraw its Answer and Consent to Judgment for the Permanent Injunctive Relief Sought by Plaintiff* (the "Seery Declaration" and together with the Motion, "Highland's Papers"), and (c) all prior proceedings relating to the Adversary Proceeding; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that injunctive relief is warranted under sections 105(a) and 362(a) of the Bankruptcy Code; and this Court having found that the Highland's notice of the Motion and opportunity for a hearing on the Motion were appropriate and that no other notice need be provided; and this Court having determined that the legal and factual bases set forth in the Highland's Papers establish good cause for the relief granted herein, and that (1) such relief is necessary to avoid immediate and irreparable harm to UBS Securities LLC and UBS AG London Branch (together, "UBS"), (2) UBS is likely to succeed on the merits of its underlying claim for injunctive relief; (3) the balance of the equities tip in favor of UBS; and (4) such relief serves the public interest; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor and for the reasons set forth in the record on this Motion, it is **HEREBY ORDERED THAT**:

1. The Motion is **GRANTED** as set forth herein.

2. Highland's *Answer to Complaint* [Docket No. 84] is deemed **WITHDRAWN**.

3. Subject to any further order of this Court, Highland is hereby permanently **ENJOINED AND RESTRAINED** from making or allowing funds under its control (including but not limited to Multi-Strat or CDO Fund) to make any payments or further transfers to the Sentinel Entities (or any entities known by Highland to be transferees of the Sentinel Entities) consisting of, resulting from, or relating to the Transferred Assets pending a decision of a court of competent jurisdiction as to whether the Transferred Assets were fraudulently transferred to or for the benefit of Sentinel, Dondero, Ellington, and/or any of their affiliates or as part of a fraudulent scheme

4. This Order shall remain in effect unless otherwise ordered by the Court.

5. All objections to the Motion are overruled in their entirety.

6. The Court shall retain exclusive jurisdiction with respect to all matters arising from or relating to the implementation, interpretation, and enforcement of this Order.

### ### END OF ORDER ###