PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
Robert J. Feinstein (NY Bar No. 1767805) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA  90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward (Texas Bar No. 24044908)
Zachery Z. Annable (Texas Bar No. 24053075)
10501 N. Central Expy, Ste. 106
Dallas, TX  75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Highland Capital Management, L.P.*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | |
|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[1]<br><br>　　　　　　　　Reorganized Debtor. | Chapter 11<br><br>Case No. 19-34054-sgj11 |
| UBS SECURITIES LLC AND UBS AG LONDON BRANCH,<br><br>　　　　　　　　Plaintiffs,<br><br>vs.<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>　　　　　　　　Defendant. | Adversary Proceeding No.<br><br>21-03020 |

---

[1] The Reorganized Debtor's last four digits of its taxpayer identification number are (8357).  The headquarters and service address for the above-captioned Reorganized Debtor is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

**DECLARATION OF MR. JAMES P. SEERY, JR. IN SUPPORT OF HIGHLAND CAPITAL MANAGEMENT, L.P.'S MOTION TO WITHDRAW ITS ANSWER AND CONSENT TO JUDGMENT FOR PERMANENT INJUNCTIVE RELIEF**

I, James P. Seery, Jr., pursuant to 28 U.S.C. § 1746(a), declare under penalty of perjury as follows:

1. I am the Chief Executive Officer of Highland Capital Management, L.P. ("Highland"), and I submit this Declaration in support of *Highland Capital Management, L.P.'s Motion to Withdraw its Answer and Consent to Judgment for Permanent Injunctive Relief* (the "Motion"), being filed concurrently with this Declaration.

2. Unless stated otherwise, this Declaration is based on my personal knowledge, my review of certain documents and transcripts produced or adduced in the above-referenced adversary proceeding (the "Adversary Proceeding"), and my discussion with Highland's counsel. If called to testify at a trial or a hearing, I could and would testify to the facts and conclusions set forth herein.[2]

**A. The Independent Board Discovers Potentially Fraudulent Transfers and Discloses the Same to UBS**

3. In early 2021, Highland's then-Independent Directors and others working under their direction, discovered that, in August 2017, Highland's senior management and certain employees in its legal department caused Highland CDO Opportunity Master Fund, L.P. ("CDO Fund") and Highland Special Opportunities Holding Company ("SOHC," and together with CDO Fund, the "Funds"), among others, to transfer in excess of $300 million in face-amount of cash and securities to Sentinel Reinsurance, Ltd. ("Sentinel").

---

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

4. The transfers were ostensibly made to pay a $25 million "premium" on a $100 million "after-the-event" insurance policy issued by Sentinel (the "<u>Policy</u>") that purportedly insured solely to cover (a) defense costs incurred in connection with a lawsuit brought by UBS against the Funds and Highland in New York state court and (b) any judgments entered in that suit.

5. By the time the transfer was discovered, Highland had engaged in extensive and expensive litigation with UBS and had recently announced an agreement in principle to resolve UBS's claims against the Highland bankruptcy estate. That settlement was the product of countless hours of research, strategic planning, litigation, mediation, and negotiation. Nevertheless, Highland promptly disclosed the transfers to UBS and was later forced to renegotiate its settlement of UBS's claims, a revised settlement that the Court subsequently approved. The wasteful, misdirected litigation and its resolution caused material damages to Highland.

**B.     UBS Commences the Adversary Proceeding for Injunctive Relief**

6. On March 31, 2021, before Highland's settlement with UBS was even approved, UBS commenced the Adversary Proceeding by filing its *Original Complaint for Injunctive Relief* (the "<u>Complaint</u>") against Highland [Docket No. 3].

7. In its Complaint, UBS alleged that James Dondero (Highland's founder and former President and CEO) and certain former Highland employees fraudulently transferred assets worth hundreds of millions of dollars from funds currently or previously owned, controlled, or managed by Highland to a Cayman Islands-based entity, Sentinel, that is owned and controlled by Mr. Dondero and Scott Ellington (Highland's former general counsel), in anticipation of UBS obtaining a judgment against those funds in New York. Complaint ¶ 1.

8. In the Adversary Proceeding, UBS seeks an injunction preventing Highland from allowing funds under its management or control to make payments to the Sentinel Entities pending a judicial determination as to whether the Transferred Assets were fraudulently transferred to, or

for the benefit of, Sentinel, Mr. Dondero, Mr. Ellington, and/or any of their affiliates or as part of a fraudulent transfer scheme (the "Prohibited Conduct"). Complaint ¶ 6.

9. On the same day it filed its Complaint, UBS also moved for a temporary restraining order enjoining Highland from engaging in any Prohibited Conduct. [Docket No. 4].

10. On April 9, 2021, the Court entered an *Order Granting Plaintiff's Motion for a Temporary Restraining Order* [Docket No. 21] pursuant to which Highland was temporarily enjoined from engaging in the Prohibited Conduct until the Court decided UBS's request for a preliminary injunction.

