# Legal Liability Insurance Policy

00753351-1

MD_000010



EXHIBIT
Deposition Exhibit 58
7/21/21

# 1. Our agreement in general

## 1.1 Parties to this agreement

This **policy** is between the **insured** and the **insurer** as declared in the **schedule**. This document, together with its **schedule** and any attached endorsements is the **policy** which sets out this insurance. It is a legal contract so please read all of it carefully.

## 1.2 Words in bold

Words in bold typeface used in this **policy** document, other than in the headings, have specific meanings attached to them as set out in the General definitions and interpretation.

## 1.3 Policy Structure

1.3.1 Each **insured section** sets out the scope of the main coverage and the circumstances in which the **insurer's** liability to the **insured** is limited or may be excluded. Further, each **insured section** sets out other terms and conditions relevant to that **insured section**. The cover provided by each **insured section** is only operative if a **limit of indemnity** is shown in the **schedule**. Where the **limit of indemnity** in respect of any item in the **schedule** is shown as 'n/a', 'not applicable' or 'not insured' then no cover applies for that item. Where the **insured** comprises more than one person, the **limit of indemnity** for all **claims** made by all persons comprising the **insured** shall apply but as there is no sub-limit of indemnity in relation to each individual person, one or more of those persons will not receive payment of a **claim** if the limit of indemnity has already been met as a result of the payment of other **claims**.

1.3.2 Additional clauses set out terms, exclusions or limitations that may apply to more than one **insured section**.

1.3.3 The following general terms apply to each **insured section**, clauses and endorsements:

a) General exclusions and limitations
b) Duties in the event of a claim or potential claim;
c) General terms and conditions; and
d) General definitions and interpretation.

## 1.4 Policy period and premium

1.4.1 This **policy** will provide insurance as described herein for the **period of insurance** provided the **premium** (and **deposit premium** if applicable) and other charges are paid to and accepted by the **insurer** on or before the payment date shown in the **schedule**. Taxes, levies and other relevant fiscal charges are payable in addition to the **premium**. The **premium** is deemed paid and accepted by the **insurer** on receipt by the **insurer** or the intermediary appointed to place this insurance with the **insurer**.

1.4.2 If any **premium** (or **deposit premium** if applicable) is not paid and accepted by the **insurer** on or before its payment date as set out in this **policy** then the **insurer** may, in its sole discretion, give written notice to the **insured** at its address shown in the **schedule** cancelling this **policy** from seven (7) days after the date of service of the

notice of cancellation. Cancellation will be prevented from taking effect and the **policy** will continue in force if the outstanding **premium** (or **deposit premium** if applicable) is paid and accepted before cancellation takes effect. Without prejudice to other forms of service, notice of cancellation is deemed served on the fifth (5th) day after being posted if sent by pre-paid airmail letter properly addressed.

1.4.3 In consideration of the payment of the **premium** (and **deposit premium** if applicable) by the **insured** to the **insurer** the **insurer** agrees to provide the insurance as described in 'Legal liability' **insured section**.

## 2. Insured section – Legal liability

### 2.1 Legal liability cover

The **insurer** agrees to indemnify the **insured** in respect of any **legal liability** occurring during the **period of insurance** up to and including but not exceeding the **limit of indemnity** provided that either:

2.1.1 the **court** (or any appellate court to which the **court's** judgment in the **legal action** is **appealed**) makes an order of liability relating to the **legal action** against the **insured**; or

2.1.2 the **legal action** is (with the prior written agreement of the **insured**, the **appointed representative** and the **insurer**) settled on terms that provide for payment by the **insured** to the **opponent**.

## 3. General exclusions and limitations

This **policy** excludes and the **insurer** shall not be liable to indemnify the **insured** in any of the following circumstances:

### 3.1 Absence of the insurer's prior consent

where the **insurer's** written consent has not been obtained pursuant to the 'Written consent' clause below;

### 3.2 Failure to notify

where the **insured** has failed to notify the **insurer** pursuant to the 'Claim notification' clause below;

### 3.3 Insured's conduct

3.3.1 where the **legal action** is settled or the court makes an order of liability relating to the legal action against the **insured** as a result of the dishonesty of the **insured**; or

3.3.2 where the **insured** fails to act in accordance with the advice of the **appointed representative** or to provide full instructions promptly to the **appointed representative** or to co-operate with the **appointed representative** or to comply with any order made by the **court** or any **court** rule;

