SUPREME COURT OF THE STATE OF NEW YORK
NEW YORK COUNTY

PRESENT: <u>HON. MELISSA CRANE</u>            PART _____60M_____
                              *Justice*

-------------------------------------------------------------------X

UBS SECURITIES LLC, UBS AG, LONDON BRANCH,            INDEX NO.    650097/2009

Plaintiff,

- v -

HIGHLAND CAPITAL MANAGEMENT, L.P., HIGHLAND
CDO OPPORTUNITY MASTER FUND, L.P., HIGHLAND         **DECISION, ORDER, AND**
SPECIAL OPPORTUNITIES HOLDING COMPANY,              **JUDGMENT AFTER**
HIGHLAND FINANCIAL PARTNERS, L.P., HIGHLAND         **INQUEST**
CREDIT STRATEGIES FUND, HIGHLAND CRUSADER
OFFSHORE PARTNERS, L.P., HIGHLAND CREDIT
OPPORTUNITIES CDO, L.P., STRAND ADVISORS INC.,

Defendant.

-------------------------------------------------------------------X

## INTRODUCTION

This 13-year-long dispute arises from several failed securitization transactions between plaintiffs UBS Securities LLC and UBS AG London Branch ("UBS"), defendant Highlight Capital Management, L.P. ("HCM"), and HCM-controlled entities Highland CDO Opportunity Master Fund, L.P. ("CDO Fund"), Highland Special Opportunities Holding Company ("SOHC") (together with CDO Fund, the "Funds"), Highland Financial Partners, L.P. ("HFP"), Highland Credit Strategies Master Fund, L.P. ("Credit Strategies), Highland Crusader Offshore Partners, L.P. ("Crusader Fund"), Highland Credit Opportunities CDO, L.P. ("Credit Opp."), Strand Advisors, Inc. ("Strand") (NYSCEF Doc. No. 764, pg. 1).

In its second amended complaint (the "Second Amended Complaint"), dated May 11, 2011, UBS sought "to recover damages in excess of $686 million resulting from the wrongful conduct of defendants" and asserted causes of action for fraudulent inducement, breach of contract, fraudulent conveyances, and declaratory judgment" (*id.*, ¶ 1).

This decision after inquest determines UBS' damages on its remaining claims for Fraudulent Inducement (First Cause of Action), Fraudulent Conveyance (Fifth Cause of Action) and Alter Ego (Eighth Cause of Action), as against three remaining, defaulting defendants: CDO Fund, SOHC and HFP (NYSCEF Doc. No. 762).

## BACKGROUND AND RELEVANT FACTS

The court presumes familiarity with all prior decisions and orders delineating the facts in this 2009 case.

### I. *The Underlying Agreements and the Restructuring Agreements*

In 2007, UBS, the CDO Fund, SOHC and HCM entered into agreements (the "Underlying Agreements") to securitize collateral loan obligations and credit-default swaps (*id.*, pg. 8). The Underlying Agreements provided that the Funds would be liable to UBS for certain losses if the parties' agreements terminated without a successful securitization (*id.*).

After the contemplated securitization failed, the parties agreed to enter into negotiations to restructure the Underlying Agreements (*id.*). UBS ultimately agreed to restructure these agreements (the "Restructuring Agreements"), and it also agreed to release all claims as against the Funds arising from the Underlying Agreements (*id.*).

UBS alleges that the Funds intentionally misrepresented material facts and made omissions about the Funds' creditworthiness and their finances and assets in negotiations concerning the Restructuring Agreements to induce UBS to enter into them (NYSCEF Doc. No. 764, ¶¶ 117-119).

UBS further alleges that these actions ultimately caused it to "release its pre-existing claims against [HCM] and the [Funds] related to the [Underlying Agreements]…and assume the credit-risk of the [Funds]…and [that] as a direct result… UBS…[incurred] substantial losses and damages…" (*id.*, ¶ 127).

### II. *The Restructuring Agreements and UBS' Collateral Calls*

Under the Restructuring Agreements, UBS was designated as the financial arranger responsible for the assets' financing and housing (NYSCEF Doc. No. 762, pg. 9). HCM was designated as the servicer responsible for identifying and securitizing the assets (*id.*). The Funds were to provide collateral and bear any "losses in value that the assets might suffer" (*id.*).

UBS alleges that "between March 14, 2008 and December 3, 2008, [HCM] exercised its control over the [Funds] and caused the [Funds] to transfer valuable cash and assets out of the [Funds], thereby impairing their ability to bear losses…and otherwise satisfy their obligations to creditors, including UBS" (NYSCEF Doc. No. 764, ¶ 168).