11. On June 2, 2021, Highland filed its *Answer to Complaint* [Docket No. 84] (the "Answer") in which it denied certain material allegations on the ground that it did not have knowledge or information sufficient to form a belief as to the matters asserted.

12. Indeed, because we lacked personal knowledge of all relevant facts, Highland could not consent to the imposition of permanent injunctive relief at the time the Adversary Proceeding was filed. As Highland's counsel explained during a hearing on a related matter, many of the facts alleged were within the exclusive purview of Mr. Dondero, Mr. Ellington, and other former Highland employees and third parties. Accordingly, Highland sought to determine whether a full record would support the imposition of permanent injunctive relief.

C. **Discovery Subsequently Shows that No Good Faith Basis Exists to Oppose the Relief Requested**

13. During these proceedings, UBS sought substantial discovery from Highland and numerous third-parties. As a result of its efforts, UBS obtained documents from and/or deposed the following witnesses (collectively, the "Third-Party Discovery"): (i) Clifford Stoops; (ii) Jeremy Ringheimer; (iii) Carter Chism; (iv) James Dondero; (v) Shawn Raver; (vi) Matthew

DiOrio; (vii) Scott Ellington; (viii) Brian Fuentes; (ix) Isaac Leventon; (x) Mary Kathryn Lucas (nee Irving); (xi) Jean Paul Sevilla; and (xii) Beecher Carlson Insurance Services, LLC.

14. In addition, in response to UBS's discovery requests tendered in the Adversary Proceeding, Highland searched for, and produced, a large volume of documents to UBS and continued to investigate the underlying facts so it could respond to various interrogatories and requests for admission.

15. From Highland's perspective, the Third-Party Discovery and the information gleaned from our own investigation shed considerable light on the allegations for which we previously lacked knowledge and established or confirmed the following facts, among others:

- Former employees of Highland caused the Transferred Assets to be conveyed to Sentinel in August 2017;

- A former Highland employee caused CDO Fund, among others, to transfer assets to Sentinel both before and during the bankruptcy without the knowledge and/or approval of the Independent Board;

- Mr. Dondero and Mr. Ellington indirectly own and control Sentinel;

- The Transferred Assets conveyed to Sentinel had a face value of more than $300 million and a market value at the time of transfer of over $100 million;

- Despite having a face amount of more than $300 million and a market value in excess of $100 million, the Transferred Assets were used to pay a $25 million premium on the $100 million Policy – an "after the event" policy issued by Sentinel;

- The Policy was ostensibly issued to satisfy any judgments in favor of UBS, plus costs of defending against UBS (although Sentinel has refused to pay on the Policy notwithstanding demand having been made);

- None of the former Highland employees subject to the Third-Party Discovery ever disclosed the existence of the Policy to Highland or its independent management, and, in fact, purposefully hid the existence of the Policy and the transfers from the Independent Board;

- Mr. Ellington and Mr. Leventon told the Independent Board that information on CDO Fund and SOHC assets was limited or did not exist, and it is now clear that those statements were untrue and appear to have been designed to hide the Policy

4

- and defraud Highland and its affiliates of the benefits of the Policy and the Transferred Assets;

- In reliance on the information provided by Mr. Ellington and Mr. Leventon, Highland told UBS that information on CDO Fund and SOHC assets was limited or did not exist, statements that subsequently proved to be inaccurate;

- Mr. Ellington and Mr. Leventon withheld evidence from the Independent Board concerning the Policy and the conveyance of the Transferred Assets to Sentinel and were assisted in doing so by among others, Highland legal department employee Matthew DiOrio who was an undisclosed director of Sentinel before and during the bankruptcy case; and

- Mr. Ellington, Mr. Leventon, and Mr. DiOrio lied to the Independent Board and caused them to make misrepresentations to UBS and the Court.

16. Based on the foregoing, and on the advice of counsel, I have concluded that (a) Highland's defenses are not warranted by existing law or by a non-frivolous argument for extending, modifying, or for reversing existing law or establishing new law, (b) after having a reasonable opportunity for further investigation and discovery, there is no evidentiary basis to oppose the relief requested, and (c) certain of Highland's prior denials in its Answer are no longer reasonably based on a lack of information.

17. Consequently, I have instructed Highland's counsel to (a) seek leave to withdraw its Answer, and (b) consent to the permanent injunctive relief sought by UBS by requesting entry of a Judgment in the form annexed as **Exhibit A** to the Motion (the "Judgment").

18. As the Court is aware, Highland is operating under an "asset monetization" plan that was originally projected to be completed within two to three years. That time frame remains a realistic target, subject only to the final resolution of litigation claims involving Mr. Dondero and entities owned and/or controlled by him. In light of this timeframe, Highland respectfully requests that the "permanent injunction" be "subject to further court order" in case compliance with the Judgment becomes an impediment to closing this bankruptcy case or unforeseen events occur.

Dated: June 8, 2022

                                         */s/ James P. Seery, Jr.*
                                         James P. Seery, Jr.

DOCS_NY:45788.6 36027/003