### 3.4 Failure to mitigate

where **legal liability** is incurred or increased as a result of a failure on part of the **insured** or the **appointed representative** to mitigate such a liability;

### 3.5 Non-disclosure

where the **insured** or the **appointed representative** has failed to disclose material facts;

### 3.6 Unnecessary costs because of delay etc.

where the **opponent's costs** arise from

3.6.1 any unreasonable delay or negligence or wilful act or omission by the **insured** or the **appointed representative**;

3.6.2 any unreasonable failure on part of the **insured** or the **appointed representative** to attend a hearing or other appointment;

### 3.7 Amended pleadings

Where **legal liability** is incurred or increased as a result of any unreasonable amendment to the **insured's** pleadings or any failure to comply with any court directions, pre-action protocols or any other rule, regulation or statutory provision;

### 3.8 Fraud

where the **insured** or the **appointed representative** has made any fraudulent, false or misleading representation;

### 3.9 Legal action outside the territorial limits

where **legal liability** is incurred or increased as a result of the **legal action** being pursued, issued, brought or transferred outside the **territorial limits**;

### 3.10 Non-contribution

where but for the existence of this **policy** the **insured** would be entitled to indemnity under another insurance policy;

### 3.11 Quote disclosed prior to inception of the policy

where the existence of any offer of insurance made by the **insurer** to the **insured** in respect of the **legal action** was disclosed to any third party other than those third parties to whom the **insurer** has offered its consent for such quote to be disclosed;

### 3.12 Sums due under other policies of insurance

where any premium has fallen due to be paid by the **insured** to the **insurer** pursuant to the terms of any other policy of insurance issued by the **insurer** to the **insured** but remains unpaid (whether in full or in part) at the date of a **claim** under this **policy**.

## 4. Other terms and conditions relating to cover

### 4.1 Set-off

In the event that a **claim** is made under this **policy** and the **insured** has obtained a **recovery** in the **legal action** then the **insurer** shall only be liable to indemnify the

**insured** for the net sum (if any) after deduction of the amount of the **recovery**. This is irrespective of whether or not payment is actually made to the **insured**.

### 4.2 Appeal

4.2.1 In the event that the **legal action** is subject to **appeal** then at the end of the appeal's process this **policy** will be construed as if the **court** had reached the same decision as the appellate court.

4.2.2 In the event that any sums of money are paid by the **insurer** pursuant to the terms of this **policy** and the judgment of the **court** is amended following an **appeal** (such that the **insurer** would not have made the payment had the amended judgment been the judgment of the **court**) then the **insured** shall reimburse the **insurer** for any such sums of money already paid together with interest at 2% above the United States Dollar prime lending rate in the Cayman Islands from time to time.

## 5. Conduct of the legal action

### 5.1 Written consent

The **insured** must obtain, and irrevocably instructs the **appointed representative** to obtain, written consent from the **insurer** prior to:

5.1.1 the settlement of the **legal action** in the **opponent's** favour;

5.1.2 the rejection (whether explicitly or by conduct) of an **opponent's** offer to settle the **legal action**;

5.1.3 the rejection of any offer of alternative dispute resolution (including mediation) from the **opponent**;

5.1.4 any change of the **appointed representative**.

The **insurer** will not unreasonably withhold consent to the **insured** taking any of the steps referred to in this clause and will, in making a decision as to whether to provide consent pursuant to this clause, consider whether a reasonably prudent uninsured litigant would pursue the course of action for which the **insurer's** consent is sought.

### 5.2 Notification

The **insured** must notify, and irrevocably instructs the **appointed representative** to notify, the **insurer** immediately:

5.2.1 on receipt of any offer of settlement of the **legal action**;

5.2.2 on receipt of any offer of alternative dispute resolution (including mediation) from the **opponent**;

5.2.3 in the event of any development in the **legal action** material to the prospects of succeeding in the **legal action**;

5.2.4 if the **insured** is no longer more likely than not to succeed in the **legal action**, assuming that it is determined at trial; and

CONFIDENTIAL

5.2.5 after any period of 6 months during which there has been no requirement to request the **insurer's** consent or notify the **insurer** in order to confirm the current status of the **legal action**.

## 5.3 Monies to be held on account

The **insured** irrevocably instructs the **appointed representative** to hold any monies (whether costs, interest or damages) received from the **opponent** until the **premium** is paid in full, any **claim** under this **policy** has been submitted and all terms and conditions of this **policy** have been fully complied with.