Page 2 of 10

Eventually, in early December 2008, after three collateral calls, and the Funds' refusal to adhere to their contractual obligations, "UBS...terminated the [Restructuring Agreements] and found that it had incurred damages of over $500 million" (NYSCEF Doc. No. 762, pg. 9).

### III.  *The 2009 and 2010 Cases*

In February 2009, UBS commenced this case against HCM and the Funds alleging that they had breached the Restructuring Agreements (*id.*).  Additionally, UBS also sought indemnification from HCM (*id.*).

After discovering additional wrongdoing, UBS amended its complaint twice, included additional claims, and added additional defendants HFP, Credit Strategies, Crusader Fund, Credit Opp., and Strand (NYSCEF Doc. Nos. 148, 762).

After the court dismissed UBS' indemnification claim in 2010, UBS filed another action against HCM (Index No. 650752/2010).  On November 1, 2010, the court consolidated both actions under this index number (NYSCEF Doc. No. 213).  Following years of unnecessary motion practice and appeals, this 13-year-old case was put over for a trial.

On May 1, 2018, the court bifurcated the trial into two parts: Phase I and Phase II.  The Breach of Contract claims (Third and Fourth Causes of Action) would be heard by the court in Phase I prior to the claims for Fraudulent Inducement (First Cause of Action), Fraudulent Conveyance (Fifth Cause of Action), and Alter Ego Liability (Eighth Cause of Action).  Those three claims were to be heard by a jury at a later time in Phase II (NYSCEF Doc. No, 641, pg. 2).

### IV.  *Phase I – The Bench Trial (Third and Fourth Causes of Action)*

In Phase I, the court held a 13-day bench trial on UBS' Third and Fourth Causes of Action in the Second Amended Complaint for Breach of Contract as against the Funds, and HCM's counterclaims against UBS (*id.*, pg. 1).  On November 14, 2019, the court issued its decision after trial and held in favor of UBS on those causes of action, and as against the Funds, for breach of the Cash Warehouse and Synthetic Warehouse Agreements (NYSCEF Doc. No. 641).

On February 10, 2020, the court entered judgment against the Funds (the "February 2020 Judgment") (NYSCEF Doc. No. 646).  The February 2020 Judgment awarded UBS damages and interest in the amount of $531,619,426.24 as against CDO Fund, and in the amount of $510,771,605.55 as against SOHC, for a grand total of $1,042,391,031.79.

As relevant here, the court stayed enforcement as to a portion of the judgment against SOHC, totaling $70,500,000, until a determination was made on whether damages awarded during Phase II would overlap or otherwise cover the same damages that were awarded to UBS in Phase I (NYSCEF Doc. No. 641, pgs. 38-39).

## V. *Phase II – The Contemplated Jury Trial (First, Fifth and Eighth Causes of Action)*

In Phase II, a jury trial was to be held on UBS' remaining claims against CDO Fund, SOHC, and HFP for Fraud, Fraudulent Conveyances, and Alter Ego Liability (the First, Fifth, and Eighth Causes of Action, respectively) (*id.*).

In October 2019, HCM filed for bankruptcy, resulting in a stay of Phase II (NYSCEF Doc. No. 640). UBS subsequently settled with all the remaining Phase II defendants except the Funds and HFP (NYSCEF Doc. No. 762, pg. 10).

## VI. *The July 6, 2021 Default Judgment and Inquest*

After the bankruptcy stay was lifted, Reid Collins & Tsai LLP moved, by Order to Show Cause and pursuant to CPLR 321(b)(2), to withdraw as counsel to defendants HCM, CDO Fund, SOHC, HFP, Credit Opp. and Strand (collectively, the "Highland Defendants") (NYSCEF Doc. No. 654).

On April 6, 2021, the court held oral argument on the motion, at which time the Highland Defendants failed to appear (NYSCEF Doc. No. 660, pg. 1). Ultimately, the court granted the motion to withdraw as counsel and set the matter down for a Pre-Trial Conference (*id.*, pg. 2).

At the June 17, 2021 Pre-Trial Conference, counsel for HFP failed to appear (NYSCEF Doc. No. 665). The court then issued an order which scheduled another Pre-Trial Conference for June 24, 2021 at 11:00 a.m. (*id.*). The court expressly noted in its order that "a default judgment may be granted against any named parties that fail to appear at that conference and/or their claims may be dismissed, pursuant to 22 NYCRR 202.27" (*id.*).