## 5.4 Co-operation by the insured and appointed representative

The **insured** must:

5.4.1 provide, and instruct the **appointed representative** to provide, the **insurer** with full and prompt co-operation to include providing such **information** as is requested by the **insurer** from time to time; and

5.4.2 co-operate, and instruct the **appointed representative** to co-operate, with any request by the **insurer** to audit **information** pursuant to the 'Audit' clause.

## 5.5 Prosecution of the legal action

The **insured** agrees to:

5.5.1 prosecute the **legal action** promptly;

5.5.2 provide any instructions to the **appointed representative** as are necessary or desirable in order to prosecute the **legal action** in the best manner;

5.5.3 act as a reasonably prudent uninsured litigant with the objective of achieving the best outcome in the **legal action** (and any subsequent costs assessment proceedings); and

5.5.4 comply with any order of the **court** and any **court** rules and in all respects conduct the **legal action** in a reasonable manner in order to minimise costs.

## 5.6 Territorial limits

The **insured** agrees to prosecute the **legal action** in the **court** within the **territorial limits** and warrants that the **legal action** will be governed by the laws of the **territorial limits**.

# 6. Bond

## 6.1 Payment under bond forms part of indemnity

In the event that the **insurer** is obliged to make any payment pursuant to the terms of a **bond** issued in conjunction with this **policy** then such payment shall contribute to and form part of the indemnity provided by this **policy** and shall erode both the **limit of indemnity** stated in the **schedule**.

## 6.2 Recovery of sums paid pursuant to bond

In the event that the **insurer** makes any payment whatsoever pursuant to the terms of a **bond** in circumstances in which the **insurer** would not have been obliged to make such payment pursuant to the terms of this **policy** then the **insured** shall indemnify the

insurer in respect of such payment and the insurer shall be entitled to recover such payment from the insured.

## 7. Duties in the event of a claim or potential claim

The due observance and fulfilment of the provisions of 'Claim notification' and 'Insured's duties and insurer's rights' are condition precedents to the **insurer's** liability for any **claim** under this **policy**. The 'Termination by the insurer' clause sets out the consequences of a failure to comply with conditions precedent or **policy** provisions.

### 7.1 Claim notification

7.1.1 The **insured** shall give the **insurer** written notice as soon as practicable of any **claim** or any circumstance which might reasonably be expected to give rise to a **claim**.

7.1.2 Notice to the **insurer** of a **claim** under this policy must be given to the claims notification address specified in the **schedule**.

### 7.2 Insured's duties and insurer's rights

7.2.1 A **claim** form must be completed with full particulars.

7.2.2 The **insured** shall provide to the **insurer** and the **appointed representative** all **information** and, in addition, shall provide all necessary assistance (notwithstanding the right for the **insurer** to audit pursuant to the 'Audit' clause) to enable the **insurer** or its agents to investigate and/or defend any **claim** under this **policy** and/or to enable the **insurer** to determine its liability under this **policy**.

7.2.3 Neither the **insured** nor its **appointed representative** shall make any admission with respect to liability in relation to the **legal action** or attempt to settle **the legal action** without the **insurer's** prior written consent.

7.2.4 The **insured** will promptly provide the **insurer** with full details of **legal liability** and shall, if requested by the **insurer**, have such **legal liability** assessed by the appropriate body.

7.2.5 The **insurer** will be entitled (but not obliged) to conduct any costs assessment or review and the **insured** will provide (and hereby gives irrevocable instructions to the **appointed representative** to provide) such assistance as the **insurer** requires.

### 7.3 Subrogated claims

In the event of the **insurer** making any payment under this **policy**:

7.3.1 the **insurer** shall be subrogated to all the **insured's** rights or causes of action related to or arising out of the **legal action** against any other party to the extent that these rights or causes of action are pertinent to a loss being suffered by the **insured** and the **insured** undertakes to provide the **insurer** with all assistance which may be required to pursue these rights; and

7.3.2 any entitlement to a recovery from the **opponent** by the exercise of such rights or otherwise will, until received, be set off against any **claim** comprised of **legal liability** and when received be applied, in order of priority, to repay and extinguish any payment

made by the **insurer** under this **policy**, any **insurer's** costs, any interest due on such payment and costs and finally any **insured's** losses.