Then, at the June 24, 2021 scheduled Pre-Trial Conference, CDO Fund, SOHC, and HFP failed to appear (NYSCEF Doc. No. 668). Subsequently, the court issued an order, dated July 6, 2021, that, pursuant to 22 NYCRR 202.27, entered a default judgment: "against Defendants CDO Fund and SOHC on Plaintiffs' first cause of action for fraud," "against Defendants CDO Fund, SOHC, and HFP on Plaintiffs' fifth cause of action for actual and constructive fraudulent conveyances pursuant to N.Y. Debtor and Creditor Law §§ 273-276 and for attorneys' fees

pursuant to N.Y. Debtor and Creditor Law § 276-a," "against Defendant HEP on Plaintiffs' eighth cause of action and HFP is declared to be the alter ego of SOHC and is liable for satisfying the judgment against SOHC for Plaintiffs' third and fourth causes of action" (*id.*). UBS was also "directed to submit an application for or proof of damages within one year…in accordance with N.Y. CPLR § 3215 and. 22 NYCRR 202.46" (*id.*).

The court then put this case over for an inquest, scheduled for June 16, 2022 at 9:30 a.m., to determine UBS' damages in connection with the July 6, 2021 dated default judgment. At the June 16, 2022 inquest, defendants CDO Fund, SOHC, and HFP did not appear, so the court took the inquest in on papers. There was no opposition to UBS' inquest submissions, and all defendants were properly served and provided notice of the inquest pursuant to CPLR 3215(g)(1) (NYSCEF Doc. No. 771).

## DISCUSSION

### I. *Alter Ego Allegations and the Phase I Judgment*

The court entered a default judgment, dated July 6, 2021, as against HFP on UBS' Eighth Cause of Action for Alter Ego Liability, and declared HFP to be SOHC's alter ego (NYSCEF Doc. No. 668). This alter ego liability makes HFP liable for satisfying the judgment against SOHC on UBS' Third and Fourth Causes of Action for Breach of Contract (*id.*).

Further, UBS' alter ego allegations are sufficient under New York law. To plead an alter ego relationship, a plaintiff generally must allege: (i) "complete domination of the corporation in respect to the transaction attacked," and (ii) "that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury" (*Baby Phat Holding Co., LLC v Kellwood Co.*, 123 AD3d 405, 407 [1st Dept 2014]).

In deciding if a party may be deemed an alter ego, courts consider several factors, including: the disregard of corporate formalities; inadequate capitalization; intermingling of funds; overlap in ownership, officers, directors and personnel; common office space or telephone numbers; the degree of discretion demonstrated by the allegedly dominated corporation; whether dealings between the entities are at arm's length; whether the corporations are treated as independent profit centers; and the payment or guaranty of the corporation's debts by the dominating entity. No one factor is dispositive (*Fantazia Intern. Corp. v CPL Furs New York, Inc.*, 67 AD3d 511, 512, citing *Freeman v Complex Computing Co.*, 119 F 3d 1044, 1053 [2nd Cir 1997]).

In this case, UBS' Second Amended complaint alleges that SOHC: was HFP's instrumentality, had no independence, could not exercise any business discretion, did not have its own offices, officers or employees, and that "HFP completely dominated the day-to-day operations of SOHC as well as SOHC's sister affiliates." (NYSCEF Doc. No. 764, ¶¶, 195-196).

The Expert Report of Louis G. Dudney, UBS' forensic accounting and damages expert (the "Expert Report") (NYSCEF Doc. No. 766), further supports these allegations. The Expert Report comprehensively analyzed the relationship between the parties, and between HFP and SOHC, and summarized the assets at issue along with their respective valuations and the eventual transfers that took place in this case (*id.*).

Accordingly, HFP, as SOHC's alter ego, is liable for the judgment on the Third and Fourth Causes of Action for Breach of Contract in the amount of $510,771,650.55.

## II. *Punitive Damages*

"[P]unitive damages are awarded only in singularly rare cases such as cases involving an improper state of mind or malice or cases involving wrongdoing to the public," where the conduct "was so outrageous as to evince a high degree of moral turpitude and showing such wanton dishonesty as to imply a criminal difference to civil obligations (*Bothmer v Schooler, Weinstein, Minsky & Lester,* 266 AD2d 154, 154 [1st Dept 1999] [internal quotation marks and citations omitted]; *see Marinaccio v Town of Clarence*, 20 NY3d 506, 511 [2013] ["(T)he standard for imposing punitive damages is a strict one and punitive damages will be awarded only in exceptional cases."]).