## 8. General terms and conditions

### 8.1 Audit

The **insurer** has the right to audit all **information** within the possession or control of the **insured** or the **appointed representative** whether held in physical or electronic format.

### 8.2 Applicable law

This **policy** will be governed by and interpreted in accordance with the laws of the Cayman Islands and subject to the exclusive jurisdiction of the courts in the Cayman Islands.

### 8.3 Assignment

Assignment of interest under this **policy** will not bind the **insurer** unless and until the **insurer's** written consent is endorsed hereon.

### 8.4 Confidentiality

The **insurer** agrees that any **information** given by the **insured** or the **appointed representative** is received in confidence and will not be disclosed to any other party.

### 8.5 The Contracts (Rights of Third Parties) Law, 2014

This insurance does not confer or create any right enforceable under the Contracts (Rights of Third Parties) Law, 2014 of the Cayman Islands or any amending or subsequent legislation by any person who is not named as the **insured** and both the **insurer** and **insured** may amend, cancel or lapse this insurance without giving notice to, or requiring the consent of, any other third party.

### 8.6 Disclosure

8.6.1 The **insurer** will follow appropriate security procedures in the storage and disclosure of data provided by the insured or its appointed representative to prevent unauthorised access or loss of such data. The **insurer** may find it necessary to pass such data to other firms or businesses that supply products and services associated with this **policy**.

The **insurer** collects non-public personal information about the **insured** from the following sources:

a. information the **insurer** receives from the **insured** on applications or other forms;

b. information about the **insured's** transactions with the **insurer**, its subsidiary, parent and/or other group companies or others;

c. information the **insurer** receives from consumer reporting agencies.

8.6.2 The **insurer** does not disclose any non-public personal information relating to the **insured** to anyone except as is necessary in order to provide its products or services to the **insured** or otherwise as it is required or permitted by law (e.g. a subpoena, fraud investigation, regulatory reporting, etc.).

8.6.3 Further, by accessing and updating various databases, the **insurer** may share information with other firms and public bodies, including the police, in order to substantiate information and prevent or detect fraud. If false or inaccurate information is provided and fraud is suspected, this fact will be recorded and the information will be available to other organisations that have access to the databases. Details of databases accessed or contributed to are available on request.

## 8.7 Dispute resolution

8.7.1 Any matters in dispute between the **insurer** and the **insured** arising out of or in connection with this insurance will be referred to a mediator to be agreed by the **insurer** and the **insured** within ten (10) working days of a written notice served on one of them by the other of them requesting such an agreement. If a mediator is not agreed then either the **insurer** or the **insured** may apply to the Centre for Effective Dispute Resolution ('CEDR') for the appointment of a mediator. The **insurer** and the **insured** agree to share equally the costs of CEDR and of the mediator and that the reference of the dispute to mediation will be conducted in confidence.

8.7.2 The **insurer** and the **insured** agree to perform their respective continuing obligations under this insurance, if any, while the dispute is resolved unless the nature of the dispute prevents such continued performance of those obligations.

8.7.3 If any such dispute is not resolved by mediation or the **insurer** and the **insured**

8.7.4 cannot agree upon the appointment of a mediator or the form that the mediation will take, the dispute will be referred by either of them to courts, subject to the law and jurisdiction set down in the 'Applicable law' clause above.

## 8.8 Observance

8.8.1 The due observance and fulfilment of the provisions of this **policy** insofar as they may relate to anything to be done or complied with by the **insured**, and are not described in the **policy** as conditions precedent, will be a condition of this **policy**. Any waiver by the **insurer** of any provision will not prevent the **insurer** from relying on such term or condition or condition precedent in the future.

8.8.2 Further, where an indemnity is provided to any other party, the **insured** will arrange for each party to comply with the terms, conditions and conditions precedent of this insurance so far as they can apply provided always that the other party complies with the terms of 'Duties in the event of a claim or potential claim'.

8.8.3 In the event of a breach of any condition in the **policy**, and without prejudice to any of the **insurer's** other rights, the **insurer** may reject or reduce **claims** connected with the breach providing the **insurer** can demonstrate some prejudice.

8.8.4 In the event of a breach of any condition precedent in the **policy** and without prejudice to any of the **insurer's** other rights, the **insurer** may reject or reduce **claims** connected with the breach and continue the **policy** on such terms as the **insurer** may determine and, if any payment on account of any such **claim** has already been made, the **insured** will repay forthwith all payments on account to the **insurer**.