"[A] private party seeking to recover punitive damages must not only demonstrate egregious tortious conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally" (*Rocanova v Equitable Life Assur. Soc. of U.S.,* 83 NY2d 603, 613 [1994]).

Punitive damages are permitted only when "defendants' actions were aimed at the public or 'evinc[ed] a high degree of moral turpitude and demonstrat[ed] such wanton dishonesty as to imply a criminal indifference to civil obligations'" (*Linkable Networks, Inc. v Mastercard Inc.*, 184 AD3d 418, 419 [1st Dept 2020] [citations omitted]). A request for punitive damages for a fraud claim requires that an allegation that the fraud was aimed at the public generally (*Vandashield Ltd. v Isaacson,* 146 AD3d 552, 555 [1st Dept 2017] [citations omitted]).

Here, while defendants' actions are certainly reprehensible, they do not rise to the level of moral turpitude or criminal indifference that is required to support a punitive damages award (*see Seymour v Hovnanian*, 2022 NY Slip Op 04705 [1st Dept July 26, 2022] [conduct did not rise to the level required as to warrant awarding punitive damages]). Even assuming defendants' actions did rise to the requisite level, UBS has not established that the defendants' conduct was part of a pattern directed at the public generally. Rather, defendants' actions were, as UBS' stated in its very own Damages Inquest Demonstrative, a "[s]ystematic, willful, and calculated tortious scheme to dissipate and transfer assets to avoid payment to UBS" (NYSCEF Doc. No. 772).

Accordingly, the court denies the request and declines to award UBS' any punitive damages.

### III. *Judgment Setting Aside Fraudulent Transfers*

The court awards UBS a money judgment, totaling $67,222, as against the CDO Fund.

In its Expert Report, UBS "summarizes 127 cash and asset transfers, and their related values, all made as part of the HFP Notes termination by HFP's subsidiaries to other Highland Entities, while SOHC/HFP was insolvent" (NYSCEF Doc. No. 766, pg. 79).

UBS' Expert Report also states that "SOHC/HFP was insolvent when SOHC/HFP made these 127 transfers from March 18, 2009 through June 2, 2009" (*id.*). Further, UBS explains that the $67,222 transfer on December 19, 2008 from HFP to CDO is the only fraudulent conveyance issue that it did not obtain a settlement for (NYSCEF Doc. No. 762, pg. 25). As CDO Fund is now insolvent, and no longer possesses the assets at issue, UBS is entitled to a money judgment in an amount up to the value of the fraudulently transferred assets (*id.*, pg. 26).

Accordingly, the court awards UBS a money judgment totaling $67,222 as against the CDO Fund.

### IV. *Attorneys' Fees*

UBS requests an award totaling $27,914,282 in attorneys' fees against the Funds and HFP (*id.*, pg. 24). While it is true that the court-imposed liability under NY DCL § 276-a for attorneys' fees in the July 6, 2021 default judgment, the court declines to award the full amount sought here at this inquest.

Under DCL § 276-a, in an action brought to set aside a conveyance found to have been made with "actual intent . . . to hinder, delay or defraud," the court may award "reasonable"

attorneys' fees. However, the award of attorneys' fees must encompass services "inextricably intertwined with the fraudulent conveyance cause of action" (*Apparel Corp. (Far E.) v Sheermax LLC*, 126 AD3d 413, 414 [1st Dept 2015]).

In determining reasonableness of attorneys' fees, the court should evaluate factors such as the "time and labor required, the difficulty of the questions involved, and the skill required to handle the problems presented" (*Ohana v Levy*, 2015 WL 2441357, *6 [Sup Ct, Kings Cty May 22, 2015]). Moreover, the court is able to reduce a proposed award of attorneys' fees in order to account for inefficiency and duplication of work (*Valenti v Going Grain, Inc.*, 2020 N.Y. Misc. LEXIS 2589, *6 [Sup Ct, NY Cty June 5, 2020]).

Here, while awarding attorneys' fees is appropriate under DCL § 276-a, UBS' request for an award totaling $27,914,282 is inappropriate and must be reduced. Despite attaching records indicating voluminous billing by counsel from 2011 through 2018, UBS provides nothing more than conclusory claims that these numerous charges were "inextricably intertwined" with the Fifth Cause of Action for fraudulent conveyance.