### 8.9 Payment of premium

The **insured** agrees to pay the **premium** stated in the **schedule** on the **due date** as specified in the **schedule**. If the insurer agrees that some or all of the premium may be satisfied otherwise than in cash (e.g. by the transfer by the **insured** to the **insurer** of an investment portfolio), the **insured** shall take all necessary steps to satisfy the **insurer's** due diligence requirements in relation to the assets proposed to be transferred and that their net realisable value is equal to or greater than the **premium** or that part of the **premium** which is to be satisfied otherwise than in cash. If the **insurer** agrees to accept such assets in satisfaction of all or part of the **premium**, the insured shall on the **due date** ensure that the insurer becomes the beneficial owner of such assets, free from any charge, lien or encumbrance.

8.9.1 Taxes, levies and other relevant fiscal charges are payable in addition to the **premium** Where there is more than one **insured**, each **insured** shall be jointly and severally liable for the **premium**.

8.9.2 Should the **premium** (or any part thereof) remain unpaid after seven (7) days after the **due date** then interest shall accrue on the **premium** (or the unpaid part) at a rate of 2% (two percent) above the United States Dollar prime lending rate in the Cayman Islands as calculated at the time of the **due date** until the actual date of payment.

### 8.10 Records

The **insurer** may hold documents relating to this insurance and any **claims** under it in electronic form and may destroy the originals. An electronic copy of any such document will be admissible in evidence to the same extent as, and carry the same weight as, the original.

### 8.11 Rights surviving end of period of insurance

All rights and obligations on the part of the **insured** and the **insurer** pursuant to this **policy** shall continue until such time as the **insured's** and the **insurer's** liabilities under this **policy** have been finally determined.

### 8.12 Termination by the insured

The **insured** may terminate this **policy** at any time whereupon the **premium** (if unpaid) becomes immediately payable and the **insurer** will not be liable for any **claim** under this **policy**. Where the **insured** comprises more than one person, this termination right may only be exercised if each such person consents in writing.

### 8.13 Termination by the insurer

8.13.1 The **insurer** may terminate this **policy** immediately:

    a. if the **insured**, or where the **insured** comprises more than one person, any such person, fails to observe all the terms and conditions of this **policy** including, for the avoidance of doubt, the terms relating to the payment of the **premium**;

    b. if the **insured**, or where the **insured** comprises more than one person, any such person, becomes bankrupt or insolvent during the **period of insurance**. The **insured** or any such person shall be deemed insolvent upon the appointment of a liquidator in circumstances where it is insolvent.

CONFIDENTIAL

8.13.2 In the event of termination by the **insurer** then the **insurer** will not be liable for any **claim** under this **policy**.

### 8.14 Sanction limitation and exclusion clause

The **insurer** shall not provide cover nor be liable to pay any **claim** or provide any benefit hereunder to the extent that the provision of such cover, payment of such **claim** or provision of such benefit would expose the **insurer** or any member of the **insurer's** group to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of any jurisdiction.

### 8.15 Joint and several obligations

Where the **insured** comprises two or more persons, all duties and obligations of such persons under this **policy** shall be joint and several.

## 9. General definitions and interpretation

The following words will have the same meaning attached each time they appear in this **policy** in bold type-face, whether with a capital first letter or not.

Where the context so admits or requires, words importing the singular will include the plural and vice versa and words importing the masculine will import the feminine and the neuter. References to 'person' will be construed so as to include any individual, company, partnership, or any other legal entity. References to a statute will be construed to include all its amendments or replacements. All headings within the **policy** are included for convenience only and will not form part of this **policy**.

### 9.1 Appeal

Appeal means an appeal against the judgment of the **court** to any appellate court.

### 9.2 Appointed representative

Appointed representative means a firm of attorneys which has been accepted by the **insurer** to act for the **insured** in accordance with the terms of this **policy**.

### 9.3 Bond

Bond means any deed of indemnity issued by the **insurer** in respect of the **legal action** for the purpose of providing security for costs in the **legal action** on behalf of the **insured**.

### 9.4 Claim

Claim means a request by the **insured** under the terms of this **policy** for payment in respect of **legal liability**. Any claim or series of claims arising out of the same **legal action** shall be regarded as one claim.

### 9.5 Court

Court means any judge, arbitrator or any other tribunal that hears the **legal action** at first instance within the **territorial limits**.

### 9.6 Deposit premium

Deposit premium means the amount, if any, specified as deposit premium in the **schedule**.

### 9.7 Due date

Due date means the date for payment of the premium as specified in the **schedule**.

### 9.8 Information

Information means any information within the possession control or knowledge of the **insured** or the **appointed representative**, both before and after the inception of this **policy**, that is relevant to or relates to the **legal action**, whether privileged or not (which privilege the **insured** irrevocably waives), and extends to the **appointed representative's** file on the **insured's legal action**.

### 9.9 Insured

Insured means the person or persons named in the **schedule** as declared to and accepted by the **insurer** and where the **insured** comprises more than one person, the expression **insured** where used in this **policy** shall be construed, unless the context otherwise requires, so as to refer to each person named as the **insured** in the **schedule**.

### 9.10 Insured section

Insured section means all or any individually numbered sections of this **policy** that forms part of the insurance contract but only if stated as 'insured section' in the heading to the section.

### 9.11 Insurer

Insurer means the party specified as insurer in the **schedule** and any other subscribing insurers.

### 9.12 Legal action

Legal action means the action described in the **schedule**.

### 9.13 Legal liability

Legal liability means either:-

9.13.1 the aggregate of (a) the total sum (including any opponent's costs) ordered by the **court** (or any appellate court to which the **court's** judgment in the **legal action** is **appealed**) to be paid by the **insured** to the **opponent** in the **legal action** and (b) **own costs**; or

9.13.2 the aggregate of (a) the total sum (including any opponent's costs) to be paid by the **insured** to the **opponent** pursuant to a settlement of the **legal action** reached between the **insured** and the **opponent** (with the prior written agreement of the **insured**, the **appointed representative** and the **insurer**) and (b) **own costs**.

### 9.14 Limit of indemnity

Limit of indemnity means:

9.14.1 the amount stated in the **schedule** which is the maximum amount of the **insurer's** liability under this **policy** regardless of the number of:

    a. **insureds** or other insured parties;

    b. persons or organisations bringing claims or suits; or

    c. claims against the **insured** or series of claims against the **insured** or claims or series of claims made by the **insured**;

9.14.2 where a limit of indemnity is stated in the **schedule** as in the aggregate, that aggregate is the maximum the **insurer** will pay for all insured events during the **period of insurance**;

where indemnity may be provided under two (2) or more **insured sections** of this **policy**, then the combined single limit stated in the **schedule** is the maximum the **insurer** will pay for any insured event to which such **insured sections** apply in combination.

### 9.15 Opponent

Opponent means the party or parties who are named in the **schedule** and with whom the **insured** is in dispute in the **legal action**.

### 9.16 Opponent's costs

Opponent's costs mean all costs and expenses that have been reasonably incurred by the **opponent** in the **legal action**.

### 9.17 Own costs

Own costs means all costs and expenses of the Representative and other service providers in the normal course, including related tax, which are incurred during the conduct of the legal action on behalf of the insured.

### 9.18 Period of insurance

Period of insurance means the period which commences from the date shown on the **schedule** and ceases upon the occurrence of any of the following events:

9.18.1 the **legal action** is concluded by a final judgment or order of the **court** (or any appellate court to which the **court's** judgment in the **legal action** is **appealed**) which also deals finally with the amount of any costs payable by the parties to the **legal action**;

9.18.2 the **legal action** is settled on terms which also deals with the amount of any costs payable by the parties to the **legal action**;

9.18.3 the **legal action** is transferred outside of the **territorial limits**;

9.18.4 the retainer between the **insured** and the **appointed representative** ceases; or

9.18.5 this **policy** is terminated or cancelled in accordance with the terms and conditions of the **policy**.

### 9.19 Policy

Policy means this document, the **schedule** (including any **schedules** issued in substitution) and any endorsements attaching to this document or the **schedule** that will be considered part of the legal contract and any word or expression in bold type face on any of these documents will bear the specific meaning stated in these definitions.

### 9.20 Premium

Premium means the amount specified as premium in the **schedule**.

### 9.21 Recovery

Recovery means any sum (inclusive of costs) ordered by the **court** or any appellate court to be paid by the **opponent** to the **insured** in the **legal action** or any amount (inclusive of costs) agreed to be paid by the **opponent** to the **insured** in settlement of the **legal action** (irrespective of whether or not payment is actually made).

### 9.22 Schedule

Schedule means the document titled schedule that includes the name and address of the **insured**, the premium and other variables to this **policy** (including endorsement clauses) and is incorporated in this **policy** and accepted by the **insured**. Schedules may be re-issued from time to time where each successor overrides the earlier document.

### 9.23 Territorial limits

Territorial limits means the territory or territories specified in the **schedule**.

INSURER: 2017 August 10.

Sentinel Reinsurance, Ltd.

By: _____
Name:
Title: Andrew Dean
Director


INSUREDS:

Highland CDO Opportunity Master Fund, L.P.
By: Highland CDO Opportunity Fund GP, L.P., its general partner
By: Highland CDO Opportunity GP, LLC, its general partner
By: Highland Capital Management, L.P., its sole member
By: Strand Advisors, Inc., its general partner

By: _____
Name: James Dondero
Title: President

Highland CDO Holding Company

By: _____
Name: James Dondero
Title: Director

Highland Special Opportunities Holdings Company

By: _____
Name: James Dondero
Title: Director

[Cayman Islands Government Stamp Duty $012.00 PB01202, 30.01.18]

## SCHEDULE

| | |
|---|---|
| **Insurer:** | Sentinel Reinsurance, Ltd. |
| **Insured:** | - Highland CDO Opportunity Master Fund, LP<br>- Highland CDO Holding Company; and<br>- Highland Special Opportunities Holding Company |
| **Appointed Representative:** | Paul Lackey<br>Lackey Hershman, LLP<br>3102 Oak Lawn Avenue<br>Suite 777<br>Dallas, Texas 75219 |
| **Date of commencement of Period of Insurance:** | August 1, 2017 |
| **Legal Action:** | UBS Securities LLC and UBS AG, London Branch, v. Highland Capital Management, L.P., Highland Special Opportunities Holding Company, Highland Financial Partners, L.P., Highland CDO Opportunity Master Fund, L.P., Highland Credit Opportunities CDO, L.P., and Strand Advisors, Inc., Cause No. 650097/2009 |
| **Court:** | Supreme Court of the State of New York, County of New York |
| **Opponent:** | UBS Securities LLC and UBS AG, London Branch |
| **Territorial Limits:** | State of New York |
| **Limit of Indemnity:** | US$100,000,000 (One Hundred Million United States Dollars) in aggregate |
| **Payment Date for Premium:** | August 31, 2017 |
| **Premium:** | US$25,000,000 (Twenty Five Million United States Dollars) |

MD_000026

CONFIDENTIAL

Sentinel Reinsurance, Ltd.
Maples Fiduciary Services (Cayman) Limited
P.O. Box 1093, Boundary Hall
Cricket Square
Grand Cayman KY1-1102
Cayman Islands

Endorsement No. 1

The following is hereby understood and agreed:

The premium, as stated in the schedule, is adjusted to $68,362,333.62 to include the total fair value of received assets. Premium received consists of cash of $11,083,855.74, miscellaneous receivables of $1,753,020.00, and an investment portfolio of $55,525,457.88 as measured at fair value on the transfer date.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Attaches to and forming part of the Legal Liability Insurance Policy dated August 1, 2017 of Sentinel Reinsurance, Ltd.

_____
(Authorized Signature)

Lesley Thompson
Director

MD_000027

CONFIDENTIAL

Sentinel Reinsurance, Ltd.
Maples Fiduciary Services (Cayman) Limited
P.O. Box 1093, Boundary Hall
Cricket Square
Grand Cayman KY1-1102
Cayman Islands

Endorsement No. 2

The following is hereby understood and agreed:

The **premium**, as stated in the schedule, is reduced to $59,362,333.62.

$9,000,000.00 has been prepaid by the **insured** to the **insurer** to cover risk mitigation costs, which include, but are not limited to, legal defense costs.

The limit of indemnity is reduced to $91,000,000.00 in the aggregate to correlate with prefunding the risk mitigation costs of $9,000,000.00.

The **insurer** will have sole responsibility to settle all risk mitigation costs with respect **legal action**.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

Attaches to and forming part of the Legal Liability Insurance Policy dated August 1, 2017 of Sentinel Reinsurance, Ltd.

_____
(Authorized Signature)

MD_000028

CONFIDENTIAL