Additionally, this case's lengthy procedural history must be addressed. The Summons and Complaint were first filed on February 24, 2009 (NYSCEF Doc. Nos. 1-2). Since that time, the Complaint was amended twice (NYSCEF Doc. Nos. 148, 242), three separate global law firms were involved, over two dozen motions were filed, and multiple interlocutory appeals were taken (NYSCEF Doc. No. 762, pg. 9). This reveals deep patterns of inefficiency and duplication of work and highlights the excessive litigation and unnecessary motion practice that occurred here for more than a decade.

As such, the court awards UBS attorneys' fees in the amount of $16,283,331, approximately 58% of the requested award, to account for fees not inextricably tied to the cause of action, as well as inefficiencies, excessiveness, and duplication of efforts (*see David Z. Inc. v Timur on Fifth Ave., Inc.*, 7 AD3d 257, 258 [1st Dept 2004] [reducing award of attorneys' fees from $13,793 to $7,500 after finding the original award "excessive"]).

### V. *Lifting the Prior Stay of Enforcement*

Finally, the court lifts the stay of enforcement on the $70,500,000 portion of the judgment rendered against SOHC in Phase I (NYSCEF Doc. No. 646). The Phase I judgment awarded UBS compensatory damages and prejudgment interest on its Third Cause of Action for Breach of

Contract as related to the Cash Warehouse Agreement, and the Fourth Action for Breach of Contract as related to the Synthetic Warehouse Agreement (NYSCEF Doc. No. 641, pg. 39).

In Phase II, however, UBS seeks attorneys' fees, punitive damages (that, as discussed above, the court declines to award) and a $67,222.00 money judgment against the now-insolvent CDO Fund, representing the only remaining unsettled fraudulent conveyance (NYSCEF Doc. No. 762, pgs. 26-27). These damages do not overlap.

Accordingly, the court lifts the stay of enforcement on the $70,500,000 judgment rendered in Phase I.

The court has considered the party's remaining contentions and finds them unavailing.

Accordingly, it is

**ORDERED** that the stay of execution of the $70.5 million portion of the Phase I judgment against defendant Highland Special Opportunities Holding Company (NYSCEF Doc. No. 646 [1/22/20 judgment]) is lifted; and it is further

**ORDERED, ADJUDGED, and DECLARED** that defendant Highland Financial Partners, L.P., with an address at 100 Crescent Ct., Suite 1850, Dallas, Texas 75201, as an alter ego of defendant Highland Special Opportunities Holding Company, with an address at Walker House, 87 Mary Street, George Town, Grand Cayman, Cayman Islands, is liable for satisfying Plaintiffs' January 22, 2020 judgment against Highland Special Opportunities Holding Company on Plaintiffs' third and fourth causes of action in the amount of **$510,771,650.55**, together with post-judgment interest at the statutory rate as calculated by the clerk of the court, and that Plaintiffs shall have execution thereof; and it is further

**ORDERED, ADJUDGED, and DECLARED** that Highland Financial Partners, L.P.'s December 19, 2008 transfer of $67,222.00 to defendant Highland CDO Opportunity Master Fund, L.P. is null and void as it was an actually and constructively fraudulent transfer with respect to Plaintiffs; and it is further

**ORDERED and ADJUDGED** that Plaintiffs UBS Securities LLC, with an address of 600 Washington Blvd., 10th Floor, Stamford, Connecticut 06901, and 1285 Avenue of the Americas, New York, New York 10019, and UBS AG London Branch, with an address at 5 Broadgate, London EC2M 2QS, United Kingdom, have judgment on their fifth cause of action for fraudulent conveyance and recover against Highland CDO Opportunity Master Fund, L.P. the amount of **$67,222.00**; and it is further

**ORDERED and ADJUDGED** that Plaintiffs UBS Securities LLC, with an address of 600 Washington Blvd., 10th Floor, Stamford, Connecticut 06901, and 1285 Avenue of the Americas, New York, New York 10019, and UBS AG London Branch, with an address at 5 Broadgate, London EC2M 2QS, United Kingdom, have judgment and recover against defendants Highland Financial Partners, L.P., Highland Special Opportunities Holding Company, and Highland CDO Opportunity Master Fund, L.P. the amount of **$16,283,331.00** for Plaintiffs' reasonable attorneys' fees, and that Plaintiffs shall have execution thereof; and it is further

**ORDERED** that the Clerk is directed to enter judgment accordingly.

| 7/27/2022 | | | | _/s/ MCh_ | |
|---|---|---|---|---|---|
| DATE | | | | MELISSA CRANE, J.S.C. | |
| CHECK ONE: | X | CASE DISPOSED | | NON-FINAL DISPOSITION | |
| | | GRANTED | ☐ DENIED | GRANTED IN PART | X OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |